# UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

NO. 09-1503

HECTOR LUIS ROMAN-OLIVERAS; SONIA MARIA YAMA-RUIZ;  CONJUGAL PARTNERSHIP ROMAN-YAMA; FELICITA OLIVERAS-LOPEZ

Plaintiffs-Appellants

v.

PUERTO RICO ELECTRIC POWER AUTHORITY (PREPA); JAMES VELEZ; JULIO RENTA; JOHN DOE; RICHARD ROE; INSURANCE COMPANY A, B, C

Defendants-Appellees

APPEAL FROM JUDGMENT BY THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO

## APPELLANTS HECTOR LUIS ROMAN-OLIVERAS, SONIA MARIA YAMA-RUIZ, CONJUGAL PARTNERSHIP ROMAN-YAMA; FELICITA OLIVERAS-LOPEZ' BRIEF

**JUAN R. RODRIGUEZ**
Court of Appeals NO. 23562
RODRIGUEZ LOPEZ LAW OFFICES, P.S.C.
P. O. Box 7693
Ponce, Puerto Rico 00732-7693
Tels.  (787) 843-2828 / 843-2900
Fax: (787) 284-1267
E mail: juan.ramon.rodriguez@us.army.mil
          juan_r_rodriguez00732@hotmail.com

1

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES**                                                    **3**

**STATEMENT OF JURISDICTION**                                               **5**

**STATEMENT OF THE CASE**                                                   **7**

**STATEMENT OF THE FACTS**                                                  **10**

**STANDARD OF REVIEW**                                                      **12**

**SUMMARY OF ARGUMENT**                                                     **14**

**LEGAL ARGUMENTS OF OPENING BRIEF**

**A.  Whether the District Court erred when determined that plaintiff failed      14
to show that Roman is disabled within the meaning of the ADA, in satisfaction of
the first element of the *prima facie* case analysis, is by alleging facts sufficient to show
that Roman suffers from a mental impairment that substantially limits one or more
of his major life activities.**

**B.  Whether the District Court erred when determined that plaintiff failed      17
to establish that Roman is disabled within the meaning of the ADA is by providing
a record of an impairment substantially affecting a major life activity.**

**C.  Whether the District Court erred when determined that plaintiff failed      18
to allege facts sufficient to establish the first element ot the prima facie case for an
ADA claim, namely, that Roman is disabled within the meaning of the statute.
As such, the court need not address the second and third elements of the prima
facie case, or defendants' other arguments for dismissal.**

**D.  Whether the District Court erred when determined that plaintiffs state      21
that their civil rights have been violated by defendants, who were acting "under
color of law". Plaintiffs' allegations are insufficient to raise their claims above the
"speculative level".**

**RELIEF SOUGHT**                                                          **23**

**CERTIFICATE OF COMPLIANCE**                                              **24**

**CERTIFICATE OF SERVICE**                                                 **24**

# TABLE OF AUTHORITIES

## CASES

*Arroyo Otero v. Hernandez Purcell,804 F. Supp.  418, 421 (D.P.R. 1992)*     13, 16, 18, 19

*Aulson v. Blanchard, 83 F. 3d 1, 3 (1st Cir. 1996)*     13

*Baker v. Westin Rio Mar Beach Resort, Inc. 194 F. R. D. 393 (D. P. R.2000)*     13

*Berener v. Delahanty, 129 F. 3d 20, 25*     14

*Bragdon v. Abbott, 524 U.S. 624, 631 (1998)*     20

*Conley v. Gibson,355 U.S.  41, 45-46 (1957)*     13

*Correa Martinez v. Arrillaga Belendez, 903 F.2d 49, 51 (1st Cir. 1990)*     13

*Dewey v. Univ. of New Hampshire, 694 F. 2d 1, 3 (1st Cir. 1982)* cert. denied
*461 U.S. 944, 103 S. Ct. 2121, 77 L. Ed. 2d 1301 (1983)*     14

*Doyle v. Hasbro, Inc., 103 F.3d 186 (1st Cir. 1996)*     13

*Flamand v. American Intem. Group, Inc. 876 F. Supp. 356, 360 (D. P. R. 1994)*     13, 15, 18, 20

*Festa v. Local Int'l Bhd. of Elec. Workers, 605 F.2d 25, 37 (2d Cir. 1990)*     13, 15, 18, 20

*Gooley v. Mobil Oil Corp., 851 F.2d 513, 514 (1st Cir. 1988)*     13

*Massachusetts Sch. of Law at Andover v. American Bar,142 F.3d 26 (1st Cir.1998)*14

*Murphy v. United States, 45 F. 3d  520, 522 (1st Cir. 1995)*     12

*Royal v. Leading Edge Prods., Inc., 833 F.2d1 (1st Cir. 1987)*     12, 15, 19, 20

*Sullivan v. Neiman Marcus Group, Inc., 358 F.3d 110, 114 (1st Cir. 2004)*     16, 18, 20

*Toyota Motor Manufacturing v. Williams, 122 S. Ct. 681, 690-691*     16, 21

*Viquiera v. First Bank, 140 F.3d (1st Cir. 1988)*     12, 16, 19, 20

*Valentin v. Hosp. Bella Vista 254 F.3d 358, 363-364 (ist Cir. 2001*     12, 13

# FEDERAL LAWS

Due Process Clause                                                          23

Title VII and 42 of the U.S.C.  §1983, Civil Rights Act 1964               5, 6, 9, 10, 13

The American with Disability Act (ADA),                                    6, 9, 10, 15, 17, 18, 19, 21

42 U.S.C.A. §12101 *et. Seq*.

28 U.S.C. §1291                                                            5, 6

28 U.S.C. §1294(1)                                                         5, 6

42 U.S.C. § 12102 (2)                                                      15, 18

29 C.F.R. § 1630.2 (h)                                                     16, 20

29 C.F.R. § 1630.2 (I)                                                     16, 17, 20, 21

29 C.F.R. § 1630.2 (j) (1)                                                 17, 21

# FEDERAL RULES OF CIVIL PROCEDURE

Fed. R. Civ. P 12 (b) (1)                                                  12

Fed. R. Civ. P 12 (b) (6)                                                  13, 16, 18, 19

# FEDERAL RULES OF APPELLATE PROCEDURE

Fed. R. App. P. 32(a)(7)(B)                                                25

# STATE LAWS

Articles 1802 and 1803 of Puerto Rico Civil Code, PR Law against discrimination  6, 11

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

| | | |
|---|---|---|
| HECTOR LUIS ROMAN-OLIVERAS, ET. ALS. | * | COURT OF APPEALS |
|     Plaintiffs-Appellants | * | CASE NO. 09-1503 |
| | * | |
|         v. | * | |
| | * | |
| PUERTO RICO ELECTRIC POWER AUTHORITY | * | |
| (PREPA), ET. ALS. | * | DISTRICT COURT |
|     Defendants-Appellees | * | CIVIL NO. NO. 07-1498 (ADC) |

----------------------------------------------------------------*

**APPELLANTS HECTOR LUIS ROMAN-OLIVERAS, SONIA MARIA YAMA-RUIZ, CONJUGAL PARTNERSHIP ROMAN-YAMA; FELICITA OLIVERAS-LOPEZ' BRIEF TO THE HONORABLE COURT:**

    **COME NOW**, HECTOR LUIS ROMAN-OLIVERAS, SONIA MARIA YAMA-RUIZ, CONJUGAL PARTNERSHIP ROMAN-YAMA; FELICITA OLIVERAS-LOPEZ, Plaintiffs-Appellants, through their undersigned attorneys, and respectfully allege and pray:

**I.      STATEMENT OF JURISDICTION**

    This is an appeal from a final order or judgment that disposes of all the parties' claims. Accordingly, this Court has jurisdiction over this appeal pursuant to 28 U.S.C. §1291 (final decisions of district courts) and 28 U.S.C. §1294(1) (circuits in which decision is reviewable). This appeal is timely as it was filed with the District Court's Clerk on March 16, 2009 within thirty days after entry of the District Court's *Judgment* on February 19, 2009.

    The jurisdiction of the Court was invoked under the provisions of Title VII and 42 of the United States Code, Section 1983, Civil Rights Act 1964 and the American with Disability Act (ADA).

5

Plaintiff also invoked the article 1802 and 1803 of Puerto Rico Civil Code and the Puerto Rico Law against discrimination under the supplemental jurisdiction principles in the interest of judicial efficiency and economy.

Plaintiff's civil rights (under 42nd of the United States Code, Section 1983, Civil Rights Act 1964), he was discriminated (under The ADA), and other rights under other state and federal labor laws were and continue to be violated by co-defendants, whose actions or acts were under color of law.

On, June 11, 2007 plaintiffs-appellants, filed a tort civil action in US District Court for Puerto Rico against Defendants-appellees, (**Exhibit I**). On August 9, 2007, defendants-appellees filed *Motion to Dismiss,* (**Exhibit II**). On August 16, 2007, defendants-appellees filed *Motion to Dismiss,* (**Exhibit III**). On September, 28, 2007, defendants-appellees filed *Motion to Dismiss*, (**Exhibit IV**). On October 11, 2007, plaintiffs-appellants filed *Response to Motion to Dismiss,* (**Exhibit V**). On January 18, 2008, plaintiffs-appellants filed *Amended Complaint,* (**Exhibit VI**). The District Court entered its *Opinion and Order* on February 19, 2009, (**Exhibit VII**). The District Court entered its *Judgment* on February 19, 2009, (**Exhibit VIII**). On March 16, 2009, plaintiffs-appellants filed *Notice of Appeal,* (**Exhibit IX**).

This is an appeal from a final order or judgment that disposes of all the parties' claims. Accordingly, this Court has jurisdiction over this appeal pursuant to 28 U.S.C. §1291 (final decisions of district courts) and 28 U.S.C. §1294(1) (circuits in which decision is reviewable). This appeal is timely as it was filed with the District Court's Clerk on March 16, 2009 within thirty days after entry of the District Court's *Judgment* on February 19, 2009.

## II.     STATEMENT OF THE CASE

Plaintiff-appellant  Hector Luis Roman-Oliveras  began to work for co-defendant-appellees Puerto Rico Electric Power Authority (PREPA) for approximately 22 years. Plaintiff-appellant Hector Luis Roman-Oliveras has a mental medical condition (schizophrenia) which was diagnosed more than thirty (30) years ago.

Plaintiff-appellant Hector Luis Roman-Oliveras has had excellent evaluations during the years he has worked for co-defendant-appellees PREPA.  Plaintiff-appellant Hector Luis Roman-Oliveras has received acknowledgments for his work, he was always available for overtime duties (extra hours and extra days).   In the year 2005  co-defendants-appellees, PREPA, James Velez and Julio Renta began to reprise against plaintiff-appellant Hector Luis Roman-Oliveras because of previous situations including plaintiffs participation as leader of workman and his activities with the union.

On March 1, 2006 co-defendant-appellees PREPA's social worker requested PREPA's physician not to allow plaintiff-appellant to work until he was evaluated by a psychiatrist.   co-defendant-appellees PREPA did not allow plaintiff-appellant to work.

On April 24, 2006 PREPA's social worker received psychiatrist's report & recommendation. The psychiatrist recommended that plaintiff-appellant could return to work/duties with PREPA.

On May 23, 2006 PREPA formally acknowledge the psychiatrist's report & recommendation. On August 7, 2006 PREPA's physician requested mandatory asbestos' medical evaluations of plaintiff-appellant.  In the asbestos' medical report the physicians noted that plaintiff-appellant was fit for duties including as per his psychiatric condition.

On October 17, 2006 the c co-defendant-appellees PREPA'S physicians determined and recommended that plaintiff-appellant could return to work.

7

Co-defendants-appellees James Velez and Julio Renta have been using plaintiffs-appellant mental medical condition to remove co-plaintiff-appellant from his occupation with co-defendant-appellees PREPA.

On November 13, 2006 co-defendant-appellees Julio Renta requested a medical evaluations of plaintiff-appellant. Co-defendant-appellees Renta referred plaintiff-appellant for involuntary a medical leave. Plaintiff-appellant has been requesting to be allowed to return to work on several occasions but his request has been denied by co-defendants-appellees.

Co-defendants-appellees referred plaintiff-appellant Hector Luis Roman-Oliveras without reason to the doctors of co-defendant-appellees PREPA, and to evaluations with the doctors of (Corporation del Fondo del Seguro del Estado). Plaintiff-appellant was also asked for the evaluations of my private doctors.

Plaintiff-appellant submitted medical certification from his psychiatrist on January 2007 as requested but co-defendants-appellees failed to allow him to return to work.

All of the doctors who evaluated plaintiff-appellant Hector Luis Roman-Oliveras determined that the plaintiff was capable to continue his work with co-defendant-appellees PREPA.

Plaintiff-appellant Hector Luis Roman-Oliveras has always followed his doctors medical instructions, gone to every medical visit and takes his medications regularly. Co-defendant-appellees PREPA has requested the results of the medical evaluations of plaintiff-appellant Hector Luis Roman-Oliveras. When the satisfactory evaluations are provided to the co-defendants-appellees they request new evaluations, changing the entire process of the reinstallation of plaintiff-appellant duties.

Co-defendants-appellees tried in one occasion to transfer plaintiff-appellant Hector Luis Roman-Oliveras without the benefit of paying him diet and car allowance. Plaintiff-appellant Hector

8

Luis Roman-Oliveras has been treated differently from similarly situated individuals outside of his protected group.

Co-defendant-appellees engineers James Velez and Julio Renta have harassed plaintiff-appellant Héctor Luis Roman-Oliveras making improper rude comments against him, taking adverse personal action and fabricating labor cases against him; using false information and using their official positions improperly as employees and engineers of co-defendant-appellees PREPA. All this to cause harm to the plaintiff-appellant in clear violation of his civil rights and acting under color of law all this time.

Plaintiff-appellant Hector Luis Roman-Oliveras has been subject to a hostile work environment because of the direct actions of co-defendants-appellees James Velez and Julio Renta and PREPA.

Plaintiff-appellant Hector Luis Roman-Oliveras has been subject to the adverse actions because of his medical condition and active participation with the Union.

Plaintiff-appellant's civil rights (under 42nd of the United States Code, Section 1983, Civil Rights Act 1964), he was discriminated (under The ADA), and other rights under other state and federal labor laws were and continue to be violated by co-defendants-appellees, whose actions or acts were under color of law.

Plaintiff-appellant filed a complaint in the U. S. Equal Employment Opportunity on Commission (EEOC) on February 23, 2007.

Plaintiff-appellant was eliminated from PREPA'S payroll on February 2007. Co- defendants-appellees Renta and Vélez ordered that plaintiff-appellant's personal belongings were removed from the assigned work area, his named was removed from his locker, and his toolbox was reassigned to other employee.

9

Plaintiff-appellant was terminated from PREPA on or about February 2007.

The defendants-appellees, supervisors, administrators, directors were negligent and caused emotional and mental damage and anguish to the plaintiffs-appellant. The co-defendants-appellees while acting under color of law violated the Civil Rights discriminated against the plaintiff-appellant causing damages to the plaintiff-appellant. The defendants-appellees and their respective insurance companies are liable under the Civil Rights, American with Disability Act (ADA) and Article 1802 and 1803 of Puerto Rico Civil Code Law.

The U. S. Equal Employment Opportunity Commission (EEOC) issued a Notice of Right to Sue on July 9, 2007.

## III.     STATEMENT OF RELEVANT FACTS

Plaintiff-appellant Hector Luis Roman-Oliveras has a mental medical condition (schizophrenia) which was diagnosed more than thirty (30) years ago. Plaintiff-appellant Hector Luis Roman-Oliveras has always followed his doctors medical instructions, gone to every medical visit and takes his medications regularly.

Plaintiff-appellant  Hector Luis Roman-Oliveras  began to work for co-defendant-appellees Puerto Rico Electric Power Authority (PREPA) for approximately 22 years.

In the year 2005  co-defendants-appellees, PREPA, James Velez and Julio Renta began to reprise against plaintiff-appellant Hector Luis Roman-Oliveras because of previous situations including plaintiffs participation as leader of workman and his activities with the union.

On March 1, 2006  co-defendant-appellees PREPA's social worker requested PREPA's physician not to allow plaintiff-appellant to work until he was evaluated by a psychiatrist.   co-defendant-appellees PREPA did not allow plaintiff-appellant to work.

10

On April 24, 2006 PREPA's social worker received psychiatrist's report & recommendation. The psychiatrist recommended that plaintiff-appellant could return to work/duties with PREPA.

On May 23, 2006 PREPA formally acknowledge the psychiatrist's report & recommendation. On August 7, 2006 PREPA's physician requested mandatory asbestos' medical evaluations of plaintiff-appellant. In the asbestos' medical report the physicians noted that plaintiff-appellant was fit for duties including as per his psychiatric condition.

On October 17, 2006 the c co-defendant-appellees PREPA'S physicians determined and recommended that plaintiff-appellant could return to work.

Co-defendants-appellees James Velez and Julio Renta have been using plaintiffs-appellant mental medical condition to remove co-plaintiff-appellant from his occupation with co-defendant-appellees PREPA.

On November 13, 2006 co-defendant-appellees Julio Renta requested a medical evaluations of plaintiff-appellant. Co-defendant-appellees Renta referred plaintiff-appellant for involuntary a medical leave. Plaintiff-appellant has been requesting to be allowed to return to work on several occasions but his request has been denied by co-defendants-appellees.

Co-defendants-appellees referred plaintiff-appellant Hector Luis Roman-Oliveras without reason to the doctors of co-defendant-appellees PREPA, and to evaluations with the doctors of (Corporation del Fondo del Seguro del Estado). Plaintiff-appellant was also asked for the evaluations of my private doctors.

Plaintiff-appellant submitted medical certification from his psychiatrist on January 2007 as requested but co-defendants-appellees failed to allow him to return to work.

All of the doctors who evaluated plaintiff-appellant Hector Luis Roman-Oliveras determined that the plaintiff was capable to continue his work with co-defendant-appellees PREPA.

11

Plaintiff-appellant was eliminated from PREPA'S payroll on February 2007. Co- defendants-appellees Renta and Vélez ordered that plaintiff-appellant's personal belongings were removed from the assigned work area, his named was removed from his locker, and his toolbox was reassigned to other employee.

Plaintiff-appellant was terminated from PREPA on or about February 2007.

## IV.    STANDARD OF REVIEW

### Standard for Motion to Dismiss Under Fed. R. Civ. P 12 (b) (1)

The District Court's disposition of a rule 12(b)(1) faced with factual challenges or mixed question of law and facts reviewed for clear error, *Valentin v. Hosp. Bella Vista 254 F.3d 358, 363-364 (ist Cir. 2001)*.

Standard for Motion to Dismiss Under Fed. R. Civ. P 12 (b) (1), a defendant may move to dismiss an action against him based on the lack of federal subject matter jurisdiction.  In *Baker v. Westin Rio Mar Beach Resort, Inc. 194 F. R. D. 393 (D. P. R.2000)*, the District Court explained that since federal courts have limited jurisdiction, the party asserting jurisdiction has the burden of demonstrating the existence of federal jurisdiction.  See *Murphy v. United States*, *45 F. 3d 520, 522 (1st Cir. 1995)*. In assessing a motion to dismiss for lack of subject matter jurisdiction, a district court "must construe the complaint liberally, treating all well-pleaded facts as true and drawing all reasonable inference in favor of plaintiffs" *Viquiera v. First Bank*, *140 F.3d (1st Cir. 1988)*(quoting *Royal v. Leading Edge Prods., Inc.*, *833 F.2d1 (1st Cir. 1987)*.

The District Court's disposition of a rule 12(b)(1) faced with factual challenges or mixed question of law and facts reviewed for clear error, *Valentin v. Hosp. Bella Vista 254 F.3d 358, 363-364 (ist Cir. 2001)*.

### Standard for Motion to Dismiss Under Fed. R. Civ. P 12 (b) (6)

In response to an initial pleading, a defendant may file a motion to dismiss the complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12 (b) (6). *Arroyo Otero v. Hernandez Purcell, 804 F. Supp. 418, 421 (D.P.R. 1992)* " *The Court's function on a Rule 12 (b) (6) motion is not to weigh the evidence which might be presented at trial but merely to determine whether the complaint itself is legal sufficient*" *Flamand v. American Intem. Group, Inc. 876 F. Supp. 356, 360 (D. P. R. 1994) (*citing *Festa v. Local Int'l Bhd. of Elec. Workers, 605 F.2d 25, 37 (2d Cir. 1990),* emphasis added.

According to *Conley v. Gibson, 355 U.S. 41, 45-46 (1957)*, a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. In that sense, the Court must accept as true the well-pleaded allegations in the complaint and draw all reasonable inferences in favor of plaintiffs. See e.g., *Correa Martinez v. Arrillaga Belendez, 903 F.2d 49, 51 (1st Cir. 1990).*, However, the Court is not required to "*swallow the plaintiff's invective hook, line and sinker; bald assertions, insupportable conclusions, periphrastic circumlocutions, and the like need not be credited*" *Aulson v. Blanchard, 83 F. 3d 1, 3 (1st Cir. 1996)*; see also *Doyle v. Hasbro, Inc., 103 F.3d 186 (1st Cir. 1996)*; *Massachusetts Sch. of Law at Andover v. American Bar, 142 F.3d 26 (1st Cir. 1998)*.

Although the pleading requirements are "*minimal*", they are not "*non-existent.*" *Gooley v. Mobil Oil Corp., 851 F.2d 513, 514 (1st Cir. 1988)*. Plaintiffs must set forth in the complaint "*factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable legal theory*". *Berener v. Delahanty, 129 F. 3d 20, 25 (citing Gooley, 851 F.2d at 513, 514)*. In claims under 42 U.S.C. § 1983, the complaint shall set forth minimal facts, not conclusions or subjective characterizations, as to who did what to whom and

13

why." *Dewey v. Univ. of New Hampshire, 694 F. 2d 1, 3 (1ˢᵗ Cir. 1982)*, cert. denied *461 U.S. 944, 103 S. Ct. 2121, 77 L. Ed. 2d 1301 (1983)* emphasis added.

## V.     SUMMARY OF THE ARGUMENTS

**A.  Whether the District Court erred when determined that plaintiff failed to show that Roman is disabled within the meaning of the ADA, in satisfaction of the first element of the *prima facie* case analysis, is by alleging facts sufficient to show that Roman suffers from a mental impairment that substantially limits one or more of his major life activities.**

**B.  Whether the District Court erred when determined that plaintiff failed to establish that Roman is disabled within the meaning of the ADA is by providing a record of an impairment substantially affecting a major life activity.  42 U.S.C. § 12102(2).**

**C.  Whether the District Court erred when determined that plaintiff failed to allege facts sufficient to establish the first element ot the prima facie case for an ADA claim, namely, that Roman is disabled within the meaning of the statute.  As such, the court need not address the second and third elements of the prima facie case, or defendants' other arguments for dismissal.**

**D.  Whether the District Court erred when determined that plaintiffs state that their civil rights have been violated by defendants, who were acting "under color of law". Plaintiffs' allegations are insufficient to raise their claims above the "speculative level".**

## VI.     LEGAL ARGUMENTS OF OPENING BRIEF

**A.  Whether the District Court erred when determined that plaintiff failed to show that Roman is disabled within the meaning of the ADA, in satisfaction of the first element of the *prima facie* case analysis, is by alleging facts sufficient to show that Roman suffers from a mental impairment that substantially limits one or more of his major life activities.**

14

In response to an initial pleading, a defendant may file a motion to dismiss the complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12 (b) (6). *Arroyo Otero v. Hernandez Purcell, 804 F. Supp. 418, 421 (D.P.R. 1992)* " *The Court's function on a Rule 12 (b) (6) motion is not to weigh the evidence which might be presented at trial but merely to determine whether the complaint itself is legal sufficient*" *Flamand v. American Intem. Group, Inc. 876 F. Supp. 356, 360 (D. P. R. 1994) (*citing *Festa v. Local Int'l Bhd. of Elec. Workers, 605 F.2d 25, 37 (2d Cir. 1990),* emphasis added.

In assessing a motion to dismiss for lack of subject matter jurisdiction, a district court "must construe the complaint liberally, treating all well-pleaded facts as true and drawing all reasonable inference in favor of plaintiffs" *Viquiera v. First Bank*, 140 F.3d (1st Cir. 1988)(quoting *Royal v. Leading Edge Prods., Inc.*, 833 F.2d1 (1st Cir. 1987).

The term "disability" with respect to an individual means a physical or mental impairment that substantially limits one or more of the individual's major life activities, a record of such impairment, or being regarded as having such impairment. See *Sullivan v. Neiman Marcus Group, Inc.*,   358 F.3d 110, 114 (1st Cir. 2004).

A "physical impairment" is "any physiological disorder, or condition... or anatomical loss affecting "a "body system" such as the musculoskeletal system or the skin. 29 C.F.R. § 1630.2 (h). Major life activities are "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. 1630 2 (I). Substantially limited means: (I) unable to perform a major life activity that the average person in the general population can perform; or (ii) significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner or duration under which the average person in the general population can perform that same

15

major life activity.  29 C.F.R. § 1630.2 (j)(1); see also *Toyota Motor Manufacturing v. Williams, 122 S. Ct. 681, 690-691.*

The determination of whether an individual has a "disability" – a physical or mental impairment that substantially limits one or more of the major life activities –  involves a three step process:

First, we consider whether [the individual's claimed disability] was a physical **impairment**. Second, we identify the life activity upon which the [individual] relies . . . and determine whether it constitutes a **major life activity** under the ADA.  Third, tying the two statutory phrases together, we ask whether the impairment **substantially limited** the major life activity.[1]

Major life activities are those basic activities that the average person in the general population can perform with little or no difficulty, such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.[2]  A substantial limitation of a major life activity is present when "an individual [has] an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives."[3]  Whether an impairment is substantially limiting includes consideration of "the nature and severity of the impairment; the duration or expected duration of the impairment; and the permanent or long term impact of, or resulting from, the impairment."[4]

---

[1]Bragdon v. Abbott, 524 U.S. 624, 631 (1998) (emphasis added).

[2]29 C.F.R. § 1630.2(I); Appendix to Part 1630-Interpretive Guidance on Title I of the ADA, 29 C.F.R. § 1630.2(I); See also Bragdon v. Abbott, 524 U.S. at 638. ("...major denotes comparative importance and suggests that the touchstone for determining an activity's inclusion under the statutory rubric is its significance," and further explained that the phrase "major life activities" includes those that "are central to the life process itself.")

[3]Toyota v. Williams, 534 U.S. 184, 198, 196-197 (2002) ("Substantially" in the phrase "substantially limits" suggests "considerable" or "to a large degree"... and "precludes impairments that interfere only in a minor way..."). See also 29 C.F.R. § 1630.2(j)(1).

[4]See 29 C.F.R. §1630.2(j)(2).

16

Co-Plaintiff Roman suffers from schizophrenia (complaint). Schizophrenia is not a common illness on the contrary it is a severe, chronic, and disabling brain disorder. Schizophrenia affects less that one (1) million adults Americans at one given time . Only an small percentage of those affected at one given time are permanent.  If we make the simple computation of the numbers, the mathematics will reflect that there lot less than 500 thousand Americans suffering from schizophrenia out of 300 million Americans, that's less than .016 % or 0.0016 of the population. The percentage of Americans suffering from schizophrenia is not even remotely comparable to the percentage of Americans with corrective vision impairment in the case of  *Sutton, Id.;* 500,000 versus  160,000,000.   Schizophrenia can be considered a "*discrete and insular minority*". Schizophrenia is a a severe, chronic, and disabling brain disorder, disease as per the Center for Disease Control and prevention (CDC) of the US Department of Health and Human.

People with the disease hear voices others don't hear, believe that others are broadcasting their thoughts to the world, or become convinced that others are ploting against them. These experinces make them fearful and withdrawn and cause dificulties when they try to have relationships with others.

**B. Whether the District Court erred when determined that plaintiff failed to establish that Roman is disabled within the meaning of the ADA is by providing a record of an impairment substantially affecting a major life activity.  42 U.S.C. § 12102(2).**

In response to an initial pleading, a defendant may file a motion to dismiss the complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12 (b) (6). *Arroyo Otero v. Hernandez Purcell, 804 F. Supp.  418, 421 (D.P.R. 1992)* " *The Court's function on a Rule 12 (b) (6) motion is not to weigh the evidence which might be presented at trial but merely to determine whether the complaint itself is legal sufficient" Flamand v. American Intem. Group, Inc. 876 F.*

17

Supp. 356, 360 (D. P. R. 1994) (citing *Festa v. Local Int'l Bhd. of Elec. Workers, 605 F.2d 25, 37 (2d Cir. 1990),* emphasis added. In assessing a motion to dismiss for lack of subject matter jurisdiction, a district court "must construe the complaint liberally, treating all well-pleaded facts as true and drawing all reasonable inference in favor of plaintiffs" *Viquiera v. First Bank*, 140 F.3d (1st Cir. 1988)(quoting *Royal v. Leading Edge Prods., Inc.*, 833 F.2d1 (1st Cir. 1987).

The term "disability" with respect to an individual means a physical or mental impairment that substantially limits one or more of the individual's major life activities, a record of such impairment, or being regarded as having such impairment.  See *Sullivan v. Neiman Marcus Group, Inc.*,  358 F.3d 110, 114 (1st Cir. 2004).

Plaintiff-appellant Hector Luis Roman-Oliveras has a mental medical condition (schizophrenia) which was diagnosed more than thirty (30) years ago. Plaintiff-appellant Hector Luis Roman-Oliveras has always followed his doctors medical instructions, gone to every medical visit and takes his medications regularly, (*Complaint*).

**C.  Whether the District Court erred when determined that plaintiff failed to allege facts sufficient to establish the first element ot the prima facie case for an ADA claim, namely, that Roman is disabled within the meaning of the statute.  As such, the court need not address the second and third elements of the prima facie case, or defendants' other arguments for dismissal.**

In response to an initial pleading, a defendant may file a motion to dismiss the complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12 (b) (6). *Arroyo Otero v. Hernandez Purcell, 804 F. Supp. 418, 421 (D.P.R. 1992)* " *The Court's function on a Rule 12 (b) (6) motion is not to weigh the evidence which might be presented at trial but merely to determine whether the complaint itself is legal sufficient*" *Flamand v. American Intem. Group, Inc. 876 F.*

18

*Supp. 356, 360 (D. P. R. 1994) (*citing *Festa v. Local Int'l Bhd. of Elec. Workers, 605 F.2d 25, 37 (2d Cir. 1990),* emphasis added.

In assessing a motion to dismiss for lack of subject matter jurisdiction, a district court "must construe the complaint liberally, treating all well-pleaded facts as true and drawing all reasonable inference in favor of plaintiffs" *Viquiera v. First Bank*, 140 F.3d (1st Cir. 1988)(quoting *Royal v. Leading Edge Prods., Inc.*, 833 F.2d1 (1st Cir. 1987).

Plaintiff-appellant alledged that he has a mental medical condition (schizophrenia) which was diagnosed more than thirty (30) years ago. Plaintiff-appellant Hector Luis Roman-Oliveras has always followed his doctors medical instructions, gone to every medical visit and takes his medications regularly, (*Complaint*).   The term "disability" with respect to an individual means a physical or mental impairment that substantially limits one or more of the individual's major life activities, a record of such impairment, or being regarded as having such impairment.  See *Sullivan v. Neiman Marcus Group, Inc.*,   358 F.3d 110, 114 (1st Cir. 2004).

A "physical impairment" is "any physiological disorder, or condition... or anatomical loss affecting "a "body system" such as the musculoskeletal system or the skin.  29 C.F.R. § 1630.2 (h). Major life activities are "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. 1630 2 (I). Substantially limited means: (I) unable to perform a major life activity that the average person in the general population can perform; or (ii) significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner or duration under which the average person in the general population can perform that same major life activity.  29 C.F.R. § 1630.2 (j)(1); see also Toyota Motor Manufacturing v. Williams, 122 S. Ct. 681, 690-691.

19

The determination of whether an individual has a "disability" – a physical or mental impairment that substantially limits one or more of the major life activities – involves a three step process:

First, we consider whether [the individual's claimed disability] was a physical **impairment**. Second, we identify the life activity upon which the [individual] relies . . . and determine whether it constitutes a **major life activity** under the ADA. Third, tying the two statutory phrases together, we ask whether the impairment **substantially limited** the major life activity.[5]

Major life activities are those basic activities that the average person in the general population can perform with little or no difficulty, such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.[6] A substantial limitation of a major life activity is present when "an individual [has] an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives."[7] Whether an impairment is substantially limiting includes consideration of "the nature and severity of the impairment; the duration or expected duration of the impairment; and the permanent or long term impact of, or resulting from, the impairment."[8]

_____

[5]Bragdon v. Abbott, 524 U.S. 624, 631 (1998) (emphasis added).

[6]29 C.F.R. § 1630.2(I); Appendix to Part 1630-Interpretive Guidance on Title I of the ADA, 29 C.F.R. § 1630.2(I); See also Bragdon v. Abbott, 524 U.S. at 638. ("...major denotes comparative importance and suggests that the touchstone for determining an activity's inclusion under the statutory rubric is its significance," and further explained that the phrase "major life activities" includes those that "are central to the life process itself.")

[7]Toyota v. Williams, 534 U.S. 184, 198, 196-197 (2002) ("Substantially" in the phrase "substantially limits" suggests "considerable" or "to a large degree"... and "precludes impairments that interfere only in a minor way...").  See also 29 C.F.R. § 1630.2(j)(1).

[8]See 29 C.F.R. §1630.2(j)(2).

20

On 2008 the US Congress passed the ADA Amendments Act of 2008, effective on January 1, 2009. The Amendments specifically reject prior US Supreme Court decisions limiting the conditions that qualify as disabilities, broadening the definition of *disability*.

Co-Plaintiff Roman suffers from schizophrenia (complaint). Schizophrenia is not a common illness on the contrary it is a severe, chronic, and disabling brain disorder. Schizophrenia affects less that one (1) million adults Americans at one given time . Only an small percentage of those affected at one given time are permanent.  If we make the simple computation of the numbers, the mathematics will reflect that there lot less than 500 thousand Americans suffering from schizophrenia out of 300 million Americans, that's less than .016 % or 0.0016 of the population. The percentage of Americans suffering from schizophrenia is not even remotely comparable to the percentage of Americans with corrective vision impairment in the case of  *Sutton, Id.;* 500,000 versus 160,000,000.   Schizophrenia can be considered a "*discrete and insular minority*". Schizophrenia is a a severe, chronic, and disabling brain disorder, disease as per the Center for Disease Control and prevention (CDC) of the US Department of Health and Human.

People with the disease hear voices others don't hear, believe that others are broadcasting their thoughts to the world, or become convinced that others are ploting against them. These experinces make them fearful and withdrawn and cause dificulties when they try to have relantionships with others.

**D.  Whether the District Court erred when determined that plaintiffs state that their civil rights have been violated by defendants, who were acting "under color of law". Plaintiffs' allegations are insufficient to raise their claims above the "speculative level".**

It was alleged in the Complaint that *Co-defendants James Velez and Julio Renta have been using plaintiff's mental medical condition to remove co-plaintiff from his occupation with co-*

21

*defendant PREPA,* (See Docket No. 1, Complaint, paragraph 13 and Dockets No. 14 & 16  Amended Complaint). Defendants know that the series of events mention on paragraph 13 of the Complaint happened on the second semester of 2006 (See Docket No. 1, Complaint, and Dockets No. 14 & 16 Amended Complaint, paragraphs 12a, 12b, 12c, 12d, 13a, and 14a).  The EEOC complaint was timely filed within 300 days, then the claims are not time barred.

Defendants have harassed plaintiff, making improper rude comments against him, taking adverse personal action, using false information and using their official positions improperly against plaintiff. All this to cause harm to the plaintiff in clear violation of his civil rights and acting under color of law all this time. Plaintiff has been subject to a hostile work environment, he has been subject to the adverse actions because of his medical condition, (See Docket No. 1, Complaint, paragraphs 19, 20, 2, and Dockets No. 14 & 16  Amended Complaint and Dockets No. 14 & 16 Amended Complaint, paragraphs 12a, 12b, 12c, 12d, 13a, 14a, 22a, and 22b).

Plaintiff Roman clearly stated that defendants has requested the results of his medical evaluations, when the satisfactory evaluations are provided to the defendants, they request new evaluations, changing the entire process of reinstallment of plaintiff, (See Docket No. 1, Complaint, paragraph 16, and Dockets No. 14 & 16  Amended Complaint paragraphs 12a, 12b, 12c, 12d, 13a, 14a, 22a, and 22b), these constitute a *Due Process* violations by co-defendant James Velez and Julio Renta. They also harassed plaintiff by making improper rude comments against him, taking adverse personal action and fabricating labor cases against him; using false information and using their official positions improperly as employees of co-defendant PREPA. All this to cause harm to the plaintiff in clear violation of his civil rights and they were acting under color of law all this time

(See Docket No. 1, *Complaint*, paragraph 18, and Dockets No. 14 & 16 *First Amended Complaint*, *Second Amended Complaint* paragraphs 12a, 12b, 12c, 12d, 13a, 14a, 22a, and 22b).

22

## VII.  RELIEF SOUGHT

**WHEREFORE**, Plaintiffs-Apellants Héctor Luis Román-Oliveras, Sonia María Yama-Ruiz, Conjugal Partnership Román-Yama, and Felicita Oliveras-López, respectfully request from this Honorable Court this Honorable Court to reverse the District Court's Judgment dismissing the federal claims stated herein and remand this case to US District Court.

**RESPECTFULLY SUBMITTED**.

In Ponce, Puerto Rico, this 24th day of May of 2010.

**RODRIGUEZ LOPEZ LAW OFFICES, P.S.C.**
Juan R. Rodríguez, Esq.
PO Box 7693
Ponce, Puerto Rico 00732-7693
Tels. (787) 843-2828 / 843-2900 Fax 284-1267
E-mail: juan_r_rodriguez00732@hotmail.com
            juan.ramon.rodriguez@us.army.mil

By:     **S/JUAN R. RODRIGUEZ**
        **JUAN R. RODRIGUEZ, ESQ.**
        **USCA-1ST CA NO. 23562**

23

## CERTIFICATE OF COMPLIANCE

**I HEREBY CERTIFY** that the preceding Brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because the same contains a total of 6,305 words drafted in 12 point Times New Roman monospaced typeface in double space, except quotations of more than two lines which are at single space.

In Ponce, Puerto Rico, this 24th day of May of 2010.

By: ___*S/JUAN R. RODRIGUEZ*___
**JUAN R. RODRIGUEZ, ESQ.**
**USCA-1st CA NO. 23562**

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY,** that on this  same date a true and exact copy of this document APPELLANTS HECTOR LUIS ROMAN-OLIVERAS, SONIA MARIA YAMA-RUIZ, CONJUGAL PARTNERSHIP ROMAN-YAMA; FELICITA OLIVERAS-LOPEZ' BRIEF, has been filed electronically using CM/ECF system in US Courts of Appeals for the First Circuit and the Clerk will electronically send it to**:** Rafael E. Rivera-Sánchez, Rosa E. Perez, and Jose J. Gueits-Ortiz, PR Justice Department, PO Box 9020192, San Juan, Puerto Rico 00902-0192, and Marie L. Cortés-Cortés, Llovet Zurinaga & López, PSC, Mercantil Plaza Building, Suite PH 1616, 2 Ponce de León Avenue, San Juan, Puerto Rico 00918.

In Ponce, Puerto Rico, this 24th day of May of 2010.

By: ___*S/JUAN R. RODRIGUEZ*___
**JUAN R. RODRIGUEZ, ESQ.**
**USCA-1st CA NO. 23562**

24

# UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

NO. 09-1503

HECTOR LUIS ROMAN-OLIVERAS; SONIA MARIA YAMA-RUIZ;  CONJUGAL
PARTNERSHIP ROMAN-YAMA; FELICITA OLIVERAS-LOPEZ

Plaintiffs-Appellants

v.

PUERTO RICO ELECTRIC POWER AUTHORITY (PREPA); JAMES VELEZ; JULIO
RENTA; JOHN DOE; RICHARD ROE; INSURANCE COMPANY A, B, C

Defendants-Appellees

APPEAL FROM JUDGMENT BY THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF PUERTO RICO

## APPELLANTS HECTOR LUIS ROMAN-OLIVERAS, SONIA MARIA YAMA-RUIZ, CONJUGAL PARTNERSHIP ROMAN-YAMA; FELICITA OLIVERAS-LOPEZ' ADDENDUM TO BRIEF

**JUAN R. RODRIGUEZ**
Court of Appeals NO. 23562
RODRIGUEZ LOPEZ LAW OFFICES, P.S.C.
P. O. Box 7693
Ponce, Puerto Rico 00732-7693
Tels.  (787) 843-2828 / 843-2900
Fax: (787) 284-1267
E mail: juan.ramon.rodriguez@us.army.mil
          juan_r_rodriguez00732@hotmail.com

1

# TABLE OF CONTENTS

Pages

| | | |
|---|---|---|
| Exhibit I | Complaint, June 11, 2007 | 1 |
| Exhibit II | Defendants' Motion to Dismiss, August 9, 2007 | 8 |
| Exhibit III | Defendants' Motion to Dismiss, August 16, 2007 | 27 |
| Exhibit IV | Defendants' Motion to Dismiss, September 28, 2007 | |
| | a. Defendants' Motion to Dismiss | 46 |
| | b. Certification | 66 |
| Exhibit V | Plaintiff's Response to Motion to Dismiss, October 11, 2007 | 67 |
| Exhibit VI | Plaintiff's Amended Complaint, January 18, 2008 | 84 |
| Exhibit VII | Opinion and Order, February 19, 2009 | 92 |
| Exhibit VIII | Judgment, February 19, 2009 | 106 |
| Exhibit IX | Plaintiff's Notice of Appeal, March 16, 2009 | 107 |

2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | | |
|---|---|---|
| HECTOR LUIS ROMAN-OLIVERAS, SONIA MARIA YAMA-RUIZ their CONJUGAL PARTNERSHIP (Legal Society of Earnings) and FELICITA OLIVERAS-LOPEZ | * * * * * | CIVIL NO. |
| | * * | ABOUT : |
| Plaintiffs | * * | TORTS |
| vs. | * * | |
| PUERTO RICO ELECTRIC POWER AUTHORITY (PREPA), JAMES VELEZ and JULIO RENTA, JOHN DOE, RICHARD ROE, and their respective insurance companies | * * * * * * | |
| Defendants | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**COMPLAINT**

**TO THE HONORABLE COURT:**

**COME NOW** plaintiffs, through the undersigned attorney and respectfully alleges and request as follows:

**I.     JURISDICTION**

1.     The jurisdiction of this Court is invoked under the provisions of Title VII and 42 of the United States Code, Section 1983, Civil Rights Act 1964 and the American with Disability Act (ADA).

2.     Plaintiff also invoke the article 1802 and 1803 of Puerto Rico Civil Code and

c:\claims\hroman.002

COMPLAINT
US DISTRICT COURT
Page 2

the Puerto Rico Law against discrimination under the supplemental jurisdiction principles in the interest of judicial efficiency and economy.

3.　　Plaintiff's civil rights (under 42nd of the United States Code, Section 1983, Civil Rights Act 1964), he was discriminated (under The ADA), and other rights under other state and federal labor laws were and continue to be violated by co-defendants, whose actions or acts were under color of law.

**II.　PARTS:**

4.　　Plaintiff Hector Luis Roman-Oliveras is married, of legal age, citizen of the United States and resident at Sector Carbache, Bo. Rucio, Peñuelas, Puerto Rico. His postal address is PO Box 907, Peñuelas, Puerto Rico 00624.

5.　　Co-plaintiff Sonia Maria Yama-Ruiz is married to plaintiff Hector Luis Roman-Oliveras is of legal age, citizen of Colombia and legal resident of Sector Carbache, Bo. Rucio, Peñuelas, Puerto Rico. Her postal address is PO Box 907, Peñuelas, Puerto Rico 00624.

6.　　Co-plaintiff Felicita Oliveras-Lopez is mother of plaintiff Hector Luis Roman-Oliveras.

7.　　Defendant Puerto Rico Electric Power Authority (PREPA) is a public corporation and government agency dedicated to provide electric energy services to the Commonwealth of Puerto Rico.

8.　　Co-defendants James Velez and Julio Renta are engineer in the co-defendant Puerto Rico Electric Power Authority (PREPA). Co-defendant James Vélez was the plaintiff's

c:\claims\hroman.002

COMPLAINT
US DISTRICT COURT
Page 3

supervisor. Co-defendant Julio Renta was the plant superintendant at Costa Sur Plant, Guayanilla

which is own by co-defendant AEE. Co-defendant Julio Renta was the highest ranking official of

Co-defendant AEE in Costa Sur Plant.

9.    John Doe y Richard Roe are those persons who are in any way responsible to cause

the facts that give reason for this claim. Included are the insurance companies of all the defendants.

## III.    FACTS:

10.    Plaintiff Hector Luis Roman-Oliveras began to work for co-defendant Puerto Rico

Electric Power Authority (PREPA) for approximately 22 years. Plaintiff Hector Luis Roman-

Oliveras has a mental medical condition(schizophrenia) which was diagnosed more than thirty (30)

years ago.

11.    Plaintiff Hector Luis Roman-Oliveras has had excelent evaluations during the years

he has worked for co-defendant PREPA. Plaintiff Hector Luis Roman-Oliveras has received

acknowledgments for his work, he was always available for overtime duties (extra hours and extra

days).



12.    In the year 2005 co-defendants, PREPA, James Velez and Julio Renta began to

reprise against plaintiff Hector Luis Roman-Oliveras because of previous situations including

plaintiffs participation as leader of workman and his activities with the union.

13.    Co-defendants James Velez and Julio Renta have been using plaintiffs mental

medical condition to remove co-plaintiff from his occupation with co-defendant PREPA.

14.    Co-defendants referred plaintiff Hector Luis Roman-Oliveras without reason to the

c:\claims\hroman.002

**COMPLAINT**
**US DISTRICT COURT**
**Page 4**

doctors of co-defendant PREPA, and to evaluations with the doctors of (Corporation del Fondo del

Seguro del Estado). Plaintiff was also asked for the evaluations of my private doctors.

15.    All of the doctors who evaluated plaintiff Hector Luis Roman-Oliveras determined

that the plaintiff was capable to continue his work with co-defendant PREPA.

16.    Plaintiff Hector Luis Roman-Oliveras has always followed his doctors medical

instructions, gone to every medical visit and takes his medications regularly. Co-defendant PREPA

has requested the results of the medical evaluations of plaintiff Hector Luis Roman-Oliveras. When

the satisfactory evaluations are provided to the co-defendants they request new evaluations, changing

the entire process of the reinstallation of plaintiffs duties.

17.    Co-defendants tried in one occasion to transfer plaintiff Hector Luis Roman-Oliveras

without the benefit of of paying him diet and car allowance. Plaintiff Hector Luis Roman-Oliveras

has been treated differently from similarly situated individuals outside of his protected group.

18.    Co-defendant engineers James Velez and Julio Renta have harassed plaintiff Hector

Luis Roman-Oliveras making improper rude comments against him, taking adverse personal action

and fabricating labor cases against him; using false information and using their official positions

improperly as employees and engineers of co-defendant PREPA. All this to cause harm to the

plaintiff in clear violation of his civil rights and acting under color of law all this time.

19.    Plaintiff Hector Luis Roman-Oliveras has been subject to a hostile work

environment because of the direct actions of co-defendants James Velez and Julio Renta and

PREPA.

c:\claims\hroman.002

**COMPLAINT**
**US DISTRICT COURT**
**Page 5**

20.     Plaintiff Hector Luis Roman-Oliveras has been subject to the adverse actions because of his medical condition and active participation with the Union.

21.     Plaintiff's civil rights (under 42nd of the United States Code, Section 1983, Civil Rights Act 1964), he was discriminated (under The ADA), and other rights under other state and federal labor laws were and continue to be violated by co-defendants, whose actions or acts were under color of law.

22.     Plaintiff filed a complaint in the U. S. Equal Employment Opportunity on Commission (EEOC) on February 23, 2007.

23.     The codefendants, supervisors, administrators, directors were negligent and caused emotional and mental damage and anguish to the plaintiffs.  The co defendants while acting under color of law violated the Civil Rights discriminated against the plaintiff causing damages to the plaintiff.  The codefendants and their respective insurance companies are liable under the Civil Rights, American with Disability Act (ADA) and Article 1802 and 1803 of Puerto Rico Civil Code Law.

## III. DAMAGES:

24.     Plaintiff Hector Luis Roman-Oliveras civil rights were violated, he was discriminated due to his medical condition, damages estimated on $500,000.00

25.     Plaintiff Hector Luis Roman-Oliveras, was humiliated, discriminated, harassed, persecuted due to his medical condition, damages estimated on $250,000.00.

26.     Plaintiff Hector Luis Roman-Oliveras, has suffered and continue to suffer, severe

c:\claims\hroman.002

COMPLAINT
US DISTRICT COURT
Page 6

emotional distress, affliction, anguish, deprivation, damages estimated on $250,000.00.

27.    Co-plaintiffs Sonia Maria Yama-Ruiz and Felicita Oliveras-Lopez have suffered and continue to suffer, severe emotional distress, affliction, anguish, deprivation because of their husband and son's damages and suffering, damages estimated on $250,000.00 for each.

28.    Co-plaintiff   Hector Luis Roman-Oliveras has suffered and continue to suffer, severe emotional distress, affliction, anguish, deprivation because of their husband's  damages and suffering, damages estimated on $250,000.00 for each.

**IN WITNESS WHEREOF** it is respectfully requested from this Honorable Court that judgment be entered against the defendant awarding damages to plaintiffs for no less than two million dollars, plus cost, expenses and a reasonable amount for attorneys fees , grant plaintiffs such other relief as it may deem proper under the circumstances and pursuant to Rule 38 (b) of the Federal Rules of Civil Procedure, plaintiffs also hereby request a trial.

**JURY TRAIL DEMANDED.**

**RESPECTFULLY SUBMITTED**.

In Ponce, Puerto Rico this 31 day of March of 2007.

**RODRIGUEZ LOPEZ LAW OFFICE, P. S. C.**
Juan R. Rodriguez
PO Box 7693
Ponce, Puerto Rico 00732-7693
Tel:  (787) 843-2828 \ 843-2900 Fax:284-1267
Email: **juan_r_rodriguez00732@hotmail.com**
        **juan.ramon.rodriguez@us.army.mil**

By:_____

c:\claims\hroman.002

COMPLAINT
US DISTRICT COURT
Page 7

**JUAN R. RODRIGUEZ**
USDC-PR 214410

c:\claims\hroman.002

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| HECTOR L. ROMAN-OLIVERAS, et als., | |
| Plaintiffs, | |
| v. | Civil No. 07-1498(ADC) |
| PUERTO RICO ELECTRIC POWER AUTHORITY, et al., | Torts |
| Defendants. | |

**MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION PURSUANT TO FED.R.CIV.P. 12(B)(1) AND FOR FAILURE TO STATE A COGNIZABLE FEDERAL CLAIM PURSUANT TO FED.R.CIV.P. 12(B)(6)**

TO THE HONORABLE COURT:

**COMES NOW,** defendant Puerto Rico Electric Power Authority, without submitting to the jurisdiction of the Court, and respectfully submits this motion dismiss on the following grounds:

## I.      Introduction

Defendant Puerto Rico Electric Power Authority (hereinafter, "PREPA") moves this Honorable Court to dismiss the complaint filed by plaintiff Héctor Román Oliveras, his wife and his mother on various grounds but particularly due to the timeliness to file his federal claims, and for having failed to obtain a right to sue letter for bringing claims under the Americans with Disabilities Act (hereinafter, "ADA") and Title VII of the Civil Rights Act, as amended.

Should this Court find that it has subject matter jurisdiction over Plaintiff's claims under the ADA and Title VII, defendant PREPA contends that Plaintiff has equally failed

to state a cognizable claim under both statutes because his allegations in the Complaint do not establish a *prima facie* case pursuant to the applicable statutory frame-work. Upon a reading of the Complaint, for example, it becomes clear that Plaintiff has failed to allege that he requested any reasonable accommodations to PREPA as required by the ADA for claiming a violation under said statute. Plaintiff's Title VII claim confronts a similar problem because he has not alleged to belong to a protected group to allege employment discrimination.

In addition, Plaintiff's claims under Section 1983 of the Civil Rights Act are time barred by the applicable one-year statute of limitations. PREPA also submits that Plaintiff's Title VII and ADA claims confront the same fate because the Complaint alleges that "in the (sic) year 2005" and he waited until February 23, 2007, to file an administrative charge with the Equal Employment Opportunity Commission. In addition, the Complaint is devoid of any allegations that would comply with a *prima facie* case under Section 1983. Plaintiff cannot rely on Section 1983's remedial frame-work to supplant Title VII's and ADA's comprehensive remedial schemes.

Last but not least, co-plaintiffs Sonia María Yama Ruiz and Felicita Oliveras Lopez lack standing to sue under Title VII, ADA, and Section 1983. In any event, Plaintiffs' claims under Articles1802 and 1803 of the Puerto Rico Civil Code are time-barred by the applicable statute of limitations.

## II. Standard for a motion under Fed.R.Civ.P.12(B)(1)

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a defendant may controvert the factual accuracy (rather than merely the sufficiency) of the jurisdictional facts asserted by the plaintiff and proffer materials of evidentiary quality in support of

that position. See Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995). The plaintiff's jurisdictional averments are entitled to no presumptive weight and the court must address the merits of the jurisdictional claim by resolving the factual disputes between the parties. In the context of this inquiry, the court enjoys broad authority to order discovery, consider extrinsic evidence, and hold evidentiary hearings in order to determine its own jurisdiction. See Valentin v. Hospital Bella Vista, 254 F.3d 358, 363-364 (1st Cir. 2001) (citing Garcia v. Copenhaver, Bell & Assocs., 104 F.3d 1256, 1261 (11th Cir.1997), Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir.1990), and Rosales v. United States, 824 F.2d 799, 803 (9th Cir.1987)). See also Dynamic Image Technologies, Inc. v. U.S., 221 F.3d 34, 37-38 (1st Cir. 2000).

This analysis is necessary because "[a] court's authority to hear a particular case is a necessary precondition to the proper performance of the judicial function. Thus, when a fact bound jurisdictional question looms, a court must be allowed considerable leeway in weighing the proof, drawing reasonable inferences, and satisfying itself that subject-matter jurisdiction has attached." Valentin, 254 F.3d at 364 (citing Williamson v. Tucker, 645 F.2d 404, 412-13 (5th Cir.1981)).

### III.  Standard for a motion under Fed.R.Civ.P. 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), the applicable inquiry is whether the allegations of the Complaint, read in the light most favorable to Plaintiff, state a claim upon which relief could be granted.   As the Court of Appeals for the First Circuit has explained in Uphoff Figueroa v. Puerto Rico Electric Power Authority, 2005 WL 3095517, 5 "[w]hen ruling on a 12(b)(6) motion a court must accept all well-pled averments as true and draw all reasonable inferences in favor of the non-moving party."

3

see also Doyle v. Hasbro Inc., 103 F.3d 186, 190 (1st Cir. 1996). Dismissal under Rule 12 (b)(6) is "appropriate if the facts alleged, taken as true, do not justify recovery." Id. The standard is not quite as feeble as first appears:

> [T]he pleading requirement... is not a 'toothless tiger.' [Citations omitted]. The threshold for stating a claim may be low, but it is real. [Citations omitted]. In order to survive a motion to dismiss, plaintiffs must set forth factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery. [Citations omitted]. Although all inferences must be made in the plaintiffs' favor, this Court need not accept 'bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like.' [Citations omitted].

Id. To put it simply, the Court must look leniently at the allegations of the cross claim in and determine if those allegations "can reasonably admit a claim." Id.

Even though the court must take the factual averments of the complaint as true and draw all reasonable inferences in favor of the plaintiff, see Coyne v. City of Somerville, 972 F.2d 440, 442-43 (1st Cir. 1992), it is not required to accept every allegation made by the complainant no matter how conclusory or generalized, see United States v. AVX Corp., 962 F.2d 108, 115 (1st Cir.1992). "'[E]mpirically unverifiable' conclusions, not 'logically compelled, or at least supported, by the stated facts,' deserve no deference." Id.

For the reasons that will be stated in this motion, the Complaint in this case should be dismissed for failure to state a claim.

## GROUNDS FOR DISMISSAL

### A. Lack of subject matter jurisdiction

This Honorable Court lacks jurisdiction over claims brought by Plaintiff under Title VII and the ADA. Defendant PREPA will first discuss those claims for which Plaintiff did

4

not file a timely charge of discrimination (Title VII and ADA) with the Equal Employment Opportunity Commission (hereinafter the "EEOC") within the prescribed time before suing in Federal Court.

**A.1 Claims Under Title I of the ADA and Title VII of the Civil Rights Act.**

Plaintiff filed a charge of discrimination with the EEOC on February 23, 2007. See Complaint, ¶ 22, at page 5. He filed his discrimination charge presumably alleging discrimination under the Title I of the ADA and Title VII.[1] Plaintiff claims that in year 2005, all codefendants to this case began to incur in the following alleged conduct:

(1) That reprisal was taken against Plaintiff because of "previous situations including his participation as leader of workman (sic) and his activities with the [labor] union." See Complaint, ¶12, at page 3;

(2) that codefendants "have been using plaintiff's mental medical condition to remove co-plaintiff from his occupation with codefendant PREPA." Complaint, ¶ 13, at page 3;

(3) that codefendants "referred plaintiff Hector Luis Roman-Oliveras without reason to the doctors of PREPA, and to evaluations with the doctors of (Corporation del Fondo del Seguro del Estado)" and that he was "asked for the evaluations of [his] private doctors." Complaint, ¶ 14, at pages 3-4;

(4) that "[a]ll of the doctors who evaluated plaintiff Hector Roman-Oliveras determined that the plaintiff was capable to continue his work with co-defendant PREPA." Complaint, ¶ 15, at page 4;

(5) that "[c]odefendant PREPA has requested the results of the medical evaluations of plaintiff Hector Roman-Oliveras" and that "[w]hen the satisfactory evaluations are provided to the co-defendants they request new evaluations, changing the entire process of the reinstallation of plaintiffs (sic) duties." Complaint ¶ 16, at page 4;

(6) that "[c]odefendants tried in one occasion to transfer plaintiff Hector Roman-Oliveras without the benefit of of (sic) paying him diet and car allowance" and

---

[1] The Complaint does not allege the contents of the discrimination charge. Only for purposes of supporting our arguments for the dismissal of the complaint, we will assume Plaintiff averred employment discrimination proscribed by Title I of the ADA and Title VII in the discrimination charge that he filed on February 23, 2007.

that "[he] has been treated differently from similarly situated individuals outside the protected group." <u>Complaint</u>, ¶ 17, at page 4;

(7) that "[codefendants Velez and Renta] have harassed plaintiff Hector Roman-Oliveras making improper rude comments against him, taking adverse employment action and fabricating labor cases against him; using false information and using their official positions improperly…" <u>Complaint</u>, ¶ 18, at page 4;

(8) that "[he] has been subject to hostile work environment because of the direct actions of co-defendants James Velez and Julio Renta and PREPA." <u>Complaint</u>, ¶ 19, at page 4; and

(9) that "[he] has been subject to the adverse employment actions because of his medical condition and active participation with the Union." <u>Complaint</u>, ¶ 20, at page 4.

All the above-stated allegations, itemized from 1 through 9, occurred in year 2005 as stated in the <u>Complaint</u>. These events are time-barred and that plaintiff failed to timely exhaust administrative remedies accordingly.

The First Circuit Court of Appeals has decided that the filing of an administrative action is a prerequisite for filing a federal action under Title I of the ADA. <u>See</u> <u>Bonilla v. Muebles J.J. Alvarez, Inc.</u>, 194 F.3d 275 (1st Cir. 1999). Title I of the ADA provides that "[t]he powers, remedies, and procedures set forth in sections 705, 706, 707, 709, and 710 of the Civil Rights Act of 1964 (42 U.S.C. §§ 2000e-4, 2000e-5, 2000e-6, 2000e-8, and 2000e-9) shall be the powers, remedies, and procedures this title provides to the Commission, the Attorney General, or to any person alleging discrimination on the basis of disability…" <u>See</u> 42 U.S.C. § 12117.  Specifically, section 2000e-5(1) of Title VII states that a charge "shall be filed" with the EEOC "within three-hundred days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law" 42 U.S.C. § 2000e-5.  The established statutory period for filing an administrative charge with the E.E.O.C. serves to "protect[ ] employers from the burden

of defending claims arising from employment decisions that are long past." O'Rourke v. City of Providence, 235 F.3d 713, 730 (1st Cir. 2001); see also, Castro Ortiz v. Fajardo, 133 F.Supp.2d 143, 147 (D. Puerto Rico 2001).

In the instant case, Plaintiff did comply with § 2000e-5(1) with respect to the events that he describes in the Complaint. According to the only date that Plaintiff has alleged in the Compliant upon which he bases his causes of action under Title VII and Title I of the ADA, he did not file a timely charge with either the E.E.O.C. or the available state agency. Clearly, more than three hundred days had elapsed when he filed a charge with the E.E.O.C.

Since section 2000e-5(1) applies to Title I of the ADA, plaintiff must first exhaust administrative remedies before filing a complaint in federal court. See Bonilla v. Muebles J.J. Alvarez, Inc., supra, at 277 (1st Cir. 1999). In suits involving Title VII and Title I of the ADA claims the "unexcused" failure to file a charge with the EEOC or the appropriate state agency "bars the courthouse door." See Bonilla v. Muebles J.J. Alvarez, Inc., 194 F.3d at 278. The First Circuit relied on Zipes v. Trans World Airlines, Inc., 455 U.S. 807, 817, 100 S.Ct. 2486, 71 L.Ed.2d 234 (1982), to emphasize that the filing of the charge with the EEOC is obligatory but not jurisdictional. Id. At the end, the Court of Appeals in Bonilla affirmed the district court's dismissal of the case for lack of subject matter jurisdiction based upon plaintiff's failure to file a timely charge with the EEOC. The same result applies to Plaintiff's Title VII claim. See Jorge v. Rumsfeld, 404 F.3d 556, 564 (1st Cir. 2005); Noviello v. City of Boston, 398 F.3d 76, 85 (1st Cir. 2005). "Title VII requires, as a predicate to a civil action, that the complainant first file an administrative charge with the EEOC within a specified and relatively short time period

(usually 180 or 300 days) after the discrimination complained of." Clockedile v. New Hampshire Dept. of Corrections, 245 F.3d 1, 3 (1st Cir. 2001).

In this case, Plaintiff confronts an additional problem. He does not allege to have received a right to sue letter in order to file this civil action in federal court within the prescribe period of ninety days. PREPA contends that Plaintiff's omission in alleging to have obtained a right to sue letter before filing the instant action constitutes additional grounds in support of dismissal.

**A.2 Plaintiff has failed to state a *prima facie* case under the ADA.**

Title I of the ADA bars discrimination in employment. Section 12112 (a) of the ADA provides that as a general rule "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

Plaintiff must meet various requirements to properly institute an action under Title I. First, he must assert that he/she is "qualified individual with a disability" within the meaning of the ADA. See Equal Employment Opportunity Commission v. Amego, Inc., 110 F.3d 135, at 142 (1st Cir. 1997) (citing Jaques v. Clean-up Group, Inc., 96 F.3d 506, 511 (1st Cir. 1996) regarding the burden of proof for plaintiffs to establish a claim under the ADA). A "qualified individual" is an "individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111 (8). "Disability" means *inter alia* "a physical or mental impairment that substantially limits one or more of the

8

major life activities of such individual." 42 U.S.C. § 12102 (2).  "Major life activities" are defined as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working."  29 C.F.R. § 1630.2(i).

The second element that the plaintiff must also allege is that "with or without reasonable accommodation he was able to perform the essential functions of his job." See Katz v. City Metal Co., Inc., 87 F.3d 26, at 30 (1st Cir. 1996).  Third, the plaintiff must demonstrate that his employer took an adverse employment action against him based on his disability. See E.E.O.C. V. Amego, Inc., 110 F.3d 135, at 142 (1st Cir. 1997).   The plaintiff must also allege that he/she was replaced by a non-disabled individual in the employment or was treated less favorably than non-disabled employees.  See Carroll v. Xerox Corp., 294 F.3d 231, 237 (1st Cir. 2002).

Title I of the ADA cases are subject to the framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), for Title VII cases which applies in absence of direct evidence to prove discrimination in the employment.  See Higgins v. New Balance Athletic Shoe, Inc., 194 F.3d 252, 264 (1st Cir. 1999).  Defendant PREPA will not enter to discuss the second part of the McDonnell Douglas test in this motion because we are addressing the preliminary requirements for stating a *prima facie* case under the ADA.

The Complaint alleges that Plaintiff has been evaluated by doctors who have determined that he is capable to continue to work despite the allegation that he suffers from schizophrenia.  See Complaint, ¶¶10, 15, 16.  The allegation that Plaintiff suffers from a condition that appears to be covered by the ADA, without more, is insufficient to state an ADA claim against PREPA in this case. Plaintiff does not allege that his mental

9

condition affects a major life activity as required by the ADA.  See <u>Bailey v. Georgia-Pacific Corp.</u>, 306 F.3d 1162, 1167 (1st Cir. 2002).  In this case, the <u>Complaint</u> does make out any factual allegations about whether Plaintiff requested, in fact, reasonable accommodation in his employment with PREPA.  See <u>Gacía Ayala v. Lederle Parenterals, Inc.</u>, 212 F.3d 638 (1st Cir. 2000).

In addition, Plaintiff fails to identify an adverse personnel action that his employer took against him.  He simply states that defendants "tried in one occasion to transfer [him] without the benefit of of (sic) paying him diet and car allowance." <u>Complaint</u>, ¶ 17, at page 4.  However, the alleged intent of a transfer is insufficient to constitute an adverse employment action.  The Complaint fails to link the alleged <u>intent of a transfer</u> to his condition of schizophrenia.

In the First Circuit Court of Appeals, it is not well settled law whether "disability based hostile work environment " exists under the ADA. <u>See</u>  <u>Rocafort v. IBM Corp.</u>, 334 F.3d 115 (1st Cir. 2003).  The First Circuit Court of Appeals assumed on one occasion those claims to be cognizable.  <u>See</u> <u>Rivera Rodríguez v. Frito Lay Snacks Caribbean, A Div. of Pepsico P.R., Inc.</u>, 265 F.3d 15, 23 (1st Cir. 2001).  The District Court for the District of Puerto Rico has recognized that there is a cognizable claim of disability based hostile work environment on various cases but subject to an analysis of Title VII hostile environment claims scrutiny.  <u>See</u> <u>Rodríguez Velazquez v. Autoridad Metropolitana de Autobuses</u>, 2007 WL 1188267 (D.P.R. 2007); <u>Rodríguez v. Locite P.R., Inc.</u>, 967 F. Supp. 653, 662 (D.P.R. 1997).  Along these lines, the appearing defendant proceeds to discuss the elements of such a claim, and anticipates to this

Honorable Court that the <u>Complaint</u> also fails to meet the burden of alleging a *prima facie* case of disability based hostile work environment.

The District Court of Puerto Rico incorporated the elements of Title VII hostile work environment to ADA cases in <u>Rodríguez Velázquez</u>, 2007 WL 1188267 (D.P.R. 2007). The District Court, <u>citing Flowers v. Regional Physician Serv., Inc.</u>, 247 F.3d 169, 235 (5th Cir. 2001), stated the following: "Accordingly, to succeed on a claim of disability-based harassment, the plaintiff must prove: (1) that [he] belongs to a protected group; (2) that [he] was subjected to unwelcome harassment; (3) that the harassment complained of was based on [his] disability or disabilities; (4) that the harassment compliant of affected a term, condition, or privilege of employment; and (5) that the employer knew or should have known of the harassment and failed to take prompt, remedial action." Plaintiff must also prove that "he subjectively perceived his work environment as hostile, but also that a reasonable person would so perceive it." <u>Id.</u>

In this case, the <u>Complaint</u> alleges that individual defendants harassed him by making "improper rude comments against him," "taking adverse personnel action" and "fabricating labor cases against him." <u>Complaint</u>, ¶ 18, at page 4. These allegations do not meet the aforementioned set of elements to state a disability based hostile work environment. There are no allegations that indicate that the alleged harassment, ¶ 18 of the <u>Complaint</u>, is linked in any manner to a protected disability by the ADA. In addition, the <u>Complaint</u> fails to allege whether the discrimination charge that Plaintiff filed with the EEOC asserted a disability based hostile work environment harassment. If he did not file a charge based on hostile work environment with the EEOC, this Honorable Court is impeded from assessing such a claim in this case.

11

### A.3  Plaintiff has failed to state a claim under Title VII.

In the instant case, Plaintiff claims to have a cause of action under Title VII. Besides the lack of jurisdiction of this Court over this claim due to Plaintiff's lack of compliance to timely file a charge with the EEOC, the appearing defendant hereby contends that he has also failed to state a *prima facie* case under Title VII.

42 U.S.C. 2000e-2 proscribes the following employer practices:

(a) Employer practices

It shall be unlawful employment practice for an employer-  (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex , or national origin; or

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual  of employment  opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

It is well established law that a claimant under Title VII must first establish a *prima facie* case by preponderance of the evidence. <u>See</u> <u>McDonnell Douglas Corporation v. Green</u>, 411 U.S. 792, 93 S.Ct. 1817(1973); <u>Texas Department of Community Affairs v. Burdine</u>, 450 U.S. 248, 101 S.Ct. 1089 (1981).  To establish a *prima facie* case under Title VII, the claimant must show the following:  (1) that the plaintiff belongs to a protected class, i.e. woman, black, Indian, etc.;(2)that the employer took an adverse employment action against the plaintiff; (3) that the plaintiff  was qualified for the position to he/she has applied for and for which the employer was seeking applicants; and (4) that the position remained open and the employer hired or promoted  other individuals with the claimant's qualifications or less qualified persons.

See St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506 (1993); see also Conward v. Cambridge Sch. Comm., 171 F.3d 12, 19 (1st Cir. 1999). It has been held that plaintiff's burden of establishing a *prima facie* case "is not onerous;" Burdine, 450 U.S. at 253; moreover, "[t]he prima facie case serves an important function in the litigation: it eliminates the most common nondiscriminatory reasons for the plaintiff's rejection." Id.

Plaintiff only alleges that he suffers from schizophrenia but his Complaint is devoid of allegations to state that Plaintiff belongs to at least one of the protected groups by Title VII, i.e. religion, gender, national origin, race, etc…   Title VII does not recognize "disability" among the groups protected by its remedial scheme.   Plaintiff cannot rely on his condition of schizophrenia to claim the protections of Title VII when the ADA already provides remedies for claims of disability discrimination in the employment.

### A.  4 Co-plaintiffs lack standing to sue under the ADA and Title VII.

Defendant PREPA argues in the alternative that plaintiffs Sonia Yama and Felicita Oliveras lack standing to sue under the ADA and Title VII.  As  stated  above, the claimant of a Title I of the ADA and Title VII must be an employee of a covered employer within the meaning of both statutes.  The aforementioned co-plaintiffs do not allege to be employees of PREPA, that they belong to a protected group, and/or that an adverse employment action was taken against them.  For this reasons, defendant PREPA submits that these plaintiffs lack standing to bring a suit under Title I of the ADA and Title VII in this case.

### B.  Section 1983

### B.1 Section 1983 is not available as a remedy for the kind of violation of federally protected rights invoked by Plaintiff.

Section 1983 is generally available as a vehicle for remedying violations of federal statutes as well as constitutional violations. Maine v. Thiboutot, 448 U.S. 1 (1980); Suter v. Artist, 503 U.S. 347 (1992). Where relief is available under § 1983, many courts have refused to allow actions directly under the Constitution. See Thomas v. Shipka, 818 F.2d 496 (6th Cir.), reh'g in part on other grounds, 829 F.2d 570 (6th Cir. 1987); Williams v. Bennett, 689 F.2d 1370 (11th Cir. 1982); Ward v. Caulk, 650 F.2d 1144, 1148 (9th Cir. 1981); Kotska v. Hogg, 560 F.2d 37, 42 (1st Cir. 1977). Plaintiff simply stated that he invokes the jurisdiction of the Court under the provisions Section 1983, Title VII, and the ADA. The Complaint does not properly allege the jurisdiction of this Court pursuant to applicable federal judicial statutes.

As an exception to that general rule, a § 1983 suit would not be available for such purpose if Congress has manifested its intention to foreclose such remedy. See Suter, 503 U.S. at 356. The burden is on defendant to show by express provision or other specific evidence from the statute itself that Congress intended to foreclose private enforcement. See Wilder v. Virginia Hospital Association, 496 U.S. 498, 520-521 (1990); Chan v. City of New York, 1 F.3d. 96, 104 (2nd Cir. 1993). Such other evidence may include provision of a scheme of remedial devices that is sufficiently comprehensive to demonstrate congressional intent to preclude the remedy of suits under section 1983. See Wilder, at 521; Chan, at 104. In short, when a statute creates a comprehensive remedial scheme, it should not be supplanted by the remedial apparatus of § 1983. See Smith v. Robinson, 468 U.S. 992 (1984); Middlesex County Sewerage Authority v. National Sea Clammers Association, 453 U.S. 1 (1981). See also

Pona v. Cecil Whittaker's, Inc., 155 F.3d 1034 (8th Cir. 1998); Holbrook v. City of Alpharetta, Ga., 112 F.3d 1522 (11th Cir. 1997).

Title I of the ADA provides an extensive remedial structure that may serve to redress Plaintiffs' present claim under Section 1983. Plaintiff's claim under Section 1983 is also insufficient because he does not establish which constitutional rights were allegedly violated by Defendants in this case. The Complaint is totally silent regarding which of Plaintiff's rights protected by the Amendments of the Constitution of the United States were violated. PREPA understands that Plaintiff bases his Section 1983 claim on his condition of schizophrenia for which Title I of the ADA already provides a remedial scheme. Title VII remedies are available to persons alleging discrimination on the basis of disability under Title I of the ADA. 42 U.S.C. § 12117(a). These remedies include retroactive relief, back pay, and injunctions. See 42 U.S.C. § 2000e. Compensatory damages are available under the ADA but not against the States based on the applicability of the Eleventh Amendment. See Board of Trustees of the University of Alabama v. Garrett, --U.S.--, 2000 WL 33179681 (2001).

In Holbrook, the 11th Circuit found that the Rehabilitation Act and the ADA provide comprehensive remedial frameworks that address Plaintiff's claims under § 1983. See Holbrook v. City of Alpharetta, Ga., 112 F.3d at 1531. The Court reasoned that "[t]o permit a plaintiff to sue both under the substantive statutes that set forth detailed administrative avenues of redress as well as section 1983 would be duplicative at best; in effect, such a holding would provide the plaintiff with two bites at precisely the same apple." Id. It concluded that the plaintiff could not maintain a § 1983 action in lieu of an ADA action if the only alleged deprivation is the employee's rights created by the

ADA. Id. In other words, "if the statutory right that a plaintiff seeks to vindicate comes outfitted with its own comprehensive remedial apparatus, a § 1983 action based on a violation of that statutory right will not lie." Pona v. Cecil Whittaker's, Inc., 155 F.3d at 1038.

Provided the availability of remedies, the ADA clearly provides a scheme of remedial devices sufficiently comprehensive to demonstrate congressional intent to preclude the remedy of suits under § 1983. Such preclusion calls for the dismissal of Plaintiff's Section 1983 claim.

**B.2 Section 1983 claims, if any, are time barred.**

As stated in the introduction of this motion, the appearing defendant contends that Plaintiff's Section 1983 claims are time-barred by the applicable one-year statute of limitations. The Civil Rights Act does not provide a statute of limitations. Hence, actions arising under § 1983 are subject to the state's statute of limitations applicable in tort actions for personal injuries which in Puerto Rico is one year. See Owens v. Okure, 488 U.S. 235 (1988); see also Rivera-Muriente v. Agosto Alicea, 959 F.2d 349, 353 (1st Cir. 1992).

Even though federal courts borrow state's statute of limitations in Section 1983 cases, the federal law determines the date of accrual. See Rivera Muriente, 959 F.2d at 353 (1st. Cir. 1992). In other words, federal law determines the date on which the statute of limitations begin to run. See Carreras-Rosa v. Alves-Cruz, 127 F.3d 172, 174 (1st Cir. 1997). The accrual period begins to run when the aggrieved person "knows, or has reason to know, of the injury on which the action is based." Rivera-Muriente 959 F.2d at 353. Following this rationale "[t]he one year period begins to one day after the

16

date of accrual, which is the date plaintiff knew or had reason to know of the injury." Benitez-Pons v. Commonwealth of Puerto Rico, 136 F.3d 54, 59 (1st Cir. 1998)).

As noted by the First Circuit Court of Appeals, "[t]he Supreme Court has clearly stated that, in this inquiry, 'the proper focus is on the time of the discriminatory act, not the point at which the consequences of the act become painful.'" Vistamar, Inc. v. Fagundo-Fagundo, 430 F.3d 66, 70 (1st Cir. 2005) citing Chardón v. Fernández, 454 U.S. 6, 8 (1981). "It is by now well established that, in employment discrimination actions, limitations periods normally start to run when the employer's decision is made and communicated to the affected employee." Morris v. Gov't Dev. Bank of Puerto Rico, 27 F.3d 746, 750 (1st Cir. 1994). It is sufficient that the employee knows of the "unambiguous and authoritative notice of the adverse employment action […] to trigger the limitations period." Rivera Torres v. Ortíz Vélez, 306 F.Supp.2d 76, 83 (D. Puerto Rico 2002). "Discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." Campbell v. Bank of Boston, N.A., 327 F.3d 1, 11 (1st Cir. 2003).

The appearing defendant does not waive its prior defense in support of the dismissal of Plaintiff's Section 1983 claim but it hereby contends that the Complaint only makes reference to year 2005 as the point in time when the alleged events occurred. Plaintiff filed this lawsuit on June 11, 2007, that is about two years after the alleged occurrence of the factual events described by Plaintiff in this case. Plaintiff had one year to file a claim under Section 1983 to assert any constitutional violations against PREPA and its officers but he failed to do so. For this additional reason, the complaint should be dismissed.

### B.3   Co-plaintiffs Felicita Oliveras Lopez and Sonia M. Yama Ruiz lack standing to sue Under Section 1983 and their Article 1802 of the Civil Code is time-barred.

Plaintiff Felicita Oliveras López is plaintiff Roman's mother, and plaintiff Sonia Yama is plaintiff Roman's wife, and they appear as plaintiffs in this case.   However, these parties have no standing to claim under § 1983. The First Circuit has stated that actions under §1983 are personal in the sense that the plaintiff must have himself suffered the alleged deprivation of constitutional or federal rights. See Caraballo-Cordero v. Banco Financiero de Puerto Rico, 91 F. Supp.2d 484, 488 (D.P.R. 2000); Rodriguez-Oquendo v. Toledo Dávila, 39 F.Supp 2d 127, 131 (DPR 1999); Judge v. City of Lowell, 160 F.3d 67, 76 n.15 (1st Cir. 1998). "The vindication of third party rights is generally not recognized under 42 U.S.C.A. §§ 1983." Caraballo-Cordero, 91 F. Supp.2d at 488 (citing Quiles ex rel. Proj. Head Start v. Hernández Colon, 682 F. Supp. 127, 129 (D.P.R. 1988)). A person may not sue or recover for the deprivation of the civil rights of another. Quiles, 682 F. Supp. at 129. "Family members do not have an independent claim under §1983 unless the constitutionally defective conduct or omission was directed at the family relationship." Rodriguez-Oquendo, 39 F. Supp. 2d at 131 (citing Torres, 24 F.Supp 2d at 183); Cortez-Quiñones v. Jiménez-Nettleship, 842 F.2d 556,563 (1st Cir. 1988).   Simply put, "[o]nly the person toward whom the state action was directed, and not those incidentally affected, may maintain a section 1983 claim." Guzmán Rosa v. de Alba, 671 F.Supp 882, 883 (D.P.R. 1987).   Additionally, a person may not sue or recover for the deprivation of the civil rights of another." Quiles , 682 F.Supp at 129.

The law is clear that only the plaintiffs and not the co-plaintiffs spouses and their conjugal partnership may recover damages for a § 1983 violation.   In addition, co-plaintiffs Yama and Oliveras actions under Article 1802 of the Puerto Rico Civil Code are time-barred by the applicable one year statute of limitations for claming damages.

**WHEREFORE,** the Puerto Rico Electric Power Authority respectfully requests the Court to grant this motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) and (6) on the grounds stated herein.

**I HEREBY CERTIFY** that on this date, this motion was electronically filed with the Clerk of the Court using the CM/ECF system which will send the notice of such filing to:  **JUAN R. RODRIGUEZ, ESQ.**

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico this 9th  day of August, 2007.

> s/ Marie L. Cortés Cortés
> USDC-PR No. 212208
> **Llovet Zurinaga & López, PSC**
> Mercantil Plaza Building
> Suite PH 1616
> 2 Ponce de León Avenue
> San Juan, Puerto Rico 00918
> Tel. (787) 250-1979
> Fax (787) 250-8432
> E-Mail:mcortes@llovetlopez.com
>             marie_l_cortes@msn.com

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| HECTOR L. ROMAN-OLIVERAS, et als., <br><br> Plaintiffs, <br><br> v. <br><br> PUERTO RICO ELECTRIC POWER AUTHORITY, et al., <br><br> Defendants. | Civil No. 07-1498(ADC) <br> Torts |

**MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION
PURSUANT TO FED.R.CIV.P. 12(B)(1) AND FOR FAILURE TO STATE A
COGNIZABLE FEDERAL CLAIM PURSUANT TO FED.R.CIV.P. 12(B)(6)**

TO THE HONORABLE COURT:

**COMES NOW,** defendant Puerto Rico Electric Power Authority, without submitting to the jurisdiction of the Court, and respectfully submits this motion dismiss on the following grounds:

**I.     Introduction**

Defendant Puerto Rico Electric Power Authority (hereinafter, "PREPA") moves this Honorable Court to dismiss the complaint filed by plaintiff Héctor Román Oliveras, his wife and his mother on various grounds but particularly due to the timeliness to file his federal claims, and for having failed to obtain a right to sue letter for bringing claims under the Americans with Disabilities Act (hereinafter, "ADA") and Title VII of the Civil Rights Act, as amended.

Should this Court find that it has subject matter jurisdiction over Plaintiff's claims under the ADA and Title VII, defendant PREPA contends that Plaintiff has equally failed

to state a cognizable claim under both statutes because his allegations in the Complaint do not establish a *prima facie* case pursuant to the applicable statutory frame-work. Upon a reading of the Complaint, for example, it becomes clear that Plaintiff has failed to allege that he requested any reasonable accommodations to PREPA as required by the ADA for claiming a violation under said statute. Plaintiff's Title VII claim confronts a similar problem because he has not alleged to belong to a protected group to allege employment discrimination.

In addition, Plaintiff's claims under Section 1983 of the Civil Rights Act are time barred by the applicable one-year statute of limitations. PREPA also submits that Plaintiff's Title VII and ADA claims confront the same fate because the Complaint alleges that "in the (sic) year 2005" and he waited until February 23, 2007, to file an administrative charge with the Equal Employment Opportunity Commission. In addition, the Complaint is devoid of any allegations that would comply with a *prima facie* case under Section 1983. Plaintiff cannot rely on Section 1983's remedial frame-work to supplant Title VII's and ADA's comprehensive remedial schemes.

Last but not least, co-plaintiffs Sonia María Yama Ruiz and Felicita Oliveras Lopez lack standing to sue under Title VII, ADA, and Section 1983. In any event, Plaintiffs' claims under Articles 1802 and 1803 of the Puerto Rico Civil Code are time-barred by the applicable statute of limitations.

## II. Standard for a motion under Fed.R.Civ.P.12(B)(1)

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a defendant may controvert the factual accuracy (rather than merely the sufficiency) of the jurisdictional facts asserted by the plaintiff and proffer materials of evidentiary quality in support of

2

that position. <u>See</u> <u>Murphy v. United States</u>, 45 F.3d 520, 522 (1st Cir. 1995). The plaintiff's jurisdictional averments are entitled to no presumptive weight and the court must address the merits of the jurisdictional claim by resolving the factual disputes between the parties. In the context of this inquiry, the court enjoys broad authority to order discovery, consider extrinsic evidence, and hold evidentiary hearings in order to determine its own jurisdiction. <u>See</u> <u>Valentin v. Hospital Bella Vista</u>, 254 F.3d 358, 363-364 (1st Cir. 2001) (<u>citing</u> <u>Garcia v. Copenhaver, Bell & Assocs.</u>, 104 F.3d 1256, 1261 (11th Cir.1997), <u>Lawrence v. Dunbar</u>, 919 F.2d 1525, 1529 (11th Cir.1990), and <u>Rosales v. United States</u>, 824 F.2d 799, 803 (9th Cir.1987)). <u>See also</u> <u>Dynamic Image Technologies, Inc. v. U.S.</u>, 221 F.3d 34, 37-38 (1st Cir. 2000).

This analysis is necessary because "[a] court's authority to hear a particular case is a necessary precondition to the proper performance of the judicial function. Thus, when a fact bound jurisdictional question looms, a court must be allowed considerable leeway in weighing the proof, drawing reasonable inferences, and satisfying itself that subject-matter jurisdiction has attached." <u>Valentin</u>, 254 F.3d at 364 (citing <u>Williamson v. Tucker</u>, 645 F.2d 404, 412-13 (5th Cir.1981)).

### III. Standard for a motion under Fed.R.Civ.P. 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), the applicable inquiry is whether the allegations of the Complaint, read in the light most favorable to Plaintiff, state a claim upon which relief could be granted.   As the Court of Appeals for the First Circuit has explained in <u>Uphoff Figueroa v. Puerto Rico Electric Power Authority</u>, 2005 WL 3095517, 5 "[w]hen ruling on a 12(b)(6) motion a court must accept all well-pled averments as true and draw all reasonable inferences in favor of the non-moving party."

3

see also  Doyle v. Hasbro Inc., 103 F.3d 186, 190 (1st Cir. 1996).  Dismissal under Rule
12 (b)(6) is "appropriate if the facts alleged, taken as true, do not justify recovery." Id.
The standard is not quite as feeble as first appears:

> [T]he pleading requirement... is not a 'toothless tiger.'
> [Citations omitted].  The threshold for stating a claim may be
> low, but it is real.  [Citations omitted].  In order to survive a
> motion to dismiss, plaintiffs must set forth factual allegations,
> either direct or inferential, regarding each material element
> necessary to sustain recovery.  [Citations omitted].  Although
> all inferences must be made in the plaintiffs' favor, this Court
> need not accept 'bald assertions, unsupportable conclusions,
> periphrastic circumlocutions, and the like.'  [Citations
> omitted].

Id.  To put it simply, the Court must look leniently at the allegations of the cross
claim in and determine if those allegations "can reasonably admit a claim."  Id.

Even though the court must take the factual averments of the complaint as true
and draw all reasonable inferences in favor of the plaintiff, see Coyne v. City of
Somerville, 972 F.2d 440, 442-43 (1st Cir. 1992), it is not required to accept every
allegation made by the complainant no matter how conclusory or generalized, see
United States v. AVX Corp., 962 F.2d 108, 115 (1st Cir.1992). "'[E]mpirically
unverifiable' conclusions, not 'logically compelled, or at least supported, by the stated
facts,' deserve no deference." Id.

For the reasons that will be stated in this motion, the Complaint in this case
should be dismissed for failure to state a claim.

### GROUNDS FOR DISMISSAL

#### A.    Lack of subject matter jurisdiction

This Honorable Court lacks jurisdiction over claims brought by Plaintiff under Title
VII and the ADA.  Defendant PREPA will first discuss those claims for which Plaintiff did

4

not file a timely charge of discrimination (Title VII and ADA) with the Equal Employment Opportunity Commission (hereinafter the "EEOC") within the prescribed time before suing in Federal Court.

### A.1   Claims Under Title I of the ADA and Title VII of the Civil Rights Act.

Plaintiff filed a charge of discrimination with the EEOC on February 23, 2007. See Complaint, ¶ 22, at page 5.  He filed his discrimination charge presumably alleging discrimination under the Title I of the ADA and Title VII.[1]   Plaintiff claims that in year 2005, all codefendants to this case began to incur in the following alleged conduct:

(1) That reprisal was taken against Plaintiff because of "previous situations including his participation as leader of workman (sic) and his activities with the [labor] union."  See Complaint, ¶12, at page 3;

(2) that codefendants "have been using plaintiff's mental medical condition to remove co-plaintiff from his occupation with codefendant PREPA." Complaint, ¶ 13, at page 3;

(3) that codefendants "referred plaintiff Hector Luis Roman-Oliveras without reason to the doctors of PREPA, and to evaluations with the doctors of (Corporacion del Fondo del Seguro del Estado)" and that he was "asked for the evaluations of [his] private doctors."  Complaint, ¶ 14, at pages 3-4;

(4) that "[a]ll of the doctors who evaluated plaintiff Hector Roman-Oliveras determined that the plaintiff was capable to continue his work with co-defendant PREPA." Complaint, ¶ 15, at page 4;

(5) that "[c]odefendant PREPA has requested the results of the medical evaluations of plaintiff Hector Roman-Oliveras"  and that "[w]hen the satisfactory evaluations are provided to the co-defendants they request new evaluations, changing the entire process of the reinstallation of plaintiffs (sic) duties."  Complaint ¶ 16, at page 4;

(6) that "[c]odefendants tried in one occasion to transfer plaintiff Hector Roman-Oliveras without the benefit of of (sic) paying him diet and car allowance" and

---

1 The Complaint does not allege the contents of the discrimination charge.   Only for purposes of supporting our arguments for the dismissal of the complaint, we will assume Plaintiff averred employment discrimination proscribed by Title I of the ADA and Title VII in the discrimination charge that he filed on February 23, 2007.

that "[he] has been treated differently from similarly situated individuals outside the protected group." <u>Complaint</u>, ¶ 17, at page 4;

(7) that "[codefendants Velez and Renta] have harassed plaintiff Hector Roman-Oliveras making improper rude comments against him, taking adverse employment action and fabricating labor cases against him; using false information and using their official positions improperly…" <u>Complaint</u>, ¶ 18, at page 4;

(8) that "[he] has been subject to hostile work environment because of the direct actions of co-defendants James Velez and Julio Renta and PREPA." <u>Complaint</u>, ¶ 19, at page 4; and

(9) that "[he] has been subject to the adverse employment actions because of his medical condition and active participation with the Union." <u>Complaint</u>, ¶ 20, at page 4.

All the above-stated allegations, itemized from 1 through 9, occurred in year 2005 as stated in the <u>Complaint</u>. These events are time-barred and that plaintiff failed to timely exhaust administrative remedies accordingly.

The First Circuit Court of Appeals has decided that the filing of an administrative action is a prerequisite for filing a federal action under Title I of the ADA. <u>See</u> <u>Bonilla v. Muebles J.J. Alvarez, Inc.</u>, 194 F.3d 275 (1st Cir. 1999). Title I of the ADA provides that "[t]he powers, remedies, and procedures set forth in sections 705, 706, 707, 709, and 710 of the Civil Rights Act of 1964 (42 U.S.C. §§ 2000e-4, 2000e-5, 2000e-6, 2000e-8, and 2000e-9) shall be the powers, remedies, and procedures this title provides to the Commission, the Attorney General, or to any person alleging discrimination on the basis of disability…" <u>See</u> 42 U.S.C. § 12117. Specifically, section 2000e-5(1) of Title VII states that a charge "shall be filed" with the EEOC "within three-hundred days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law" 42 U.S.C. § 2000e-5. The established statutory period for filing an administrative charge with the E.E.O.C. serves to "protect[ ] employers from the burden

of defending claims arising from employment decisions that are long past." O'Rourke v. City of Providence, 235 F.3d 713, 730 (1st Cir. 2001); see also, Castro Ortiz v. Fajardo, 133 F.Supp.2d 143, 147 (D. Puerto Rico 2001).

In the instant case, Plaintiff did comply with § 2000e-5(1) with respect to the events that he describes in the Complaint. According to the only date that Plaintiff has alleged in the Compliant upon which he bases his causes of action under Title VII and Title I of the ADA, he did not file a timely charge with either the E.E.O.C. or the available state agency. Clearly, more than three hundred days had elapsed when he filed a charge with the E.E.O.C.

Since section 2000e-5(1) applies to Title I of the ADA, plaintiff must first exhaust administrative remedies before filing a complaint in federal court. See Bonilla v. Muebles J.J. Alvarez, Inc., supra, at 277 (1st Cir. 1999). In suits involving Title VII and Title I of the ADA claims the "unexcused" failure to file a charge with the EEOC or the appropriate state agency "bars the courthouse door." See Bonilla v. Muebles J.J. Alvarez, Inc., 194 F.3d at 278. The First Circuit relied on Zipes v. Trans World Airlines, Inc., 455 U.S. 807, 817, 100 S.Ct. 2486, 71 L.Ed.2d 234 (1982), to emphasize that the filing of the charge with the EEOC is obligatory but not jurisdictional. Id. At the end, the Court of Appeals in Bonilla affirmed the district court's dismissal of the case for lack of subject matter jurisdiction based upon plaintiff's failure to file a timely charge with the EEOC. The same result applies to Plaintiff's Title VII claim. See Jorge v. Rumsfeld, 404 F.3d 556, 564 (1st Cir. 2005); Noviello v. City of Boston, 398 F.3d 76, 85 (1st Cir. 2005). "Title VII requires, as a predicate to a civil action, that the complainant first file an administrative charge with the EEOC within a specified and relatively short time period

7

(usually 180 or 300 days) after the discrimination complained of." Clockedile v. New Hampshire Dept. of Corrections, 245 F.3d 1, 3 (1st Cir. 2001).

In this case, Plaintiff confronts an additional problem. He does not allege to have received a right to sue letter in order to file this civil action in federal court within the prescribe period of ninety days. PREPA contends that Plaintiff's omission in alleging to have obtained a right to sue letter before filing the instant action constitutes additional grounds in support of dismissal.

### A.2 Plaintiff has failed to state a *prima facie* case under the ADA.

Title I of the ADA bars discrimination in employment. Section 12112 (a) of the ADA provides that as a general rule "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

Plaintiff must meet various requirements to properly institute an action under Title I. First, he must assert that he/she is "qualified individual with a disability" within the meaning of the ADA. See Equal Employment Opportunity Commission v. Amego, Inc., 110 F.3d 135, at 142 (1st Cir. 1997) (citing Jaques v. Clean-up Group, Inc., 96 F.3d 506, 511 (1st Cir. 1996) regarding the burden of proof for plaintiffs to establish a claim under the ADA). A "qualified individual" is an "individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111 (8). "Disability" means *inter alia* "a physical or mental impairment that substantially limits one or more of the

8

major life activities of such individual." 42 U.S.C. § 12102 (2). "Major life activities" are defined as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i).

The second element that the plaintiff must also allege is that "with or without reasonable accommodation he was able to perform the essential functions of his job." See Katz v. City Metal Co., Inc., 87 F.3d 26, at 30 (1st Cir. 1996). Third, the plaintiff must demonstrate that his employer took an adverse employment action against him based on his disability. See E.E.O.C. V. Amego, Inc., 110 F.3d 135, at 142 (1st Cir. 1997). The plaintiff must also allege that he/she was replaced by a non-disabled individual in the employment or was treated less favorably than non-disabled employees. See Carroll v. Xerox Corp., 294 F.3d 231, 237 (1st Cir. 2002).

Title I of the ADA cases are subject to the framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), for Title VII cases which applies in absence of direct evidence to prove discrimination in the employment. See Higgins v. New Balance Athletic Shoe, Inc., 194 F.3d 252, 264 (1st Cir. 1999). Defendant PREPA will not enter to discuss the second part of the McDonnell Douglas test in this motion because we are addressing the preliminary requirements for stating a *prima facie* case under the ADA.

The Complaint alleges that Plaintiff has been evaluated by doctors who have determined that he is capable to continue to work despite the allegation that he suffers from schizophrenia. See Complaint, ¶¶10, 15, 16. The allegation that Plaintiff suffers from a condition that appears to be covered by the ADA, without more, is insufficient to state an ADA claim against PREPA in this case. Plaintiff does not allege that his mental

9

condition affects a major life activity as required by the ADA.  See Bailey v. Georgia-Pacific Corp., 306 F.3d 1162, 1167 (1st Cir. 2002).  In this case, the Complaint does make out any factual allegations about whether Plaintiff requested, in fact, reasonable accommodation in his employment with PREPA.  See Gacía Ayala v. Lederle Parenterals, Inc., 212 F.3d 638 (1st Cir. 2000).

In addition, Plaintiff fails to identify an adverse personnel action that his employer took against him.  He simply states that defendants "tried in one occasion to transfer [him] without the benefit of of (sic) paying him diet and car allowance."  Complaint, ¶ 17, at page 4.  However, the alleged intent of a transfer is insufficient to constitute an adverse employment action.  The Complaint fails to link the alleged intent of a transfer to his condition of schizophrenia.

In the First Circuit Court of Appeals, it is not well settled law whether "disability based hostile work environment " exists under the ADA. See  Rocafort v. IBM Corp., 334 F.3d 115 (1st Cir. 2003).  The First Circuit Court of Appeals assumed on one occasion those claims to be cognizable.  See Rivera Rodríguez v. Frito Lay Snacks Caribbean, A Div. of Pepsico P.R., Inc., 265 F.3d 15, 23 (1st Cir. 2001).  The District Court for the District of Puerto Rico has recognized that there is a cognizable claim of disability based hostile work environment on various cases but subject to an analysis of Title VII hostile environment claims scrutiny.  See Rodríguez Velazquez v. Autoridad Metropolitana de Autobuses, 2007 WL 1188267 (D.P.R. 2007); Rodríguez v. Locite P.R., Inc., 967 F. Supp. 653, 662 (D.P.R. 1997).  Along these lines, the appearing defendant proceeds to discuss the elements of such a claim, and anticipates to this

10

Honorable Court that the <u>Complaint</u> also fails to meet the burden of alleging a *prima facie* case of disability based hostile work environment.

The District Court of Puerto Rico incorporated the elements of Title VII hostile work environment to ADA cases in <u>Rodríguez Velázquez</u>, 2007 WL 1188267 (D.P.R. 2007). The District Court, <u>citing Flowers v. Regional Physician Serv., Inc.</u>, 247 F.3d 169, 235 (5th Cir. 2001), stated the following: "Accordingly, to succeed on a claim of disability-based harassment, the plaintiff must prove: (1) that [he] belongs to a protected group; (2) that [he] was subjected to unwelcome harassment; (3) that the harassment complained of was based on [his] disability or disabilities; (4) that the harassment compliant of affected a term, condition, or privilege of employment; and (5) that the employer knew or should have known of the harassment and failed to take prompt, remedial action." Plaintiff must also prove that "he subjectively perceived his work environment as hostile, but also that a reasonable person would so perceive it." <u>Id.</u>

In this case, the <u>Complaint</u> alleges that individual defendants harassed him by making "improper rude comments against him," "taking adverse personnel action" and "fabricating labor cases against him." <u>Complaint</u>, ¶ 18, at page 4. These allegations do not meet the aforementioned set of elements to state a disability based hostile work environment. There are no allegations that indicate that the alleged harassment, ¶ 18 of the <u>Complaint</u>, is linked in any manner to a protected disability by the ADA. In addition, the <u>Complaint</u> fails to allege whether the discrimination charge that Plaintiff filed with the EEOC asserted a disability based hostile work environment harassment. If he did not file a charge based on hostile work environment with the EEOC, this Honorable Court is impeded from assessing such a claim in this case.

### A.3  Plaintiff has failed to state a claim under Title VII.

In the instant case, Plaintiff claims to have a cause of action under Title VII. Besides the lack of jurisdiction of this Court over this claim due to Plaintiff's lack of compliance to timely file a charge with the EEOC, the appearing defendant hereby contends that he has also failed to state a *prima facie* case under Title VII.

42 U.S.C. 2000e-2 proscribes the following employer practices:

(a) Employer practices

It shall be unlawful employment practice for an employer-  (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex , or national origin; or

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual  of employment  opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

It is well established law that a claimant under Title VII must first establish a *prima facie* case by preponderance of the evidence. See McDonnell Douglas Corporation v. Green, 411 U.S. 792, 93 S.Ct. 1817(1973); Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089 (1981).  To establish a *prima facie* case under Title VII, the claimant must show the following:  (1) that the plaintiff belongs to a protected class, i.e. woman, black, Indian, etc.;(2)that the employer took an adverse employment action against the plaintiff; (3) that the plaintiff  was qualified for the position to he/she has applied for and for which the employer was seeking applicants; and (4) that the position remained open and the employer hired or promoted  other individuals with the claimant's qualifications or less qualified persons.

12

See St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506 (1993); see also Conward v. Cambridge Sch. Comm., 171 F.3d 12, 19 (1st Cir. 1999).  It has been held that plaintiff's burden of establishing a *prima facie* case "is not onerous;" Burdine, 450 U.S. at 253; moreover, "[t]he prima facie case serves an important function in the litigation: it eliminates the most common nondiscriminatory reasons for the plaintiff's rejection." Id.

Plaintiff only alleges that he suffers from schizophrenia but his Complaint is devoid of allegations to state that Plaintiff belongs to at least one of the protected groups by Title VII, i.e. religion, gender, national origin, race, etc…   Title VII does not recognize "disability" among the groups protected by its remedial scheme.  Plaintiff cannot rely on his condition of schizophrenia to claim the protections of Title VII when the ADA already provides remedies for claims of disability discrimination in the employment.

### A. 4 Co-plaintiffs lack standing to sue under the ADA and Title VII.

Defendant PREPA argues in the alternative that plaintiffs Sonia Yama and Felicita Oliveras lack standing to sue under the ADA and Title VII.  As  stated  above, the claimant of a Title I of the ADA and Title VII must be an employee of a covered employer within the meaning of both statutes.  The aforementioned co-plaintiffs do not allege to be employees of PREPA, that they belong to a protected group, and/or that an adverse employment action was taken against them.  For this reasons, defendant PREPA submits that these plaintiffs lack standing to bring a suit under Title I of the ADA and Title VII in this case.

### B.  Section 1983

### B.1 Section 1983 is not available as a remedy for the kind of violation of federally protected rights invoked by Plaintiff.

13

Section 1983 is generally available as a vehicle for remedying violations of federal statutes as well as constitutional violations.  Maine v. Thiboutot, 448 U.S. 1 (1980); Suter v. Artist, 503 U.S. 347 (1992).  Where relief is available under § 1983, many courts have refused to allow actions directly under the Constitution. See Thomas v. Shipka, 818 F.2d 496 (6th Cir.), reh'g in part on other grounds, 829 F.2d 570 (6th Cir. 1987); Williams v. Bennett, 689 F.2d 1370 (11th Cir. 1982); Ward v. Caulk, 650 F.2d 1144, 1148 (9th Cir. 1981); Kotska v. Hogg, 560 F.2d 37, 42 (1st Cir. 1977).  Plaintiff simply stated that he invokes the jurisdiction of the Court under the provisions Section 1983, Title VII, and the ADA.  The Complaint does not properly allege the jurisdiction of this Court pursuant to applicable federal judicial statutes.

As an exception to that general rule, a § 1983 suit would not be available for such purpose if Congress has manifested its intention to foreclose such remedy.  See Suter, 503 U.S. at 356.  The burden is on defendant to show by express provision or other specific evidence from the statute itself that Congress intended to foreclose private enforcement. See Wilder v. Virginia Hospital Association, 496 U.S. 498, 520-521 (1990); Chan v. City of New York, 1 F.3d 96, 104 (2nd Cir. 1993).  Such other evidence may include provision of a scheme of remedial devices that is sufficiently comprehensive to demonstrate congressional intent to preclude the remedy of suits under section 1983. See Wilder, at 521; Chan, at 104.  In short, when a statute creates a comprehensive remedial scheme, it should not be supplanted by the remedial apparatus of § 1983. See Smith v. Robinson, 468 U.S. 992 (1984); Middlesex County Sewerage Authority v. National Sea Clammers Association, 453 U.S. 1 (1981). See also

Pona v. Cecil Whittaker's, Inc., 155 F.3d 1034 (8th Cir. 1998); Holbrook v. City of Alpharetta, Ga., 112 F.3d 1522 (11th Cir. 1997).

Title I of the ADA provides an extensive remedial structure that may serve to redress Plaintiffs' present claim under Section 1983. Plaintiff's claim under Section 1983 is also insufficient because he does not establish which constitutional rights were allegedly violated by Defendants in this case. The Complaint is totally silent regarding which of Plaintiff's rights protected by the Amendments of the Constitution of the United States were violated. PREPA understands that Plaintiff bases his Section 1983 claim on his condition of schizophrenia for which Title I of the ADA already provides a remedial scheme. Title VII remedies are available to persons alleging discrimination on the basis of disability under Title I of the ADA. 42 U.S.C. § 12117(a). These remedies include retroactive relief, back pay, and injunctions. See 42 U.S.C. § 2000e. Compensatory damages are available under the ADA but not against the States based on the applicability of the Eleventh Amendment. See Board of Trustees of the University of Alabama v. Garrett, --U.S.--, 2000 WL 33179681 (2001).

In Holbrook, the 11th Circuit found that the Rehabilitation Act and the ADA provide comprehensive remedial frameworks that address Plaintiff's claims under § 1983. See Holbrook v. City of Alpharetta, Ga., 112 F.3d at 1531. The Court reasoned that "[t]o permit a plaintiff to sue both under the substantive statutes that set forth detailed administrative avenues of redress as well as section 1983 would be duplicative at best; in effect, such a holding would provide the plaintiff with two bites at precisely the same apple." Id. It concluded that the plaintiff could not maintain a § 1983 action in lieu of an ADA action if the only alleged deprivation is the employee's rights created by the

15

ADA. Id. In other words, "if the statutory right that a plaintiff seeks to vindicate comes outfitted with its own comprehensive remedial apparatus, a § 1983 action based on a violation of that statutory right will not lie." Pona v. Cecil Whittaker's, Inc., 155 F.3d at 1038.

Provided the availability of remedies, the ADA clearly provides a scheme of remedial devices sufficiently comprehensive to demonstrate congressional intent to preclude the remedy of suits under § 1983. Such preclusion calls for the dismissal of Plaintiff's Section 1983 claim.

**B.2 Section 1983 claims, if any, are time barred.**

As stated in the introduction of this motion, the appearing defendant contends that Plaintiff's Section 1983 claims are time-barred by the applicable one-year statute of limitations. The Civil Rights Act does not provide a statute of limitations. Hence, actions arising under § 1983 are subject to the state's statute of limitations applicable in tort actions for personal injuries which in Puerto Rico is one year. See Owens v. Okure, 488 U.S. 235 (1988); see also Rivera-Muriente v. Agosto Alicea, 959 F.2d 349, 353 (1st Cir. 1992).

Even though federal courts borrow state's statute of limitations in Section 1983 cases, the federal law determines the date of accrual. See Rivera Muriente, 959 F.2d at 353 (1st. Cir. 1992). In other words, federal law determines the date on which the statute of limitations begin to run. See Carreras-Rosa v. Alves-Cruz, 127 F.3d 172, 174 (1st Cir. 1997). The accrual period begins to run when the aggrieved person "knows, or has reason to know, of the injury on which the action is based." Rivera-Muriente 959 F.2d at 353. Following this rationale "[t]he one year period begins to one day after the

date of accrual, which is the date plaintiff knew or had reason to know of the injury." Benitez-Pons v. Commonwealth of Puerto Rico, 136 F.3d 54, 59 (1st Cir. 1998)).

As noted by the First Circuit Court of Appeals, "[t]he Supreme Court has clearly stated that, in this inquiry, 'the proper focus is on the time of the discriminatory act, not the point at which the consequences of the act become painful.'" Vistamar, Inc. v. Fagundo-Fagundo, 430 F.3d 66, 70 (1st Cir. 2005) citing Chardón v. Fernández, 454 U.S. 6, 8 (1981). "It is by now well established that, in employment discrimination actions, limitations periods normally start to run when the employer's decision is made and communicated to the affected employee." Morris v. Gov't Dev. Bank of Puerto Rico, 27 F.3d 746, 750 (1st Cir. 1994). It is sufficient that the employee knows of the "unambiguous and authoritative notice of the adverse employment action […] to trigger the limitations period." Rivera Torres v. Ortíz Vélez, 306 F.Supp.2d 76, 83 (D. Puerto Rico 2002). "Discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." Campbell v. Bank of Boston, N.A., 327 F.3d 1, 11 (1st Cir. 2003).

The appearing defendant does not waive its prior defense in support of the dismissal of Plaintiff's Section 1983 claim but it hereby contends that the Complaint only makes reference to year 2005 as the point in time when the alleged events occurred. Plaintiff filed this lawsuit on June 11, 2007, that is about two years after the alleged occurrence of the factual events described by Plaintiff in this case. Plaintiff had one year to file a claim under Section 1983 to assert any constitutional violations against PREPA and its officers but he failed to do so. For this additional reason, the complaint should be dismissed.

### B.3 Co-plaintiffs Felicita Oliveras Lopez and Sonia M. Yama Ruiz lack standing to sue Under Section 1983 and their Article 1802 of the Civil Code is time-barred.

Plaintiff Felicita Oliveras López is plaintiff Roman's mother, and plaintiff Sonia Yama is plaintiff Roman's wife, and they appear as plaintiffs in this case. However, these parties have no standing to claim under § 1983. The First Circuit has stated that actions under §1983 are personal in the sense that the plaintiff must have himself suffered the alleged deprivation of constitutional or federal rights. See Caraballo-Cordero v. Banco Financiero de Puerto Rico, 91 F. Supp.2d 484, 488 (D.P.R. 2000); Rodriguez-Oquendo v. Toledo Dávila, 39 F.Supp 2d 127, 131 (DPR 1999); Judge v. City of Lowell, 160 F.3d 67, 76 n.15 (1st Cir. 1998). "The vindication of third party rights is generally not recognized under 42 U.S.C.A. §§ 1983." Caraballo-Cordero, 91 F. Supp.2d at 488 (citing Quiles ex rel. Proj. Head Start v. Hernández Colon, 682 F. Supp. 127, 129 (D.P.R. 1988)). A person may not sue or recover for the deprivation of the civil rights of another. Quiles, 682 F. Supp. at 129. "Family members do not have an independent claim under §1983 unless the constitutionally defective conduct or omission was directed at the family relationship." Rodriguez-Oquendo, 39 F. Supp. 2d at 131 (citing Torres, 24 F.Supp 2d at 183); Cortez-Quiñones v. Jiménez-Nettleship, 842 F.2d 556,563 (1st Cir. 1988). Simply put, "[o]nly the person toward whom the state action was directed, and not those incidentally affected, may maintain a section 1983 claim." Guzmán Rosa v. de Alba, 671 F.Supp 882, 883 (D.P.R. 1987). Additionally, a person may not sue or recover for the deprivation of the civil rights of another." Quiles , 682 F.Supp at 129.

The law is clear that only the plaintiffs and not the co-plaintiffs spouses and their conjugal partnership may recover damages for a § 1983 violation.   In addition, co-plaintiffs Yama and Oliveras actions under Article 1802 of the Puerto Rico Civil Code are time-barred by the applicable one year statute of limitations for claming damages.

**WHEREFORE,** the Puerto Rico Electric Power Authority respectfully requests the Court to grant this motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) and (6) on the grounds stated herein.

**I HEREBY CERTIFY** that on this date, this motion was electronically filed with the Clerk of the Court using the CM/ECF system which will send the notice of such filing to:  **JUAN R. RODRIGUEZ, ESQ.**

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico this 9th  day of August, 2007.

s/ Marie L. Cortés Cortés
USDC-PR No. 212208
**Llovet Zurinaga & López, PSC**
Mercantil Plaza Building
Suite PH 1616
2 Ponce de León Avenue
San Juan, Puerto Rico 00918
Tel. (787) 250-1979
Fax (787) 250-8432
E-Mail:mcortes@llovetlopez.com
marie_l_cortes@msn.com

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| HECTOR L. ROMAN-OLIVERAS, et als., Plaintiffs, v. PUERTO RICO ELECTRIC POWER AUTHORITY, et al., Defendants. | Civil No. 07-1498(ADC) Torts |

## MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION PURSUANT TO FED.R.CIV.P. 12(B)(1) AND FOR FAILURE TO STATE A COGNIZABLE FEDERAL CLAIM PURSUANT TO FED.R.CIV.P. 12(B)(6)

TO THE HONORABLE COURT:

**COMES NOW,** defendant Puerto Rico Electric Power Authority, without submitting to the jurisdiction of the Court, and respectfully submits this motion dismiss on the following grounds in response to Plaintiff's Amended Complaint:

### I.    Introduction

On August 28, 2007, Plaintiffs submitted a "First Amended Complaint" after the appearing defendant filed a motion to dismiss.  Upon a review of Plaintiffs' amended allegations, defendant Puerto Rico Electric Power Authority (hereinafter, "PREPA") contends that the allegations are insufficient to state a federal cause of action in this case.  Thus, PREPA newly files a motion to dismiss alleging that there is lack of subject matter jurisdiction and for failure to state a federal cognizable claim.

Defendant Puerto Rico Electric Power Authority (hereinafter, "PREPA") moves this Honorable Court to dismiss the complaint filed by plaintiff Héctor Román Oliveras,

his wife and his mother on various grounds but particularly due to the timeliness to file his federal claims, and for having failed to obtain a right to sue letter for bringing claims under the Americans with Disabilities Act (hereinafter, "ADA") and Title VII of the Civil Rights Act, as amended.

Should this Court find that it has subject matter jurisdiction over Plaintiff's claims under the ADA and Title VII, defendant PREPA contends that Plaintiff has equally failed to state a cognizable claim under both statutes because his allegations in the Complaint do not establish a *prima facie* case pursuant to the applicable statutory frame-work. Upon a reading of the Complaint, for example, it becomes clear that Plaintiff has failed to allege that he requested any reasonable accommodations to PREPA as required by the ADA for claiming a violation under said statute. Plaintiff's Title VII claim confronts a similar problem because he has not alleged to belong to a protected group to allege employment discrimination.

In addition, Plaintiff's claims under Section 1983 of the Civil Rights Act are time barred by the applicable one-year statute of limitations. PREPA also submits that Plaintiff's Title VII and ADA claims confront the same fate because the Complaint alleges that "in the (sic) year 2005" and he waited until February 23, 2007, to file an administrative charge with the Equal Employment Opportunity Commission. In addition, the Complaint is devoid of any allegations that would comply with a *prima facie* case under Section 1983. Plaintiff cannot rely on Section 1983's remedial frame-work to supplant Title VII's and ADA's comprehensive remedial schemes.

Last but not least, co-plaintiffs Sonia María Yama Ruiz and Felicita Oliveras Lopez lack standing to sue under Title VII, ADA, and Section 1983. In any event,

Plaintiffs' claims under Articles1802 and 1803 of the Puerto Rico Civil Code are time-barred by the applicable statute of limitations.

## II. Standard for a motion under Fed.R.Civ.P.12(B)(1)

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a defendant may controvert the factual accuracy (rather than merely the sufficiency) of the jurisdictional facts asserted by the plaintiff and proffer materials of evidentiary quality in support of that position. See Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995). The plaintiff's jurisdictional averments are entitled to no presumptive weight and the court must address the merits of the jurisdictional claim by resolving the factual disputes between the parties. In the context of this inquiry, the court enjoys broad authority to order discovery, consider extrinsic evidence, and hold evidentiary hearings in order to determine its own jurisdiction. See Valentin v. Hospital Bella Vista, 254 F.3d 358, 363-364 (1st Cir. 2001) (citing Garcia v. Copenhaver, Bell & Assocs., 104 F.3d 1256, 1261 (11th Cir.1997), Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir.1990), and Rosales v. United States, 824 F.2d 799, 803 (9th Cir.1987)). See also Dynamic Image Technologies, Inc. v. U.S., 221 F.3d 34, 37-38 (1st Cir. 2000).

This analysis is necessary because "[a] court's authority to hear a particular case is a necessary precondition to the proper performance of the judicial function. Thus, when a fact bound jurisdictional question looms, a court must be allowed considerable leeway in weighing the proof, drawing reasonable inferences, and satisfying itself that subject-matter jurisdiction has attached." Valentin, 254 F.3d at 364 (citing Williamson v. Tucker, 645 F.2d 404, 412-13 (5th Cir.1981)).

## III. Standard for a motion under Fed.R.Civ.P. 12(b)(6)

3

Under Federal Rule of Civil Procedure 12(b)(6), the applicable inquiry is whether the allegations of the Complaint, read in the light most favorable to Plaintiff, state a claim upon which relief could be granted.   As the Court of Appeals for the First Circuit has explained in Uphoff Figueroa v. Puerto Rico Electric Power Authority, 2005 WL 3095517, 5 "[w]hen ruling on a 12(b)(6) motion a court must accept all well-pled averments as true and draw all reasonable inferences in favor of the non-moving party." see also  Doyle v. Hasbro Inc., 103 F.3d 186, 190 (1st Cir. 1996).  Dismissal under Rule 12 (b)(6) is "appropriate if the facts alleged, taken as true, do not justify recovery." Id. The standard is not quite as feeble as first appears:

> [T]he pleading requirement... is not a 'toothless tiger.' [Citations omitted].  The threshold for stating a claim may be low, but it is real.  [Citations omitted].  In order to survive a motion to dismiss, plaintiffs must set forth factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery.  [Citations omitted].  Although all inferences must be made in the plaintiffs' favor, this Court need not accept 'bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like.' [Citations omitted].

Id.  To put it simply, the Court must look leniently at the allegations of the cross claim in and determine if those allegations "can reasonably admit a claim."  Id.

Even though the court must take the factual averments of the complaint as true and draw all reasonable inferences in favor of the plaintiff, see Coyne v. City of Somerville, 972 F.2d 440, 442-43 (1st Cir. 1992), it is not required to accept every allegation made by the complainant no matter how conclusory or generalized, see United States v. AVX Corp., 962 F.2d 108, 115 (1st Cir.1992). "'[E]mpirically unverifiable' conclusions, not 'logically compelled, or at least supported, by the stated facts,' deserve no deference." Id.

4

For the reasons that will be stated in this motion, the Complaint in this case should be dismissed for failure to state a claim.

### GROUNDS FOR DISMISSAL

**A.    Lack of subject matter jurisdiction**

This Honorable Court lacks jurisdiction over claims brought by Plaintiff under Title VII and the ADA.  Defendant PREPA will first discuss those claims for which Plaintiff did not file a timely charge of discrimination (Title VII and ADA) with the Equal Employment Opportunity Commission (hereinafter the "EEOC") within the prescribed time before suing in Federal Court.

**A.1   Claims Under Title I of the ADA and Title VII of the Civil Rights Act.**

Plaintiff filed a charge of discrimination with the EEOC on February 23, 2007. See Complaint, ¶ 22, at page 5.  He filed his discrimination charge presumably alleging discrimination under the Title I of the ADA and Title VII.[1]   Plaintiff claims that in year 2005 and part of year 2006, all codefendants to this case began to incur in the following alleged conduct:

(1) That reprisal was taken against Plaintiff because of "previous situations including his participation as leader of workman (sic) and his activities with the [labor] union." See Amended Complaint, ¶12, at page 3;  and

(2) That "[o]n March 1, 2006, co-defendant PREPA's social worker requested PREPA's physician no to allow Plaintiff to work until he was evaluated by a psychiatrist.  Co-defendant PREPA did not allow Plaintiff to work." Amended Complaint, ¶12a, at page 3.

---

[1] The Amended Complaint does not allege the contents of the discrimination charge.   Only for purposes of supporting our arguments for the dismissal of the complaint, we will assume Plaintiff averred employment discrimination proscribed by Title I of the ADA and Title VII in the discrimination charge that he filed on February 23, 2007.

5

All the above-stated allegations, itemized from 1 through 2, occurred in year 2005 and part of 2006 as stated in the Amended Complaint.  These events are time-barred and that plaintiff failed to timely exhaust administrative remedies accordingly.

The First Circuit Court of Appeals has decided that the filing of an administrative action is a prerequisite for filing a federal action under Title I of the ADA.  See Bonilla v. Muebles J.J. Alvarez, Inc., 194 F.3d 275 (1st Cir. 1999). Title I of the ADA provides that "[t]he powers, remedies, and procedures set forth in sections 705, 706, 707, 709, and 710 of the Civil Rights Act of 1964 (42 U.S.C. §§ 2000e-4, 2000e-5, 2000e-6, 2000e-8, and 2000e-9) shall be the powers, remedies, and procedures this title provides to the Commission, the Attorney General, or to any person alleging discrimination on the basis of disability…" See 42 U.S.C. § 12117.  Specifically, section 2000e-5(1) of Title VII states that a charge "shall be filed" with the EEOC "within three-hundred days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law" 42 U.S.C. § 2000e-5.  The established statutory period for filing an administrative charge with the E.E.O.C. serves to "protect[ ] employers from the burden of defending claims arising from employment decisions that are long past." O'Rourke v. City of Providence, 235 F.3d 713, 730 (1st Cir. 2001); see also, Castro Ortiz v. Fajardo, 133 F.Supp.2d 143, 147 (D. Puerto Rico 2001).

In the instant case, Plaintiff did comply with § 2000e-5(1) with respect to the events that he describes in the Amended Complaint.  According to the only date that Plaintiff has alleged in the Complaint upon which he bases his causes of action under Title VII and Title I of the ADA, he did not file a timely charge with either the E.E.O.C. or

the available state agency. Clearly, more than three hundred days had elapsed when he filed a charge with the E.E.O.C. regarding the aforementioned allegations.

Since section 2000e-5(1) applies to Title I of the ADA, plaintiff must first exhaust administrative remedies before filing a complaint in federal court. See Bonilla v. Muebles J.J. Alvarez, Inc., supra, at 277 (1st Cir. 1999). In suits involving Title VII and Title I of the ADA claims the "unexcused" failure to file a charge with the EEOC or the appropriate state agency "bars the courthouse door." See Bonilla v. Muebles J.J. Alvarez, Inc., 194 F.3d at 278. The First Circuit relied on Zipes v. Trans World Airlines, Inc., 455 U.S. 807, 817, 100 S.Ct. 2486, 71 L.Ed.2d 234 (1982), to emphasize that the filing of the charge with the EEOC is obligatory but not jurisdictional. Id. At the end, the Court of Appeals in Bonilla affirmed the district court's dismissal of the case for lack of subject matter jurisdiction based upon plaintiff's failure to file a timely charge with the EEOC. The same result applies to Plaintiff's Title VII claim. See Jorge v. Rumsfeld, 404 F.3d 556, 564 (1st Cir. 2005); Noviello v. City of Boston, 398 F.3d 76, 85 (1st Cir. 2005). "Title VII requires, as a predicate to a civil action, that the complainant first file an administrative charge with the EEOC within a specified and relatively short time period (usually 180 or 300 days) after the discrimination complained of." Clockedile v. New Hampshire Dept. of Corrections, 245 F.3d 1, 3 (1st Cir. 2001).

In this case, Plaintiff confronts an additional problem. He does not allege to have received a right to sue letter in order to file this civil action in federal court within the prescribe period of ninety days. PREPA contends that Plaintiff's omission in alleging to have obtained a right to sue letter before filing the instant action constitutes additional grounds in support of dismissal in regards to all his claims under the ADA and Title VII.

7

### A.2  Plaintiff has failed to state a *prima facie* case under the ADA.

Title I of the ADA bars discrimination in employment.  Section 12112 (a) of the ADA provides that as a general rule "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

Plaintiff must meet various requirements to properly institute an action under Title I.  First, he must assert that he/she is "qualified individual with a disability" within the meaning of the ADA. See Equal Employment Opportunity Commission v. Amego, Inc., 110 F.3d 135, at 142 (1st Cir. 1997) (citing Jaques v. Clean-up Group, Inc., 96 F.3d 506, 511 (1st Cir. 1996) regarding the burden of proof for plaintiffs to establish a claim under the ADA).  A "qualified individual" is an "individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111 (8). "Disability" means *inter alia* "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102 (2).   "Major life activities"  are defined as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working."   29 C.F.R. § 1630.2(i).

The second element that the plaintiff must also allege is that "with or without reasonable accommodation he was able to perform the essential functions of his job." See Katz v. City Metal Co., Inc., 87 F.3d 26, at 30 (1st Cir. 1996).  Third, the plaintiff must demonstrate that his employer took an adverse employment action against him

8

based on his disability. <u>See</u> <u>E.E.O.C. V. Amego, Inc.</u>, 110 F.3d 135, at 142 (1st Cir. 1997). The plaintiff must also allege that he/she was replaced by a non-disabled individual in the employment or was treated less favorably than non-disabled employees. <u>See</u> <u>Carroll v. Xerox Corp.</u>, 294 F.3d 231, 237 (1st Cir. 2002).

Title I of the ADA cases are subject to the framework established in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973), for Title VII cases which applies in absence of direct evidence to prove discrimination in the employment. <u>See</u> <u>Higgins v. New Balance Athletic Shoe, Inc.</u>, 194 F.3d 252, 264 (1st Cir. 1999). Defendant PREPA will not enter to discuss the second part of the <u>McDonnell Douglas</u> test in this motion because we are addressing the preliminary requirements for stating a *prima facie* case under the ADA.

The <u>Amended Complaint</u> alleges that Plaintiff has been evaluated by doctors who have determined that he is capable to continue to work despite the allegation that he suffers from schizophrenia. <u>See</u> <u>Amended Complaint</u>, ¶¶10, 12a, 12b, 12c, 12d, 13a, 15, 16. The allegation that Plaintiff suffers from a condition that appears to be covered by the ADA, without more, is insufficient to state an ADA claim against PREPA in this case. Plaintiff does not allege that his mental condition affects a major life activity as required by the ADA. <u>See</u> <u>Bailey v. Georgia-Pacific Corp.</u>, 306 F.3d 1162, 1167 (1st Cir. 2002). In this case, the <u>Amended Complaint</u> does make out any factual allegations about whether Plaintiff requested, in fact, reasonable accommodation in his employment with PREPA. <u>See</u> <u>Gacía Ayala v. Lederle Parenterals, Inc.</u>, 212 F.3d 638 (1st Cir. 2000).

9

In addition, Plaintiff now claims that PREPA terminated him from employment or or about February, 2007, in order to cure his failure to allege an adverse employment action in his original complaint.[2]  See Amended Complaint ¶ 22b, at page 6.  In any event, the Amended Complaint fails to link the alleged intent of a transfer to his condition of schizophrenia and/or any protected conduct by Federal Law.

In the First Circuit Court of Appeals, it is not well settled law whether "disability based hostile work environment " exists under the ADA. See  Rocafort v. IBM Corp., 334 F.3d 115 (1st Cir. 2003).  The First Circuit Court of Appeals assumed on one occasion those claims to be cognizable.  See Rivera Rodríguez v. Frito Lay Snacks Caribbean, A Div. of Pepsico P.R., Inc., 265 F.3d 15, 23 (1st Cir. 2001).  The District Court for the District of Puerto Rico has recognized that there is a cognizable claim of disability based hostile work environment on various cases but subject to an analysis of Title VII hostile environment claims scrutiny.  See Rodríguez Velazquez v. Autoridad Metropolitana de Autobuses, 2007 WL 1188267 (D.P.R. 2007); Rodríguez v. Locite P.R., Inc., 967 F. Supp. 653, 662 (D.P.R. 1997).  Along these lines, the appearing defendant proceeds to discuss the elements of such a claim, and anticipates to this Honorable Court that the Amended Complaint also fails to meet the burden of alleging a prima facie case of disability based hostile work environment.

The District Court of Puerto Rico incorporated the elements of Title VII hostile work environment to ADA cases in Rodríguez Velázquez, 2007 WL 1188267 (D.P.R.

---

2 On September 5, 2007, PREPA issued a certification stating that plaintiff Héctor L. Román currently is its employee and holds the position of Power Plant Electrician II.   See Exhibit 1.  Along these lines, counsel for PREPA sent a Fed.R.Civ.P. 11 letter to plaintiff's counsel in an effort to correct the information contained in ¶ 22b of the First Amended Complaint but no response has been obtained.  PREPA is submitting this motion to dismiss, and thereafter, will proceed under Rule 11 to seek redress from this Court.

2007).   The District Court, <u>citing Flowers v. Regional Physician Serv., Inc.</u>, 247 F.3d 169, 235 (5th Cir. 2001), stated the following: "Accordingly, to succeed on a claim of disability-based harassment, the plaintiff must prove: (1) that [he] belongs to a protected group; (2) that [he] was subjected to unwelcome harassment; (3) that the harassment complained of was based on [his] disability or disabilities; (4) that the harassment compliant of affected a term, condition, or privilege of employment; and (5) that the employer knew or should have known of the harassment and failed to take prompt, remedial action."   Plaintiff must also prove that "he subjectively perceived his work environment as hostile, but also that a reasonable person would so perceive it."  <u>Id.</u>

In this case, the <u>Amended Complaint</u> alleges that individual defendants harassed him by making "improper rude comments against him," "taking adverse personnel action" and "fabricating labor cases against him."  <u>Amended Complaint</u>, ¶ 18, at page 5. These allegations do not meet the aforementioned set of elements to state a disability based hostile work environment.  There are no allegations that indicate that the alleged harassment, ¶ 18 of the <u>Amended Complaint</u>, is linked in any manner to a protected disability by the ADA.  In addition, the <u>Amended Complaint</u> fails to allege whether the discrimination charge that Plaintiff filed with the EEOC asserted a disability based hostile work environment harassment.  If he did not file a charge based on hostile work environment with the EEOC, this Honorable Court is impeded from assessing such a claim in this case.

**A.3  Plaintiff has failed to state a claim under Title VII.**

In the instant case, Plaintiff claims to have a cause of action under Title VII. Besides the lack of jurisdiction of this Court over this claim due to Plaintiff's lack of

11

compliance to timely file a charge with the EEOC, the appearing defendant hereby contends that he has also failed to state a *prima facie* case under Title VII.

42 U.S.C. 2000e-2 proscribes the following employer practices:

(a) Employer practices

It shall be unlawful employment practice for an employer-  (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex , or national origin; or

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual  of employment  opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

It is well established law that a claimant under Title VII must first establish a *prima facie* case by preponderance of the evidence. See McDonnell Douglas Corporation v. Green, 411 U.S. 792, 93 S.Ct. 1817(1973); Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089 (1981).  To establish a *prima facie* case under Title VII, the claimant must show the following:  (1) that the plaintiff belongs to a protected class, i.e. woman, black, Indian, etc.;(2)that the employer took an adverse employment action against the plaintiff; (3) that the plaintiff  was qualified for the position to he/she has applied for and for which the employer was seeking applicants; and (4) that the position remained open and the employer hired or promoted  other individuals with the claimant's qualifications or less qualified persons. See St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506 (1993); see also Conward v. Cambridge Sch. Comm., 171 F.3d 12, 19 (1st Cir. 1999).  It has been held that plaintiff's burden of establishing a *prima facie* case "is not onerous;" Burdine, 450 U.S. at 253;

moreover, "[t]he prima facie case serves an important function in the litigation: it eliminates the most common nondiscriminatory reasons for the plaintiff's rejection." <u>Id</u>.

Plaintiff only alleges that he suffers from schizophrenia but his <u>Amended Complaint</u> is devoid of allegations to state that Plaintiff belongs to at least one of the protected groups by Title VII, i.e. religion, gender, national origin, race, etc…   Title VII does not recognize "disability" among the groups protected by its remedial scheme. Plaintiff cannot rely on his condition of schizophrenia to claim the protections of Title VII when the ADA already provides remedies for claims of disability discrimination in the employment.

### A. 4 Co-plaintiffs lack standing to sue under the ADA and Title VII.

Defendant PREPA argues in the alternative that plaintiffs Sonia Yama and Felicita Oliveras lack standing to sue under the ADA and Title VII.   As  stated  above, the claimant of a Title I of the ADA and Title VII must be an employee of a covered employer within the meaning of both statutes.  The aforementioned co-plaintiffs do not allege to be employees of PREPA, that they belong to a protected group, and/or that an adverse employment action was taken against them.   For this reasons, defendant PREPA submits that these plaintiffs lack standing to bring a suit under Title I of the ADA and Title VII in this case.

### B.  Section 1983

### B.1 Section 1983 is not available as a remedy for the kind of violation of federally protected rights invoked by Plaintiff.

Section 1983 is generally available as a vehicle for remedying violations of federal statutes as well as constitutional violations. <u>See</u> <u>Maine v. Thiboutot</u>, 448 U.S. 1 (1980<u>)</u>; <u>Suter v. Artist</u>, 503 U.S. 347 (1992).  Where relief is available under § 1983,

many courts have refused to allow actions directly under the Constitution.  See Thomas v. Shipka, 818 F.2d 496 (6th Cir.), reh'g in part on other grounds, 829 F.2d 570 (6th Cir. 1987); Williams v. Bennett, 689 F.2d 1370 (11th Cir. 1982); Ward v. Caulk, 650 F.2d 1144, 1148 (9th Cir. 1981); Kotska v. Hogg, 560 F.2d 37, 42 (1st Cir. 1977).  Plaintiff simply stated that he invokes the jurisdiction of the Court under the provisions Section 1983, Title VII, and the ADA.  The Complaint does not properly allege the jurisdiction of this Court pursuant to applicable federal judicial statutes.

As an exception to that general rule, a § 1983 suit would not be available for such purpose if Congress has manifested its intention to foreclose such remedy.  See Suter, 503 U.S. at 356.  The burden is on defendant to show by express provision or other specific evidence from the statute itself that Congress intended to foreclose private enforcement. See Wilder v. Virginia Hospital Association, 496 U.S. 498, 520-521 (1990); Chan v. City of New York, 1 F.3d 96, 104 (2nd Cir. 1993).  Such other evidence may include provision of a scheme of remedial devices that is sufficiently comprehensive to demonstrate congressional intent to preclude the remedy of suits under section 1983. See Wilder, at 521; Chan, at 104.  In short, when a statute creates a comprehensive remedial scheme, it should not be supplanted by the remedial apparatus of § 1983. See Smith v. Robinson, 468 U.S. 992 (1984); Middlesex County Sewerage Authority v. National Sea Clammers Association, 453 U.S. 1 (1981). See also Pona v. Cecil Whittaker's, Inc., 155 F.3d 1034 (8th Cir. 1998); Holbrook v. City of Alpharetta, Ga., 112 F.3d 1522 (11th Cir. 1997).

Title I of the ADA provides an extensive remedial structure that may serve to redress Plaintiffs' present claim under Section 1983.  Plaintiff's claim under Section

1983 is also insufficient because he does not establish which constitutional rights were allegedly violated by Defendants in this case. The <u>Amended Complaint</u> is totally silent regarding which of Plaintiff's rights protected by the Amendments of the Constitution of the United States were violated. PREPA understands that Plaintiff bases his Section 1983 claim on his condition of schizophrenia for which Title I of the ADA already provides a remedial scheme. Title VII remedies are available to persons alleging discrimination on the basis of disability under Title I of the ADA. 42 U.S.C. § 12117(a). These remedies include retroactive relief, back pay, and injunctions. <u>See</u> 42 U.S.C. § 2000e. Compensatory damages are available under the ADA but not against the States based on the applicability of the Eleventh Amendment. <u>See</u> <u>Board of Trustees of the University of Alabama v. Garrett</u>, --U.S.--, 2000 WL 33179681 (2001).

In <u>Holbrook</u>, the 11th Circuit found that the Rehabilitation Act and the ADA provide comprehensive remedial frameworks that address Plaintiff's claims under § 1983. <u>See</u> <u>Holbrook v. City of Alpharetta, Ga.</u>, 112 F.3d at 1531. The Court reasoned that "[t]o permit a plaintiff to sue both under the substantive statutes that set forth detailed administrative avenues of redress as well as section 1983 would be duplicative at best; in effect, such a holding would provide the plaintiff with two bites at precisely the same apple." <u>Id</u>. It concluded that the plaintiff could not maintain a § 1983 action in lieu of an ADA action if the only alleged deprivation is the employee's rights created by the ADA. <u>Id</u>. In other words, "if the statutory right that a plaintiff seeks to vindicate comes outfitted with its own comprehensive remedial apparatus, a § 1983 action based on a violation of that statutory right will not lie." <u>Pona v. Cecil Whittaker's, Inc.</u>, 155 F.3d at 1038.

15

Provided the availability of remedies, the ADA clearly provides a scheme of remedial devices sufficiently comprehensive to demonstrate congressional intent to preclude the remedy of suits under § 1983. Such preclusion calls for the dismissal of Plaintiff's Section 1983 claim.

42 U.S.C. § 1983 provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

It is established that to state a cognizable claim under § 1983 plaintiff has the burden of satisfying the two following elements: (1) That defendants acted under color of state law, Gómez v. Toledo, 446 U.S. 635 (1980); and (2) that defendants' alleged conduct denied plaintiff of his/her constitutional rights, privileges, or immunities, Romero-Barceló v. Hernández-Agosto, 75 F.3d 23, at 32 (1st Cir. 1996). At all times, Plaintiffs must affirmatively show that there is a causal link between defendants' alleged conduct and the alleged deprivation of her federally protected rights. See Gutiérrez-Rodríguez v. Cartagena, 882 F.2d 553, at 559 (1st Cir. 1989); Pinto v. Jiménez Nettleship, 737 F.2d 130 (1st Cir. 1984).

Clearly, Plaintiff has failed to state a cognizable claim under Section 1983. The Amended Complaint fails to meet the allegations requirements for stating a Section 1983 claim. No allegations state that defendants acted under color of state law, that

defendants deprived Plaintiff of at least one constitutional right and/or guarantee, or that there is a link between the alleged deprivation of a constitutional right and each one of the defendants. Also, for these reasons the Court should also dismiss Plaintiff's Section 1983 claim.

**B.2 Section 1983 claims, if any, are time barred.**

As stated in the introduction of this motion, the appearing defendant contends that Plaintiff's Section 1983 claims are time-barred by the applicable one-year statute of limitations.   The Civil Rights Act does not provide a statute of limitations.   Hence, actions arising under § 1983 are subject to the state's statute of limitations applicable in tort actions for personal injuries which in Puerto Rico is one year. See Owens v. Okure, 488 U.S. 235 (1988); see also Rivera-Muriente v. Agosto Alicea, 959 F.2d 349, 353 (1st Cir. 1992).

Even though federal courts borrow state's statute of limitations in Section 1983 cases, the federal law determines the date of accrual.  See Rivera Muriente, 959 F.2d at 353 (1st. Cir. 1992).   In other words, federal law determines the date on which the statute of limitations begin to run.  See Carreras-Rosa v. Alves-Cruz, 127 F.3d 172, 174 (1st Cir. 1997).   The accrual period begins to run when the aggrieved person "knows, or has reason to know, of the injury on which the action is based."  Rivera-Muriente 959 F.2d at 353.  Following this rationale "[t]he one year period begins to one day after the date of accrual, which is the date plaintiff knew or had reason to know of the injury." Benitez-Pons v. Commonwealth of Puerto Rico, 136 F.3d 54, 59 (1st Cir. 1998)).

As noted by the First Circuit Court of Appeals, "[t]he Supreme Court has clearly stated that, in this inquiry, 'the proper focus is on the time of the discriminatory act, not

the point at which the consequences of the act become painful.'" <u>Vistamar, Inc. v. Fagundo-Fagundo</u>, 430 F.3d 66, 70 (1st Cir. 2005) citing <u>Chardón v. Fernández</u>, 454 U.S. 6, 8 (1981). "It is by now well established that, in employment discrimination actions, limitations periods normally start to run when the employer's decision is made and communicated to the affected employee." <u>Morris v. Gov't Dev. Bank of Puerto Rico</u>, 27 F.3d 746, 750 (1st Cir. 1994). It is sufficient that the employee knows of the "unambiguous and authoritative notice of the adverse employment action […] to trigger the limitations period." <u>Rivera Torres v. Ortíz Vélez</u>, 306 F.Supp.2d 76, 83 (D. Puerto Rico 2002). "Discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." <u>Campbell v. Bank of Boston, N.A.,</u> 327 F.3d 1, 11 (1st Cir. 2003).

The appearing defendant does not waive its prior defense in support of the dismissal of Plaintiff's Section 1983 claim but it hereby contends that the <u>Amended Complaint</u> makes reference to year 2005 as the point in time when the alleged events occurred. Plaintiff filed this lawsuit on June 11, 2007, that is about two years after the alleged occurrence of the factual events described by Plaintiff in this case. Plaintiff had one year to file a claim under Section 1983 to assert any constitutional violations against PREPA and its officers but he failed to do so. For this additional reason, the complaint should be dismissed.

### B.3 Co-plaintiffs Felicita Oliveras Lopez and Sonia M. Yama Ruiz lack standing to sue Under Section 1983 and their Article 1802 of the Civil Code is time-barred.

Plaintiff Felicita Oliveras López is plaintiff Roman's mother, and plaintiff Sonia Yama is plaintiff Roman's wife, and they appear as plaintiffs in this case. However,

these parties have no standing to claim under § 1983. The First Circuit has stated that actions under §1983 are personal in the sense that the plaintiff must have himself suffered the alleged deprivation of constitutional or federal rights. See Caraballo-Cordero v. Banco Financiero de Puerto Rico, 91 F. Supp.2d 484, 488 (D.P.R. 2000); Rodriguez-Oquendo v. Toledo Dávila, 39 F.Supp 2d 127, 131 (DPR 1999); Judge v. City of Lowell, 160 F.3d 67, 76 n.15 (1st Cir. 1998). "The vindication of third party rights is generally not recognized under 42 U.S.C.A. §§ 1983." Caraballo-Cordero, 91 F. Supp.2d at 488 (citing Quiles ex rel. Proj. Head Start v. Hernández Colon, 682 F. Supp. 127, 129 (D.P.R. 1988)). A person may not sue or recover for the deprivation of the civil rights of another. Quiles, 682 F. Supp. at 129. "Family members do not have an independent claim under §1983 unless the constitutionally defective conduct or omission was directed at the family relationship." Rodriguez-Oquendo, 39 F. Supp. 2d at 131 (citing Torres, 24 F.Supp 2d at 183); Cortez-Quiñones v. Jiménez-Nettleship, 842 F.2d 556,563 (1st Cir. 1988). Simply put, "[o]nly the person toward whom the state action was directed, and not those incidentally affected, may maintain a section 1983 claim." Guzmán Rosa v. de Alba, 671 F.Supp 882, 883 (D.P.R. 1987). Additionally, a person may not sue or recover for the deprivation of the civil rights of another." Quiles , 682 F.Supp at 129.

The law is clear that only the plaintiffs and not the co-plaintiffs spouses and their conjugal partnership may recover damages for a § 1983 violation. In addition, co-plaintiffs Yama and Oliveras actions under Article 1802 of the Puerto Rico Civil Code are time-barred by the applicable one year statute of limitations for claming damages.

19

**WHEREFORE,** the Puerto Rico Electric Power Authority respectfully requests the Court to grant this motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) and (6) on the grounds stated herein.

**I HEREBY CERTIFY** that on this date, this motion was electronically filed with the Clerk of the Court using the CM/ECF system which will send the notice of such filing to: **JUAN R. RODRIGUEZ, ESQ; and JOSE GUEITS, ESQ.**

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico this 28th day of September, 2007.

> s/ Marie L. Cortés Cortés
> Marie L. Cortés Cortés
> USDC-PR No. 212208
> **Llovet Zurinaga & López, P.S.C.**
> Mercantil Plaza Building
> Suite PH 1616
> 2 Ponce de León Avenue
> San Juan, Puerto Rico 00918
> Tel. (787) 250-1979
> Fax (787) 250-8432
> E-Mail:mcortes@llovetlopez.com
> marie_l_cortes@msn.com

CN 076-04479
REV. 02/07

### ESTADO LIBRE ASOCIADO DE PUERTO RICO
### AUTORIDAD DE ENERGÍA ELÉCTRICA DE PUERTO RICO

SAN JUAN, PUERTO RICO



www.aeepr.com

APARTADO 364267
CORREO GENERAL
SAN JUAN, PR 00936-4267

5 de septiembre de 2007

## CERTIFICACION

Certifico que el Sr. Héctor L. Román, número de empleado 5988, es empleado de esta agencia desde el 25 de febrero de 1985. Ocupa el puesto regular de Electricista Central Generatriz II.

Axel L. Carvajal Asencio
Jefe División de Personal

"Somos un patrono con igualdad de oportunidades en el empleo y no discriminamos por razon de raza, color, sexo, edad, origen social o nacional, condición social, afiliación política, ideas políticas o religiosas; por ser víctima o ser percibida como víctima de violencia doméstica, agresión sexual o acecho; por impedimento físico, mental o ambos o condición de veterano".

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

HECTOR LUIS ROMAN-OLIVERAS, et als*
      Plaintiffs                *     CIVIL NO.  07-1498 (ADC)
                                 *
      vs.                  *     ABOUT:
                                 *         TORTS
PUERTO RICO ELECTRIC POWER   *         42 USC 1983, Civil Rights Act
AUTHORITY (PREPA), et. als.      *         Title VII
      Defendants         *         JURY TRIAL
*************************************

**RESPONSE TO MOTION TO DISMISS**

**TO THE HONORABLE COURT:**

    **COME NOW** plaintiff, through the undersigned attorney and respectfully  states, alleges, and prays as follows:

**I.    INTRODUCTION:**

    1.    The jurisdiction of this Court was invoked under the provisions of Title VII and 42 of the United States Code, Section 1983, Civil Rights Act 1964  and  the American with Disability Act (ADA).

    2.    Plaintiff also invoked the article 1802 and 1803 of Puerto Rico Civil Code and the Puerto Rico Law against discrimination under the supplemental jurisdiction principles in the interest of judicial efficiency and economy.

    3.    Plaintiff's civil rights (under 42nd of the United States Code, Section 1983, Civil Rights Act 1964), he was discriminated (under The ADA), and other  rights under other state and federal labor laws were and continue to be violated by co-defendants, whose actions or acts were under color of law.

c:\motions\hroman.003

**RESPONSE TO MOTION TO DISMISS**
**USDC-PR CIVIL NO. 07-1498 (ADC)**
**Page 2**

## II.    STANDARD FOR MOTION TO DISMISS:

### Standard for Motion to Dismiss Under Fed. R. Civ. P 12 (b) (6)

4.    In response to an initial pleading, a defendant may file a motion to dismiss the complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12 (b) (6). *Arroyo Otero v. Hernandez Purcell, 804 F. Supp. 418, 421 (D.P.R. 1992)* " *The Court's function on a Rule 12 (b) (6) motion is not to weigh the evidence which might be presented at trial but merely to determine whether the complaint itself is legal sufficient*" *Flamand v. American Intem. Group, Inc. 876 F. Supp. 356, 360 (D. P. R. 1994) (*citing *Festa v. Local Int'l Bhd. of Elec. Workers, 605 F.2d 25, 37 (2d Cir. 1990),* emphasis added.

5.    According to *Conley v. Gibson, 355 U.S. 41, 45-46 (1957)*, a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. In that sense, the Court must accept as true the well-pleaded allegations in the complaint and draw all reasonable inferences in favor of plaintiffs. See e.g., *Correa Martinez v. Arrillaga Belendez, 903 F.2d 49, 51 (1st Cir. 1990).*, However, the Court is not required to "*swallow the plaintiff's invective hook, line and sinker; bald assertions, insupportable conclusions, periphrastic circumlocutions, and the like need not be credited*" *Aulson v. Blanchard, 83 F. 3d 1, 3 (1st Cir. 1996)*; see also *Doyle v. Hasbro, Inc., 103 F.3d 186 (1st Cir. 1996)*; *Massachusetts Sch. of Law at Andover v. American Bar, 142 F.3d 26 (1st Cir. 1998).*

6.    Although the pleading requirements are "*minimal*", they are not "*non-existent.*" *Gooley v. Mobil Oil Corp., 851 F.2d 513, 514 (1st Cir. 1988).* Plaintiffs must set forth in the

c:\motions\hroman.003

RESPONSE TO MOTION TO DISMISS
USDC-PR CIVIL NO. 07-1498 (ADC)
Page 3

complaint *"factual allegations, either direct or inferential, regarding each material element*

*necessary to sustain recovery under some actionable legal theory"*. *Berener v. Delahanty, 129 F.*

*3d 20, 25 (citing Gooley, 851 F.2d at 513, 514)*. In claims under 42 U.S. C. § 1983, the complaint

shall set forth minimal facts, not conclusions or subjective characterizations, as to who did what to

whom and why." *Dewey v. Univ. of New Hampshire, 694 F. 2d 1, 3 (1ˢᵗ Cir. 1982)*, cert. denied *461*

*U.S. 944, 103 S. Ct. 2121, 77 L. Ed. 2d 1301 (1983)* emphasis added.

### Standard for Motion to Dismiss Under Fed. R. Civ. P 12 (b) (1)

7.      Standard for Motion to Dismiss Under Fed. R. Civ. P 12 (b) (1), a defendant may

move to dismiss an action against him based on the lack of federal subject matter jurisdiction. In

*Baker v. Westin Rio Mar Beach Resort, Inc.* 194 F. R. D. 393 (D. P. R.2000), the District Court

explained that since federal courts have limited jurisdiction, the party asserting jurisdiction has the

burden of demonstrating the existence of federal jurisdiction. See *Murphy v. United States*, 45 F.

3d  520, 522 (1ˢᵗ Cir. 1995). In assessing a motion to dismiss for lack of subject matter jurisdiction,

a district court "must construe the complaint liberally, treating all well-pleaded facts as true and

drawing all reasonable inference in favor of plaintiffs" *Viquiera v. First Bank*, 140 F.3d (1ˢᵗ Cir.

1988)(quoting *Royal v. Leading Edge Prods., Inc.*, 833 F.2d1 (1ˢᵗ Cir. 1987).

## III.      THE DEFENDANTS ALLEGED LACK OF SUBJECT MATTER JURISDICTION

8.      Defendants alleged that Plaintiff's claims under Title I of the ADA and Title VII of

the Civil Rights Act are time barred.

9.      Defendants alleged that Plaintiff's failed to state a *prima facie* case under the ADA.

10.      Defendants alleged that Plaintiff's failed to state a claim under Title VII.

c:\motions\hroman.003

RESPONSE TO MOTION TO DISMISS
USDC-PR CIVIL NO. 07-1498 (ADC)
Page 4

11. Defendants alleged that 1983 claims, if any, are time bared.

12. Defendants alleged that co-plaintiffs Oliveras-Lopez and Yama -Ruiz' claims under 1982 of the PR Civil Code are time bared.

## IV. SUMMARY OF PLAINTIFF'S ARGUMENTS

13. Plaintiff's claims under Title I of the ADA and Title VII of the Civil Rights Act were timely filed so they are not time barred.

14. Plaintiff stated a *prima facie* case under the ADA.

15. Plaintiff stated a claim under Title VII.

16. The 1983 claims were timely filed so they are not time barred

17. Co-plaintiffs Oliveras-Lopez and Yama -Ruiz' claims under 1982 of the PR Civil Code were timely filed so they are not time barred.

## V. DISCUSSION

**Plaintiff's claims under Title I of the ADA and Title VII of the Civil Rights Act were timely filed so they are not time barred.**

18. It was alleged in the Complaint that *Co-defendants James Velez and Julio Renta have been using plaintiff's mental medical condition to remove co-plaintiff from his occupation with co-defendant PREPA,* **(See Docket No. 1, Complaint, paragraph 13)**. Defendants know that the series of events mention on paragraph 13 of the Complaint happened on the second semester of 2006. The EEOC complaint was timely filed within 300 days, then the claims are not time barred.

**Plaintiff stated and established *Prima Facie* case of Disability Discrimination (under the ADA) and have competent evidence to prove that he was discriminated based on his**

c:\motions\hroman.003

RESPONSE TO MOTION TO DISMISS
USDC-PR CIVIL NO. 07-1498 (ADC)
Page 5
**medical condition**.

19.    The ADA was enacted to provide a firm and clear national mandate for the

elimination of discrimination against individuals with " disabilities".  42 U.S.C.A. § 12101 (b)(1).

The ADA forbids employers from discriminating against or refusing to make a reasonable

accommodation for "a qualified individual with a disability", 42 U.S.C.A. §12112 (a).  In order to

establish a *prima facie* claim of disability  discrimination under the  ADA, a plaintiff mush show:

(1) that he was disabled; (2) that he was qualified; and (3) that there was a casual connection between

his disability and the adverse employment action.  42 U.S.C.A. §12101 *et. Seq.*

20.    Defendant alleged in its *Motion* that Co-Plaintiff Roman is not disabled within the

meaning of the ADA.   Under the ADA, the plaintiff bears the initial burden of establishing that he

is disabled within the meaning provided by the ADA. *Calero-Cerezo v. U.S. Dept. Of Justice*, 355

F.3d 6, 230 (1st Cir. 2004).  The term "disability" with respect to an individual means a physical or

mental impairment that substantially limits one or more of the individual's major life activities, a

record of such impairment, or being regarded as having such impairment.  See *Sullivan v. Neiman*

*Marcus Group, Inc*.,   358 F.3d 110, 114 (1st Cir. 2004).

21.    A "physical impairment" is "any physiological disorder, or condition... or anatomical

 loss affecting "a "body system" such as the musculoskeletal system or the skin.  29 C.F.R. § 1630.2

(h).  Major life activities are "functions such as caring for oneself, performing manual tasks, walking,

seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. 1630 2 (I). Substantially

limited means: (I) unable to perform a major life activity that the average person in the general

population can perform; or (ii) significantly restricted as to the condition, manner or duration under

c:\motions\hroman.003

RESPONSE TO MOTION TO DISMISS
USDC-PR CIVIL NO. 07-1498 (ADC)
Page 6

which an individual can perform a particular major life activity as compared to the condition, manner or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2 (j)(1); see also Toyota Motor Manufacturing v. Williams, 122 S. Ct. 681, 690-691.

22.     In *Sutton v. United Air Lines, Inc*., 527 U.S. 471, 9 AD Cases 673 (1999), the Supreme Court of the United States held that "disability under the Act is to be determined with reference to corrective measures". Id. At 488. The plaintiffs in this case were twins who were denied jobs as commercial pilots because the had severe myopia and their uncorrected vision was below the airline's standard for commercial pilots. However, corrected with glasses or contact lenses, their vision was 20/20 in both eyes. Even though the plaintiffs were denied jobs based on their uncorrected vision, the Supreme Court held that the "substantially limiting" assessment must be made on the basis of their corrected vision. The Court determined that the plaintiffs were not disabled because when corrected, their visual impairments were no longer substantially limiting.

23.     In *Sutton, Id.,* the Supreme Court affirmed that the inclusion of correctable disabilities within the ADA's domain would extend the Act's coverage to far more than 160 million people. "And persons whose uncorrected eyesight is poor, or who rely on daily medication for their well-being, can be found in every social and economic class; they do not cluster among the politically powerless, nor do they coalesce as historical victims of discrimination." *Id*. At 494. In short, the Supreme Court stated that "in no sensible way" can one rank the 160 million people with corrected disabilities as a "discrete and insular minority." *Id.*

24.     In *Lawson v. CSC Transp., Inc., 245 F.3d 916 (7th Cir. 2001),* Reversing the district

c:\motions\hroman.003

RESPONSE TO MOTION TO DISMISS
USDC-PR CIVIL NO. 07-1498 (ADC)
Page 7

court's grant of summary judgement in favor of defendant, the Seventh Circuit finds that jury

questions exists with regard to whether plaintiff, who has insulin-treated diabetes, is substantially

limited in the major life activity of eating and whether he has a record of disability.  Court spells out

in detail how plaintiff must carefully monitor his blood sugar, insulin dosages, and eating habits.

Court distinguishes this case from Sutton, noting that plaintiff's control and maintenance of his

diabetes involves much more effort than simply putting on a pair of corrective lenses.  "Lawson

cannot simply eat when and where he wants to, or exert himself without concern for the effect the

exertion will have on his glucose levels...[Instead, he] must always concern himself with the

availability of food, the timing of when he eats, and the type and quantity of food he eats."  The court

goes on to explain that "[t]he evidence shows that, everyday of his life, Mr Lawson must deal with

the concern that the insulin he injects to treat his illness will itself bring about debilitating symptoms

that can only be ameliorated by immediately eating certain foods".  Court also finds that the fact the

plaintiff received Social Security disability benefits for a dozen years raise a jury questions as to

whether he has a "record of" a disability.

25.     In *Nawrot v. CPC Int'l., 277 F.3d 896 (7th Cir. 2002)*, the Seventh Circuit, reversing

grant of summary judgement of defendant, found plaintiff, a person with insulin-treated diabetes,

"has sufficiently demonstrated that his diabetes substantially limits his ability to think and to care

for himself, which are both major life activities." Plaintiff argued that he was not allowed to mitigate

his diabetes at work because his employer refused to let him take breaks to check his blood glucose

and then take appropriate action.  The district court held that defendant's actions did not matter

because if plaintiff's disability was mitigated before he walked in the factory door that was how he

RESPONSE TO MOTION TO DISMISS
USDC-PR CIVIL NO. 07-1498 (ADC)
Page 8

should be evaluated.  The Seventh Circuit did not directly address this reasoning by the lower court, but did state that the Supreme Court's ruling in Sutton "is not, however, license for courts to meander into 'would, could, or should-have' land.  We consider only the measures actually taken and the consequences that actually follow. [citing Sutton] Those who discriminate take their victim as they find them."

26.     *Branham v. Snow, 392 F.3d 896 (7ᵗʰ Cir. 2004)*, The Court reverses summary judgment granted to defendant employer (the IRS) regarding Rehabilitation Act claim for failure to promote plaintiff, who has type I diabetes, from an office position to a Special Agent field position. The trial court had ruled that plaintiff was not substantially limited in any major life activity because his diabetes was well controlled and he was able to take care of himself.  The appeals court held that plaintiff had established a triable issue of fact as to whether he was substantially limited in the major life activity of eating because, even though plaintiff controlled his diabetes well and had not experienced severe hypoglycemia or hyperglycemia, a jury could conclude that the mitigating measure used by the plaintiff to control his diabetes (insulin ) caused side effects that substantially limits the activity of eating.  The foods, amount, and times at which plaintiff could eat are largely dictated by his diabetes and his current blood glucose readings, and plaintiff was required to adjust his diet to take into account his activities, stress level, illness, and other factors.  However, the court did agree with defendant that plaintiff was not regarded as disabled because there was no evidence that defendant did anything more than regard him as unable to do a particular job.  The court also rejected defendant's argument that plaintiff was not otherwise qualified for the position because he would pose a safety risk.  The court held that defendant bore the burden of proof on its claim that

c:\motions\hroman.003

RESPONSE TO MOTION TO DISMISS
USDC-PR CIVIL NO. 07-1498 (ADC)
Page 9

plaintiff would pose a safety risk, and that defendant had not met that burden.  The court examined

the four factors which are part of the direct threat analysis, and concluded that plaintiff raised a

material issue of fact by presenting medical testimony that he could work long and irregular hours,

respond to emergencies, and perform the other essential functions of the position in spite of his

diabetes.  Plaintiffs's medical testimony suggested that he had never suffered severe hypoglycemia,

his intensive treatment regimen minimized the risk of its occurrence, and that his quantified risk of

suffering severe hypoglycemia was very low (2% per year).

27.    In *Equal Employment Opportunity Comm'n and Keane v. Sears, Roebuck & Co.,*

*233 F.3d, 432 (7ᵗʰ Cir. 2000),* Reversing in part district court's grant of summary judgment in favor

of defendant, the Seventh Circuit holds that the testimony of plaintiff, a person with non-insulin

treated diabetes, and her doctor regarding plaintiff's use of a cane and her inability to walk more than

a single city block presents sufficient evidence to establish a jury questions as to whether plaintiff's

neuropathy substantially limits her ability to walk.  With regard to whether a condition that manifests

itself episodically can constitute a disability, the court states, "[t]hat neuropathy manifests itself in

a predictable yet intermittent pattern does not preclude a finding that one suffering from the

condition can be termed disabled."  Plaintiff claimed she was constructively discharged because she

was denied a reasonable accommodation that would have shortened the distances she needed to walk

and because she was required to change her work schedule.  Case was reversed on the reasonable

accommodation claim but affirmed on the constructive discharge claim.

28.    The 5ᵗʰ, 6ᵗʰ and 3ʳᵈ Circuits had affirmed summary judgment for defendant when the

plaintiff failed to prove that his diabetes substantially limited any major life activity which is not the

c:\motions\hroman.003

RESPONSE TO MOTION TO DISMISS
USDC-PR CIVIL NO. 07-1498 (ADC)
Page 10

situation in the present case with Co-plaintiff Roman. In *Arrington v. Southwestern Bell Telephonce Co., 93 Fed. Appz. 593 (5ᵗʰ Cir. 2004),* Court held that plaintiff failed to prove that his diabetes substantially limited any major life activity. He did not specifically name any activity that was limited but relied on his diagnosis of diabetes alone and presented no evidence of how his diabetes affected him personally. In *Salim v, MGM Grand Detroit , 106 Fed. Appx. 454 (6ᵗʰ Cir. 2004),* The district court granted summary judgement, and the appeals court affirmed, holding that plaintiff had not shown she was substantially limited in any major life activities. She had not presented any evidence of how her condition limited her ability to perform housework or to walk, and she was not limited in her ability to work or think because she had never experienced problems outside of her workplace. In *Mikruk v. U.S. Postal Service, 115 Fed. Appx. 580 (3ʳᵈ Cir. 2004),* The court granted summary judgment because the plaintiff failed to present any evidence to support their claim. On appeal, plaintiff did not challenge the courts decision that he was not substantially limited in working, but instead argued that he was substantially limited in the major life activity of eating. In a *pre-Sutton* case *Arnold v. UPS, 136 F.3d 854 (1ˢᵗ Cir. 1998)* (failure to hire as truck mechanic person with type I diabetes) Court reverses summary judgment for employer. Court holds that the clear legislative intent behind ADA protect diabetes, "Arnold's diabetes makes him just the type of person the ADA was designed to protect." Congress intended courts to evaluate a disability based on underlying medical condition without considering insulin use. Also outlines EEOC and DOJ support for this conclusion. In *Cruz v. Northwest Airlines, Inc., 13 Am. Disabilities Cas. (BNA) 1425, 2002 U.S. Dist. LEXIS 20092 (E.D. Pa. 2002),* Plaintiff's conditional offer of employment as a flight attendant was withdrawn because he has diabetes. Reversing a prior decision, defendant's motion

c:\motions\hroman.003

**RESPONSE TO MOTION TO DISMISS**
**USDC-PR CIVIL NO. 07-1498 (ADC)**
**Page 11**

to dismiss denied where court found that, as a result of Supreme Court's decision in *Swierkiewicz*

*v. Sorema, 534 U.S. 596 (2002),* plaintiff's pleadings were sufficient to survive dismissal on actual

disability. Court found plaintiff's averment that he has a disability can reasonably be interpreted as

alleging that he is substantially limited in a major life activity. Plaintiff also survives motion to

dismiss on regarded as prong where he claims that defendant perceived him "as being substantially

limited in one or more major life activities, such as, by way of example and not limitation, eating and

traveling."

29. Plaintiff Roman clearly established that (1) he was disabled (he has a mental medical

condition {schizophrenia} which was diagnosed more than thirty (30) years ago; (2) that he was

qualified (he has had excellent evaluations during the years he has worked for co-defendant PREPA,

he has received acknowledgments for his work, he was always available for overtime duties); and

(3) there was a casual connection between his disability and the adverse employment action

(defendants have been using plaintiff's mental medical condition to remove co-plaintiff from his

occupation) as required under 42 U.S.C.A. §12101 *et. Seq.*

30. Plaintiff Roman clearly stated that defendants has requested the results of his medical

evaluations, when the satisfactory evaluations are provided to the defendants, they request new

evaluations, changing the entire process of reinstallment of plaintiff, **(See Docket No. 1, Complaint,**

**paragraph 16)**. Plaintiff has been treated differently from similarly situated individuals outside of

his protected group, **(See Docket No. 1, Complaint, paragraph 17)**. Defendants have harassed

plaintiff, making improper rude comments against him, taking adverse personal action, using false

information and using their official positions improperly against plaintiff. All this to cause harm to

RESPONSE TO MOTION TO DISMISS
USDC-PR CIVIL NO. 07-1498 (ADC)
Page 12

the plaintiff in clear violation of his civil rights and acting under color of law all this time. Plaintiff

has been subject to a hostile work environment, he has been subject to the adverse actions because

of his medical condition, **(See Docket No. 1, Complaint, paragraphs 19, 20, 21)**.

### Plaintiff stated a claim under Title VII.

31.     Plaintiff Roman clearly established that (1) he was disabled (he has a mental medical

condition {schizophrenia} which was diagnosed more than thirty (30) years ago; (2) that he was

qualified (he has had excellent evaluations during the years he has worked for co-defendant PREPA,

he has received acknowledgments for his work, he was always available for overtime duties); and

(3) there was a casual connection between his disability and the adverse employment action

(defendants have been using plaintiff's mental medical condition to remove co-plaintiff from his

occupation) as required under 42 U.S.C.A. §12101 *et. Seq.*

32.     Plaintiff Roman clearly stated that defendants has requested the results of his medical

evaluations, when the satisfactory evaluations are provided to the defendants, they request new

evaluations, changing the entire process of reinstallment of plaintiff, **(See Docket No. 1, Complaint,**

**paragraph 16)**. Plaintiff has been treated differently from similarly situated individuals outside of

his protected group, **(See Docket No. 1, Complaint, paragraph 17)**. Defendants have harassed

plaintiff, making improper rude comments against him, taking adverse personal action, using false

information and using their official positions improperly against plaintiff. All this to cause harm to

the plaintiff in clear violation of his civil rights and acting under color of law all this time. Plaintiff

has been subject to a hostile work environment, he has been subject to the adverse actions because

of his medical condition, **(See Docket No. 1, Complaint, paragraphs 19, 20, 21)**.

c:\motions\hroman.003

**RESPONSE TO MOTION TO DISMISS**
**USDC-PR CIVIL NO. 07-1498 (ADC)**
**Page 13**

33.     It was alleged at the complaint filed at the EEOC that the hostile work environment was *disability based*.

### The 1983 claims were timely filed so they are not time barred

34.     It was alleged in the Complaint that *Co-defendants James Velez and Julio Renta have been using plaintiff's mental medical condition to remove co-plaintiff from his occupation with co-defendant PREPA,* (**See Docket No. 1, Complaint, paragraph 13**). Defendants know that the series of events mention on paragraph 13 of the Complaint happened on the second semester of 2006. The EEOC complaint was timely filed within 300 days, then the claims are not time barred.

35.     Defendants have harassed plaintiff, making improper rude comments against him, taking adverse personal action, using false information and using their official positions improperly against plaintiff. All this to cause harm to the plaintiff in clear violation of his civil rights and acting under color of law all this time. Plaintiff has been subject to a hostile work environment, he has been subject to the adverse actions because of his medical condition, (**See Docket No. 1, Complaint, paragraphs 19, 20, 21**).

36.     Plaintiff Roman clearly stated that defendants has requested the results of his medical evaluations, when the satisfactory evaluations are provided to the defendants, they request new evaluations, changing the entire process of reinstallment of plaintiff, (**See Docket No. 1, Complaint, paragraph 16**), this constitutes a *Due Process* violations by co-defendant James Velez and Julio Renta. They also harassed plaintiff by making improper rude comments against him, taking adverse personal action and fabricating labor cases against him; using false information and using their official positions improperly as employees of co-defendant PREPA. All this to cause harm to the

c:\motions\hroman.003

RESPONSE TO MOTION TO DISMISS
USDC-PR CIVIL NO. 07-1498 (ADC)
Page 14

plaintiff in clear violation of his civil rights and they were acting under color of law all this time **(See Docket No. 1, Complaint, paragraph 18)**.

**Co-plaintiffs Oliveras-Lopez and Yama -Ruiz' claims under 1982 of the PR Civil Code were timely filed so they are not time barred**

37.     It was alleged in the Complaint that *Co-defendants James Velez and Julio Renta have been using plaintiff's mental medical condition to remove co-plaintiff from his occupation with co-defendant PREPA,* **(See Docket No. 1, Complaint, paragraph 13)**. Defendants know that the series of events mention on paragraph 13 of the Complaint happened on the second semester of 2006, then the claims are not time barred.

38.     On March 1, 2006 co-defendant PREPA's social worker requested PREPA's physician not to allow Plaintiff to work until he was evaluated by a psychiatrist. Co-defendant PREPA did not allow Plaintiff to work. On April 24, 2006 PREPA's social worker received psychiatrist's report & recommendation.  The psychiatrist recommended that Plaintiff could return to work/duties with PREPA. On May 23, 2006 co-defendant PREPA formally acknowledge the psychiatrist's report & recommendation.  On August 7, 2006 PREPA's physician requested mandatory asbestos' medical evaluations of Plaintiff.  In the asbestos' medical report the physicians noted that Plaintiff was fit for duties including as per his psychiatric condition. On October 17, 2006 the co-defendant PREPA'S physicians determined and recommended that Plaintiff could return to work.

39.     On November 13, 2006 against all the previous medical recommendations and in order to harass plaintiff and finally harming him, co-defendant Renta requested another medical

c:\motions\hroman.003

**RESPONSE TO MOTION TO DISMISS**
**USDC-PR CIVIL NO. 07-1498 (ADC)**
**Page 15**

evaluations of Plaintiff. Co-defendant Renta referred Plaintiff for involuntary a medical leave.

Plaintiff has been requesting to be allowed to return to work on several occasions but his request has

been denied by defendants.

40. Plaintiff was eliminated from PREPA's payroll on February 2007. Co-defendants

Renta and Vélez ordered that plaintiff's personal belongings were removed from the assigned work

area, his named was removed from *his* locker, and *his* toolbox was reassigned to other employee.

Plaintiff was terminated from PREPA on or about February 2007, he has not been receiving any

salary nor labor benefits since February 2007.

**All the claims were timely filed, so they are not time barred.**

41. It was alleged in the Complaint that *Co-defendants James Velez and Julio Renta*

*have been using plaintiff's mental medical condition to remove co-plaintiff from his occupation with*

*co-defendant PREPA,* **(See Docket No. 1, Complaint, paragraph 13)**. Defendants know that the

series of events mention on paragraph 13 of the Complaint happened on the second semester of

2006, then the claims are not time barred.

42. On March 1, 2006 co-defendant PREPA's social worker requested PREPA's

physician not to allow Plaintiff to work until he was evaluated by a psychiatrist. Co-defendant

PREPA did not allow Plaintiff to work. On April 24, 2006 PREPA's social worker received

psychiatrist's report & recommendation. The psychiatrist recommended that Plaintiff could return

to work/duties with PREPA. On May 23, 2006 co-defendant PREPA formally acknowledge the

psychiatrist's report & recommendation. On August 7, 2006 PREPA's physician requested

mandatory asbestos' medical evaluations of Plaintiff. In the asbestos' medical report the physicians

c:\motions\hroman.003

**RESPONSE TO MOTION TO DISMISS**
**USDC-PR CIVIL NO. 07-1498 (ADC)**
**Page 16**

noted that Plaintiff was fit for duties including as per his psychiatric condition. On October 17, 2006 the co-defendant PREPA'S physicians determined and recommended that Plaintiff could return to work.

43.      On November 13, 2006 against all the previous medical recommendations and in order to harass plaintiff, co-defendant Renta requested another medical evaluations of Plaintiff.  Co-defendant Renta referred Plaintiff for involuntary a medical leave.  Plaintiff has been requesting to be allowed to return to work on several occasions but his request has been denied by defendants.

44.      Plaintiff was eliminated from PREPA'S payroll on February 2007. Co-defendants Renta and Vélez ordered that plaintiff's personal belongings were removed from the assigned work area, his named was removed from *his* locker, and *his* toolbox was reassigned to other employee. Plaintiff was terminated from PREPA on or about February 2007, he has not been receiving any salary nor labor benefits since February 2007.

## VI.      DEFENDANTS DID NOT MEET THE STANDARD FOR MOTION TO DISMISS

45.      Defendants motion to dismiss did not meet the sstandard under Fed. R. Civ. P 12 (b) (6) neither under Fed. R. Civ. P 12 (b) (1).

**WHEREFORE,** we respectfully request Court to Grant the before mentioned.

Respectfully submitted.

In Ponce, Puerto Rico this 28th day of August of 2007.

**I HEREBY CERTIFY,** that on this  same date a true and exact copy of this document has been filed electronically using CM/ECF system in US District Court and the Clerk will electronically send it to**:** Rafael E. Rivera-Sánchez,  PR Justice Department, PO Box 9020192, San Juan, Puerto Rico 00902-0192, and Marie L. Cortés-Cortés, Llovet Zurinaga & López, PSC, Mercantil Plaza Building, Suite PH 1616, 2 Ponce de León Avenue, San Juan, Puerto Rico 00918.

c:\motions\hroman.003

RESPONSE TO MOTION TO DISMISS
USDC-PR CIVIL NO. 07-1498 (ADC)
Page 17

**RODRIGUEZ LOPEZ LAW OFFICE. P. S. C.**
Juan R. Rodríguez, Esq.
PO Box 7693
Ponce, Puerto Rico 00732-7693
Tel (787)843-2828 / 843-2900 Fax 284-1267
Email: **juan_r_rodriguez00732@hotmail.com**
**juan.ramon.rodriguez@us.army.mil**

By: _____ *S/JUAN R. RODRIGUEZ*
**JUAN R. RODRIGUEZ, ESQ.**
**USDC-PR 214410**

c:\motions\hroman.003

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

HECTOR LUIS ROMAN-OLIVERAS, et als*
    Plaintiffs             *     CIVIL NO.  07-1498 (ADC)
                             *
    vs.                     *     ABOUT:
                             *          TORTS
PUERTO RICO ELECTRIC POWER     *     42 USC 1983, Civil Rights Act
AUTHORITY (PREPA), et. als.         *     Title VII
    Defendants                *          JURY TRIAL
**************************************

## FIRST AMENDED COMPLAINT

**TO THE HONORABLE COURT:**

    **COME NOW** plaintiffs, through the undersigned attorney and respectfully alleges and request as follows:

## I.    JURISDICTION

    1.    The jurisdiction of this Court is invoked under the provisions of Title VII and 42 of the United States Code, Section 1983, Civil Rights Act 1964 and the American with Disability Act (ADA).

    2.    Plaintiff also invoke the article 1802 and 1803 of Puerto Rico Civil Code and the Puerto Rico Law against discrimination under the supplemental jurisdiction principles in the interest of judicial efficiency and economy.

    3.    Plaintiff's civil rights (under 42nd of the United States Code, Section 1983, Civil Rights Act 1964), he was discriminated (under The ADA), and other rights under other state and federal labor laws were and continue to be violated by co-defendants, whose actions or acts were

c:\claims\hroman.003

**FIRST AMENDED COMPLAINT**
**USDC-PR 07-287 (ADC)**
**Page 2**

under color of law.

## II.   PARTS:

4.      Plaintiff Hector Luis Roman-Oliveras is married, of legal age, citizen of the United States and resident at Sector Carbache, Bo. Rucio, Peñuelas, Puerto Rico.  His postal address is PO Box 907, Peñuelas, Puerto Rico 00624.

5.      Co-plaintiff Sonia Maria Yama-Ruiz is married to plaintiff Hector Luis Roman-Oliveras is of legal age, citizen of Colombia and legal resident of Sector Carbache, Bo. Rucio, Peñuelas, Puerto Rico.  Her postal address is PO Box 907, Peñuelas, Puerto Rico 00624.

6.      Co-plaintiff Felicita Oliveras-Lopez is mother of plaintiff Hector Luis Roman-Oliveras.

7.      Defendant Puerto Rico Electric Power Authority (PREPA)  is a public corporation and government agency dedicated to provide electric energy services to the Commonwealth of Puerto Rico.

8.      Co-defendants  James Velez and Julio Renta are engineer in the co-defendant Puerto Rico Electric Power Authority (PREPA).  Co-defendant James Vélez was the plaintiff's supervisor.  Co-defendant Julio Renta was the plant superintendent at Costa Sur Plant, Guayanilla which is own by co-defendant PREPA.  Co-defendant Julio Renta was the highest ranking official of co-defendant PREPA in Costa Sur Plant.

9.      John Doe y Richard Roe are those persons who are in any way responsible to cause the facts that give reason for this claim. Included are the insurance companies of all the defendants.

c:\claims\hroman.003

COMPLAINT
US DISTRICT COURT
Page 3

## III.    FACTS:

10.    Plaintiff  Hector Luis Roman-Oliveras  began to work for co-defendant Puerto Rico Electric Power Authority (PREPA) for approximately 22 years.  Plaintiff  Hector Luis Roman-Oliveras has a mental medical condition(schizophrenia) which was diagnosed more than thirty (30) years ago.

11.    Plaintiff Hector Luis Roman-Oliveras has had excellent evaluations during the years he has worked for co-defendant PREPA.  Plaintiff  Hector Luis Roman-Oliveras has received acknowledgments for his work, he was always available for overtime duties (extra hours and extra days).

12.    In the year 2005 co-defendants, PREPA, James Velez and Julio Renta began to reprise against plaintiff Hector Luis Roman-Oliveras because of previous situations including plaintiffs participation as leader of workman and his activities with the union.

**12a.    On March 1, 2006 co-defendant PREPA's social worker requested PREPA's physician not to allow Plaintiff to work until he was evaluated by a psychiatrist.  Co-defendant PREPA did not allow Plaintiff to work.**

**12b.    On April 24, 2006 PREPA's social worker received psychiatrist's report & recommendation.  The psychiatrist recommended that Plaintiff could return to work/duties with PREPA.**

**12c.    On May 23, 2006 PREPA formally acknowledge the psychiatrist's report & recommendation.  On August 7, 2006 PREPA's physician requested mandatory asbestos'**

c:\claims\hroman.003

**FIRST AMENDED COMPLAINT**
**USDC-PR 07-287 (ADC)**
**Page 4**

medical evaluations of Plaintiff. In the asbestos' medical report the physicians noted that

Plaintiff was fit for duties including as per his psychiatric condition.

**12d.    On October 17, 2006 the co-defendant PREPA'S physicians determined and**

**recommended that Plaintiff could return to work.**

13.    Co-defendants James Velez and Julio Renta have been using plaintiffs mental

medical condition to remove co-plaintiff from his occupation with co-defendant PREPA.

**13a.    On November 13, 2006 co-defendant Julio Renta requested a medical**

**evaluations of Plaintiff. Co-defendant Renta referred Plaintiff for involuntary a medical leave.**

**Plaintiff has been requesting to be allowed to return to work on several occasions but his**

**request has been denied by co-defendants.**

14.    Co-defendants referred plaintiff Hector Luis Roman-Oliveras without reason to the

doctors of co-defendant PREPA, and to evaluations with the doctors of (Corporation del Fondo del

Seguro del Estado). Plaintiff was also asked for the evaluations of my private doctors.

**14a.    Plaintiff submitted medical certification from his psychiatrist on January 2007**

**as requested but co-defendants failed to allow him to return to work.**

15.    All of the doctors who evaluated plaintiff Hector Luis Roman-Oliveras determined

that the plaintiff was capable to continue his work with co-defendant PREPA.

16.    Plaintiff Hector Luis Roman-Oliveras has always followed his doctors medical

instructions, gone to every medical visit and takes his medications regularly. Co-defendant PREPA

has requested the results of the medical evaluations of plaintiff Hector Luis Roman-Oliveras. When

c:\claims\hroman.003

**FIRST AMENDED COMPLAINT**
**USDC-PR 07-287 (ADC)**
**Page 5**

the satisfactory evaluations are provided to the co-defendants they request new evaluations, changing

the entire process of the reinstallation of plaintiffs duties.

17.     Co-defendants tried in one occasion to transfer plaintiff Hector Luis Roman-Oliveras

without the benefit of paying him diet and car allowance.  Plaintiff Hector Luis Roman-Oliveras has

been treated differently from similarly situated individuals outside of his protected group.

18.     Co-defendant engineers James Velez and Julio Renta have harassed plaintiff Hector

Luis Roman-Oliveras making improper rude comments against him, taking adverse personal action

and fabricating labor cases against him; using false information and using their official positions

improperly  as employees and engineers of co-defendant PREPA.  All this to cause harm to the

plaintiff in clear violation of his civil rights and acting under color of law all this time.

19.     Plaintiff  Hector Luis Roman-Oliveras has been subject to a hostile work

environment because of the direct actions of co-defendants James Velez and Julio Renta and

PREPA.

20.      Plaintiff Hector Luis Roman-Oliveras has been subject to the adverse actions

because of his medical condition and active participation with the Union.

21.     Plaintiff's civil rights (under 42nd of the United States Code, Section 1983, Civil

Rights Act 1964), he was discriminated (under The ADA), and other  rights under other state and

federal labor laws were and continue to be violated by co-defendants, whose actions or acts were

under color of law.

22.     Plaintiff filed a complaint in the U. S. Equal Employment Opportunity on

c:\claims\hroman.003

**FIRST AMENDED COMPLAINT**
**USDC-PR 07-287 (ADC)**
**Page 6**
Commission (EEOC) on February 23, 2007.

**22a.    Plaintiff was eliminated from PREPA'S payroll on February 2007. Co-defendants Renta and Vélez ordered that plaintiff's personal belongings were removed from the assigned work area, his named was removed from *his* locker, and *his* toolbox was reassigned to other employee.**

**22b.    Plaintiff was terminated from PREPA on or about February 2007.**

23.    The defendants, supervisors, administrators, directors were negligent and caused emotional and mental damage and anguish to the plaintiffs.  The co defendants while acting under color of law violated the Civil Rights discriminated against the plaintiff causing damages to the plaintiff.  The defendants and their respective insurance companies are liable under the Civil Rights, American with Disability Act (ADA) and  Article 1802 and 1803 of Puerto Rico Civil Code Law.

## III.  DAMAGES:

24.    Plaintiff Hector Luis Roman-Oliveras civil rights were violated, he was discriminated due to his medical condition, damages estimated on $500,000.00

25.    Plaintiff Hector Luis Roman-Oliveras, was humiliated, discriminated, harassed, persecuted due to his medical condition, damages estimated on $250,000.00.

26.     Plaintiff Hector Luis Roman-Oliveras, has  suffered and continue to suffer, severe emotional distress, affliction, anguish, deprivation, damages estimated on $250,000.00.

27.     Co-plaintiffs Sonia Maria Yama-Ruiz and Felicita Oliveras-Lopez have suffered and

c:\claims\hroman.003

**FIRST AMENDED COMPLAINT**
USDC-PR 07-287 (ADC)
Page 7

continue to suffer, severe emotional distress, affliction, anguish, deprivation because of their

husband and son's damages and suffering, damages estimated on $250,000.00 for each.

      28.     Co-plaintiff   Hector Luis Roman-Oliveras has suffered and continue to suffer,

severe emotional distress, affliction, anguish, deprivation because of their husband's  damages and

suffering, damages estimated on $250,000.00 for each.

      **29.     Plaintiff Hector Luis Roman-Oliveras, has not been receiving any salary nor**

**labor benefits since February 2007, damages estimated on $4,000.00 per month.**

      **IN WITNESS WHEREOF** it is respectfully requested from this Honorable Court that

judgment be entered against the defendant awarding damages to plaintiffs for no less than two

million dollars, plus cost, expenses and a reasonable amount for attorneys fees , grant plaintiffs such

other relief as it may deem proper under the circumstances and pursuant to Rule 38 (b) of the Federal

Rules of Civil Procedure, plaintiffs also hereby request a trial.

      **JURY TRAIL DEMANDED.**

      **RESPECTFULLY SUBMITTED**.

      In Ponce, Puerto Rico this 29th day of August of 2007.

                      **RODRIGUEZ LOPEZ LAW OFFICE**, P. S. C.
                      Juan R. Rodriguez
                      PO Box 7693
                      Ponce, Puerto Rico 00732-7693
                      Tel:  (787) 843-2828 \ 843-2900 Fax:284-1267
                      Email: **juan_r_rodriguez00732@hotmail.com**
                                  **juan.ramon.rodriguez@us.army.mil**

                      By: *Juan R. Rodriguez*

c:\claims\hroman.003

**FIRST AMENDED COMPLAINT**
**USDC-PR 07-287 (ADC)**
**Page 8**

**JUAN R. RODRIGUEZ**
USDC-PR 214410

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

HECTOR L. ROMAN-OLIVERAS, et al.,
      Plaintiffs,

        v.

PUERTO RICO ELECTRIC POWER
AUTHORITY, et al.,
      Defendants.

Civil No. 07-1498 (ADC)

## OPINION AND ORDER

Plaintiffs, Héctor L. Román-Oliveras ("Román"), Sonia María Yama-Ruíz, their Conjugal Partnership, and Román's mother, Felicita Oliveras-López (collectively, "plaintiffs"), bring suit against the Puerto Rico Power Authority ("PREPA"), James Vélez ("Vélez"), Julio Renta ("Renta"), and unnamed persons and insurance companies (collectively, "defendants"), alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.* ("Title VII"), the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"), Section 1983 of Title 42 of the United States Code ("section 1983"), and Articles 1802 and 1803 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, §§ 5141 ("Article 1802") and 5142 ("Article 1803") (collectively "Articles 1802 and 1803 "). **Docket No. 1 amended at 14, 28**.

Now before the court is defendants' motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). **Docket No. 19**.[1] Plaintiffs filed a response in opposition to

---

[1] PREPA originally filed its motion to dismiss on August 16, 2007. **Docket No. 11**. Subsequent to said filing, plaintiffs filed their first amended complaint. **Docket No. 14**. The motion to dismiss was then joined by Renta and Vélez. **Docket No. 17**. PREPA then re-filed its motion to dismiss so as to address plaintiffs' newly incorporated allegations. **Docket No. 19**. Again, PREPA's motion was joined by Renta and Vélez. **Docket No. 21**. On January 18, 2008, plaintiffs filed their second amended complaint (**Docket No. 28**) in compliance with the court's order to address deficiencies contained in their original complaint (**Docket No. 26**). The second amended complaint incorporated the following allegation: "23a. [t]he U.S. Equal Employment Opportunity Commission (E.E.O.C.) issued a notice of right to sue on July 9, 2007." As there is no substantive difference between the first and second amended

Civil No. 07-1498 (ADC)                                                                                        Page 2

said motion.  **Docket No. 22**.  After due consideration of the complaint, the motion to dismiss and the response in opposition thereto, said motion is **GRANTED**.

I.    **Factual Background**

Unless otherwise indicated, the following allegations are drawn from the second amended complaint filed on January 18, 2008.  **Docket No. 28**.

Román was diagnosed with schizophrenia more than thirty (30) years prior to filing the instant action.  *Id*. at ¶ 10.  Since that time, he has been under regular psychiatric treatment, reason for which his condition has never affected his employment.  Despite this, Román has worked for PREPA for the past twenty-two (22) years, and has received excellent evaluations during his employment.  *Id*. at ¶¶ 10-11.  Notwithstanding, plaintiffs' complaint avers that Román was subjected to a hostile work environment and adverse employment actions because of his medical condition and active participation with the union.  *Id*. at ¶¶ 19-20.

A.    **Hostile Work Environment**

Plaintiffs aver that in 2005,[2] Vélez and Renta began to reprise against Román because of his "leadership of workmen" and his activities with the union.  *Id*. at ¶ 12.  More specifically, plaintiffs allege that Vélez and Renta harassed Román by: (1) making rude and improper comments about him; (2) taking adverse personal actions against him; (3) fabricating labor cases against him; and (4) using false information and their official positions in PREPA, improperly and under cover of law, to cause him harm.  *Id*. at ¶ 18.

---

complaints beyond this statement, the court deems this matter fully submitted.  Further, the court will only address defendants' re-filed motion to dismiss (**Docket No. 19**), as the previous motion to dismiss (**Docket No. 11**) is **MOOT**.

    [2] Plaintiffs do not state the date that these alleged reprisals began.

### B.    Adverse Employment Actions

Plaintiffs also allege that Vélez and Renta used Román's psychiatric condition to prevent him from working and to terminate his employment. *Id*. at ¶ 13. In support of said claim, plaintiffs put forward the following allegations.

On March 1, 2006, PREPA's social worker requested that PREPA's physician not allow Román to work until he was evaluated by a psychiatrist. *Id*. at ¶ 12a. Thereafter, PREPA prevented Román from working. *Id*. On April 24, 2006, PREPA's social worker received the psychiatrist's report and recommendation in which the psychiatrist recommended that Román could resume his duties. *Id*. at ¶ 12b. On May 23, 2006, PREPA formally acknowledged the psychiatrist's report and recommendation. *Id*. at ¶ 12c. On August 7, 2006, PREPA's physician requested "mandatory asbestos medical evaluations of Román." *Id*. The medical report noted that Román was "fit for duties including as per his psychiatric condition." *Id*. On October 17, 2006, PREPA's physicians recommended that Román return to work. *Id*. at ¶ 12d. On November 13, 2006, Renta, without justification, requested further medical evaluations of Román, placed him on involuntary medical leave and referred him to the doctors of PREPA and the State Insurance Fund. *Id*. at ¶¶ 13a, 14. In January of 2007, Román submitted a medical certification from his psychiatrist, as requested by defendants. *Id*. at ¶ 14a. All of the doctors who evaluated Román determined that he was capable of returning to work. *Id*. at ¶ 15. Plaintiffs' request to be allowed to return to work have been consistently denied by co-defendants.

According to plaintiffs, Román has always followed medical instructions, attended every medical appointment and taken his medication regularly. *Id*. at ¶ 16. Despite this, defendants have not allowed him to return to work. *Id*. at ¶¶ 14a, 16. Instead, after receiving the satisfactory evaluations, defendants requested new evaluations, and continued changing the process by which Román would resume his duties. *Id*. at ¶ 16. Román asserts he was

terminated in February of 2007.[3]  *Id*. at ¶¶ 22a, 22b.  On February 23, 2007, Román filed a complaint with the Equal Employment Opportunity Commission ("E.E.O.C.").  *Id*. at ¶ 22. The  E.E.O.C. issued a notice of right to sue on July 9, 2007.  *Id*. at ¶ 23a.

## II.    Analysis

### A.    Lack of Subject Matter Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(1)

#### 1.    Motion to Dismiss Standard  for Lack of Subject Matter Jurisdiction

Pursuant to Fed. R. Civ. P. 12(b)(1), a defendant may move to dismiss an action against it based on the court's lack of federal subject matter jurisdiction.  Since federal courts have limited jurisdiction, the party asserting jurisdiction has the burden of demonstrating its existence.  *See Murphy v. United States*, 45 F.3d 520, 522 (1st Cir. 1995).  In assessing a motion to dismiss for lack of subject matter jurisdiction, a district court "must construe the complaint liberally, treating all well-pleaded facts as true and drawing all reasonable inferences in favor of the plaintiffs."  *Viqueira v. First Bank*, 140 F.3d 12, 16 (1st Cir. 1998) (*citing Royal v. Leading Edge Prods., Inc.*, 833 F.2d 1 (1st Cir. 1987)).  Additionally, a court may review any evidence, including submitted affidavits and depositions, to resolve factual disputes bearing upon the existence of jurisdiction.  *See Land v. Dollar*, 330 U.S. 731, 734-35 (1947) ("[W]hen a question of the District Court's jurisdiction is raised, either by a party or by the court on its own motion . . . the court may inquire by affidavits or otherwise, into the facts as they exist.");  *Aversa v. United States*, 99 F.3d 1200, 1209-10 (1st Cir. 1996) ("In ruling on a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), the district court must construe the complaint liberally, treating all well-pleaded facts as true and indulging all reasonable inferences in favor of the plaintiff.  In addition, the court may consider whatever evidence has

---

[3] Defendants dispute the fact that Román was terminated.  They state that as of September 5, 2007, he was an engineer in their employ.  **Docket No. 19**, at 10 n.2.  Nonetheless, in their response to defendants' motion to dismiss, plaintiffs provide an employment certification, issued by PREPA, which reflects that Román had been on medical leave, without pay, since February 10, 2007.  **Docket No. 22,** Ex. 1.

been submitted, such as the depositions and exhibits submitted in this case.") (internal citations omitted).

A defendant may challenge subject matter jurisdiction in two ways. The first is to mount a "sufficiency challenge" which accepts the plaintiff's version of jurisdictionally-significant facts as true and addresses their sufficiency, thus requiring the court to assess whether the plaintiff has propounded an adequate basis for subject-matter jurisdiction. *Valentín v. Hospital Bella Vista*, 254 F.3d 358, 363-64 (1st Cir. 2001). The second is by controverting the accuracy of the jurisdictional facts asserted by the plaintiff and proffering materials of evidentiary quality in support of that position. *Id*.

### 2.      Failure to Exhaust Administrative Remedies

First, defendants argue that plaintiffs failed to exhaust administrative remedies by failing to timely file their complaint with the E.E.O.C.[4] **Docket No. 19**, at 6. Plaintiffs, on the

---

[4] In challenging plaintiffs' jurisdictional allegations, defendants state that: (1) "[plaintiff] does not allege to have received a right to sue letter;" and (2) "[plaintiff] does not allege to have file[d] this action . . . within the prescribe[d] period of ninety days [of receipt of his right to sue letter]." These are challenges to the sufficiency of plaintiffs' pleadings. Notwithstanding, to the extent defendants base their jurisdictional challenge on these statements, said arguments are unavailing. This is because plaintiffs state that the E.E.O.C. issued a right to sue letter on July 9, 2007. **Docket No. 28**, at ¶ 23a. Moreover, plaintiffs filed the instant complaint on June 11, 2007. **Docket No. 1**. While they must exhaust their administrative remedies, including all E.E.O.C. procedures, prior to proceeding under the ADA in federal court, *see Frederique-Alexandre v. Dep't of Natural and Env't Res.*, 478 F.3d 433, 440 (1st Cir. 2007), the exhaustion requirement is not a jurisdictional prerequisite, but rather is subject to waiver, estoppel and equitable tolling. *Ramírez-Ortíz v. Cucurella-Rivera*, No. 06-1879, 2007 WL 2428689, *1 (D.P.R. Aug. 20, 2007). An ADA complainant may file an action prior to receiving a right to sue letter, provided there is no evidence showing that the premature filing precluded the E.E.O.C. from performing its administrative duties or that the defendant was prejudiced by such filing. *Id.*; *see also Martín v. Central States Emblems, Inc.*, 150 Fed. Appx. 852, 855 (10th Cir. 2005) (*quoting Edwards v. Occidental Chem Corp.*, 892 F.2d 1442, 1445 n.1 (9th Cir. 1990)). Defendants allege neither prejudice to the E.E.O.C.'s administrative procedure nor to themselves. Therefore, this is an inadequate basis to deprive the court of subject matter jurisdiction.

other hand, assert that the E.E.O.C. complaint was timely filed on February 23, 2007.[5]

Plaintiffs assert claims brought pursuant to the ADA. In order to do so, because Puerto Rico is a deferral state, plaintiffs must have exhausted administrative remedies by "filing a charge with the E.E.O.C. within three hundred (300) days after 'the alleged unlawful employment practice occurred.'" *Rivera v. P.R. Aqueduct and Sewers Auth.*, 331 F.3d 183, 188 (1st Cir. 2003) (*quoting* 42 U.S.C. § 2000e-5(e)(1)(2000)). As such, because plaintiffs filed their claims with the E.E.O.C. on February 23, 2007, the prescribed three hundred (300) day period runs from April 29, 2006, until February 23, 2007. Therefore, the court must determine, for each claim, what constitutes an unlawful employment practice and whether said practice occurred within the prescribed period. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002).

### a.    Hostile Work Environment Claim

The Supreme Court has defined unlawful employment practices in hostile work environment claims as those involving "repeated conduct" that arises "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.*

Here, the facts alleged to support plaintiffs' claim that Román was subjected to a hostile work environment are that at some point in 2005, defendants "began to reprise against" Román because of his mental condition. **Docket No. 28**, at ¶ 12. Plaintiffs also state that Vélez and Renta harassed Román by making rude and improper comments, taking adverse personal actions against him, fabricating labor cases against him, and "using false information and their

---

[5] Plaintiffs, however, have failed to specifically assert what claims were embodied in the E.E.O.C. complaint. **Docket No. 14**, at 22. In fact, plaintiffs' sole allegation regarding the substance of the E.E.O.C. complaint is found within the response to the motion to dismiss. In said document, plaintiffs assert that "it was alleged at the E.E.O.C. that the hostile work environment was disability based." **Docket No. 15**, at 13, 33.

official positions" to cause him harm. *Id*. at ¶ 18.[6]  Based on these allegation, plaintiffs have failed to meet their burden of establishing that Román was exposed to a hostile work environment between April 29, 2006, and February 23, 2007.  In fact, the only reference made by plaintiffs regarding a hostile work environment relates to Román being subjected to reprisals "because of previous situations including plaintiffs participation as leader of workman [sic] and his activities in the union," and the general allegation of rude comments having been made sometime in 2005.  The time frame in which these actions took place are outside the statutory period.  Additionally, it is unclear whether Román was even at work, much less whether the environment remained hostile, during said period.[7]  Despite these problems, plaintiffs have done nothing to clarify this issue, despite numerous opportunities to do so.  In responding to defendants' motion to dismiss, plaintiffs state only: "[d]efendants know that the series of events . . . happened on [sic] the second semester of 2006.  The E.E.O.C. complaint was timely filed within 300 days . . . ."  **Docket No. 22**, ¶ 18.[8]  This is insufficient to meet plaintiffs' burden because, in alleging a hostile work environment claim, plaintiffs must state that "at least one act . . . constituting the claim . . . falls within the filling period."

---

[6]  In paragraphs 12a-d of the complaint, plaintiffs state that—in a series of discreet acts—defendants required Román to receive medical evaluations related to his schizophrenia, said evaluations stated that he was psychologically fit to return to work, yet, instead of allowing Román to return, defendants would require more tests. *Id*. at ¶¶ 12a-d.  Because the Court in *Morgan* explained that these sort of discreet acts do not constitute evidence of a hostile work environment claim, but instead, support an adverse employment action claim, the court will not consider them in assessing whether plaintiffs' hostile work environment claim was timely filed with the E.E.O.C.

[7]  According to the complaint, defendants prevented Román from working from March 1, 2006, until his termination in February of 2007. *Id*. at ¶¶ 12a-d.

[8]  In addition to filing a complaint, first amended complaint and two (2) responses in opposition to defendants' motions to dismiss (**Docket Nos. 1, 14, 15, 22**), plaintiffs were given an additional opportunity to clarify this issue in their second amended complaint (**Docket No. 28**).  Nonetheless, plaintiffs failed to respond to the court's order directly asking plaintiffs "whether Román was at work within the prescribed period, so as to support his hostile work environment claim." **Docket No. 26**.

*Morgan*, 536 U.S. 101 at 118.

As such, plaintiffs have failed to allege sufficient facts for the court to conclude that it has subject matter jurisdiction over their hostile work environment claim. *See Murphy*, 45 F.3d at 522 (holding that the party asserting jurisdiction has the burden of demonstrating its existence).

### b.     Adverse Employment Action Claim

The Supreme Court has defined unlawful employment practices in the context of an adverse employment action claim as "[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire [which are] easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" *Id.* at 114.

Plaintiffs allege that defendants used Román's mental condition to prevent him from working and, ultimately, terminate his employment. **Docket No. 28**, at ¶ 13. Essentially, plaintiffs allege that in a series of acts occurring on March 1, August 7, and November 13, of 2006, defendants required Román, repeatedly and without a valid reason, to submit to medical evaluations, related to his schizophrenia. *Id.* at ¶¶ 12a-d. More so, it is alleged that they arbitrarily refused to allow Román to return to work, as recommended by the evaluating physicians. It is specifically asserted that the results of these evaluations, which were conveyed to defendants on April 4, October 17, and January 7, 2007, respectively, stated that Román was psychologically fit to return to work. *Id.* Yet, instead of allowing Román to return, defendants requested that he submit to further medical evaluations. *Id.* at ¶¶ 12a-d, 14-16. Ultimately, this culminated into Román's final referral for involuntary medical leave on November 13, 2006, and his alleged termination in February of 2007. *Id.* at ¶¶ 14-16, 22.

As stated above, on February 23, 2007, plaintiffs filed a claim with the E.E.O.C. These facts are sufficient to show that the filing of plaintiffs' claim with the E.E.O.C. was timely since, irrespective of whether the adverse employment act was Román's termination in February of 2007, or the last time he was placed on involuntary medical leave, without reason,

on November 13, 2006, either act was within the statutory period which ran from April 29, 2006, to February 23, 2007. As such, the court has subject matter jurisdiction over plaintiffs' adverse employment action claim.

### B.    Failure to State a Claim Pursuant to Fed. R. Civ. P. 12(b)(6)

#### 1.    Motion to Dismiss Standard for Failure to State a Claim

When a court is presented with a motion to dismiss filed under Fed. R. Civ. P. 12(b)(6), "its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). In making this determination the court "take[s] as true all well-pleaded allegations and draw[s] all reasonable inferences in the plaintiffs' favor." *Ezra Charitable Trust v. Tyco Int'l, Ltd.*, 466 F.3d 1, 5-6 (1st Cir. 2006). The claimant, however, "must allege 'a plausible entitlement to relief.'" *Rodríguez-Ortíz v. Margo Caribe, Inc.*, 490 F.3d 92, 95 (1st Cir. 2007) (*quoting Bell Atl. Corp. v. Twombly*, 127 S. Ct 1955, 1967 (2007)). "The court need not accept a plaintiff's assertion that a factual allegation satisfies an element of a claim, however, nor must a court infer from the assertion of a legal conclusion that factual allegations could be made that would justify drawing such a conclusion." *Cordero-Hernández v. Hernández-Ballesteros*, 449 F.3d 240, 244 n.3 (1st Cir. 2006).

#### 2.    Title I of the ADA[9]

Defendants argue that plaintiffs' ADA claim should be dismissed since plaintiffs have failed to allege facts showing that: (1) Román is disabled within the meaning of the ADA, or (2) that he was regarded as disabled by defendants. The court agrees.

Title I of the ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to

---

[9] Plaintiffs do not state under which title of the ADA they bring suit. However, inasmuch as they refer to their claims as Title I claims in their opposition to the motion to dismiss, the court will address the issues raised within the delineated legal parameters. **Docket No. 22.**

. . . terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).  To state a claim for employment discrimination under Title I of the ADA, plaintiffs must show that: (1) Román suffers from a disability within the meaning of the Act; (2) he was able to perform the essential functions of the job, either with or without reasonable accommodation; and (3) the employer discharged him, in whole or in part, because of that disability.  *See Feliciano v. State of Rhode Island,* 160 F.3d 780, 784 (lst Cir. 1998).  In order to show that Román suffers from a disability within the meaning of the ADA, in satisfaction of the first element, plaintiffs must show that Román either: (a) has a mental impairment that substantially limits one or more of his major life activities; (b) has a record of such an impairment; or (c) is regarded as having such an impairment. 42 U.S.C. § 12102(2); *see also Bailey v. Georgia-Pacific Corp.,* 306 F.3d 1162, 1166 (1st Cir. 2002).  E.E.O.C. regulations define major life activities as functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.  29 C.F.R. § 1630.2(I).

### a.    Mental Impairment Substantially Limiting a Major Life Activity

The first way to show that Román is disabled within the meaning of the ADA, in satisfaction of the first element of the *prima facie* case analysis, is by alleging facts sufficient to show that Román suffers from a mental impairment that substantially limits one or more of his major life activities.  42 U.S.C. § 12102(2)(A); *see also Carroll v. Xerox Corp.,* 294 F.3d 231, 238 (1st Cir. 2002).  In the present instance, Román was diagnosed with schizophrenia thirty (30) years ago. **Docket No. 14,** at ¶ 10. However, plaintiffs allege few facts beyond this to show that Román's schizophrenia constitutes an impairment affecting his life in a substantial way.  In fact, the only facts plaintiffs allege regarding how schizophrenia affects Román's life are that Román visits the doctor regularly and take his medication as instructed (**Docket No. 28,** at ¶ 16); that evaluating doctors have determined he is capable of accomplishing his employment duties (*id.* at ¶¶ 12b-d, 14a, 15); and that defendants have, nonetheless, prevented Román from working because of his status as a schizophrenic (*id.* at ¶¶ 13, 17, 18,

20). Plaintiffs' failure to allege facts demonstrating that schizophrenia is an impairment in Román's life is fatal to their ADA claim. This is because, pursuant to the Supreme Court's ruling in *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 482-83 (1999), "a 'disability' exists only where an impairment 'substantially limits' a major life activity, not where it 'might,' 'could,' or 'would' be substantially limiting if mitigating measures were not taken. A person whose physical or mental impairment is corrected by medication or other measures, does not have an impairment that presently 'substantially limits' a major life activity." *Id.* As such, since Román's schizophrenia is corrected by medication and does not substantially limit a major life activity, he is not disabled within the meaning of the ADA.

Further, it is insufficient to merely submit evidence of a medical diagnosis of an impairment to show a claimant is disabled within the meaning of the ADA. *See Toyota Motors Mfg. Ky., Inc. v. Williams*, 534 U.S. 184 (2002). To be "substantially limited" in a "specific major life activity," as understood by the ADA, an individual must have a permanent or long term impairment that prevents or severely restricts the individual from doing activities that are of central importance to the daily lives of most people. *Id.* at 187. No such facts were presented here.

### b.    Record of an Impairment

The second way plaintiffs may establish that Román is disabled within the meaning of the ADA is by providing a record of an impairment substantially affecting a major life activity. 42 U.S.C. § 12102(2). Plaintiffs, however, have failed to provide such a record inasmuch as the only allegation on record is that of Román having been diagnosed with schizophrenia thirty (30) years ago. As stated above, proof of diagnosis is insufficient to show substantial impairment. *See Toyota*, 534 U.S. at 198.

### c.    Regarded as Having an Impairment Substantially Limiting a Major Life Activity

The third way in which plaintiffs may establish that Román is disabled within the meaning of the ADA is by showing that defendants perceived or regarded him as having an

impairment that substantially affected his ability to work.  42 U.S.C. § 12102(2); *see also Sutton*, 527 U.S. at 492 (stating that working is a major life activity).  Here, plaintiffs aver that Román was placed on involuntary medical leave so that he could be evaluated by a psychiatrist. **Docket No. 28**, at ¶¶ 12a, 13a, 14.  Further, plaintiffs claim that Román's medical and psychiatric evaluations show that he was fit to return to work.  *Id*. at ¶¶ 12b-d, 15. Nonetheless, defendants refused to allow Román to return.  *Id*. at ¶ 14a.  Plaintiffs assert that when satisfactory psychiatric evaluations were provided to defendants, they kept on requesting new psychiatric evaluations, changing the entire process for the reinstallation of Román's duties.  *Id*. at ¶ 16.

This court finds that plaintiffs have failed to allege facts sufficient to show that defendants ever regarded Román's schizophrenia as having a substantial impact on his work. This omission is lethal to plaintiffs' claim, particularly considering "the Supreme Court has implied that regarded as claims require an even greater level of specificity than other claims." *Ruíz-Rivera v. Pfizer Pharm., LLC*, No. 07-1595, 2008 WL 802730, *6 (1st Cir. Mar. 27, 2008) ("In order to allege an actionable "regarded as claim", a plaintiff must select and identify the major life activity that she will attempt to prove the employer regarded as being substantially limited by her impairment.").

Consequently, plaintiffs have failed to allege facts sufficient to establish the first element of the *prima facie* case for an ADA claim, namely, that Román is disabled within the meaning of the statute.  As such, the court need not address the second and third elements of the prima facie case, or defendants' other arguments for dismissal.

### 3.        Failure to State a Claim Pursuant to Section 1983

Defendants argue that the court should dismiss plaintiffs' section 1983 claim inasmuch as plaintiffs fail to state a valid cause of action.  The court once again agrees.

Section 1983 creates no independent substantive rights, but rather, provides a cause of action by which individuals may seek money damages for governmental violations of rights protected by federal law.  *See Albright v. Oliver*, 510 U.S. 266, 271 (1994).  To state a claim

pursuant to section 1983, plaintiffs must show: (i) the conduct complained of has been committed under color of state law; (ii) that this conduct worked a denial of rights secured by the Constitution or laws of the United States" (*Collins v. Nuzzo*, 244 F.3d 246, 250 (1st Cir. 2001) (*quoting Chongris v. Bd. Of Appeals of Town of Andover*, 811 F.2d 36, 40 (1st Cir. 1987))); and (iii) that defendants' alleged conduct was causally connected to plaintiffs' deprivation. *Gutiérrez-Rodríguez v. Cartagena*, 882 F.2d 553, 558 (1st Cir. 1989).

In the instant action, plaintiffs allege that Román has been subjected to adverse employment actions "because of the direct actions of co-defendants." **Docket No. 28**, at ¶¶ 19-20. Further, plaintiffs allege that the reason behind defendants' unlawful employment discrimination is "because of his medical condition and active participation in the union." *Id.* at 20. Additionally, plaintiffs state that their civil rights have been violated by defendants, who were acting "under color of law." *Id.* at ¶ 21. Plaintiffs' allegations are insufficient to raise their claims above the "speculative level." First, plaintiffs' assertion that defendants' actions were committed under the color of law is merely a conclusory statement for which plaintiffs fail to provide either legal support or developed argumentation. Second, while it is clear that plaintiffs are claiming employment discrimination, they fail to specifically allege what constitutional provisions or federal law secures Román's right to be free of the alleged discrimination, aside from plaintiffs' Title VII and ADA claims, which this court has already dismissed. Third, and relatedly, the law of this district mandates that section 1983 claimants, who also claim a violation of the ADA, allege facts which support the constitutional claim or federal law upon which their section 1983 claim is based, independent of their ADA claim. *See Vicenty-Martell v. Estado Libre Asociado de P.R.*, 48 F. Supp. 2d 81, 91 (D.P.R. 1999). Here, aside from Title VII and the ADA, plaintiffs neither allege a specific violation of federal law nor any independent facts which might support it. Consequently, plaintiffs fail to state a valid

Civil No. 07-1498 (ADC)                                                                    Page 14

section 1983 claim.[10]

C.      **Supplemental Claims**

The court declines to exercise supplemental jurisdiction over plaintiffs' associated Commonwealth of Puerto Rico claims since all of plaintiffs' federal claims have been dismissed.  *See Rivera v. Murphy*, 979 F.2d 259, 264 (1st Cir. 1992) (*quoting Cullen v. Mattaliano*, 690 F. Supp. 93 (D.Mass. 1988) ("[I]t is the settled rule in this Circuit that in a non-diversity case, where pendent state claims are joined with a federal cause of action and that federal cause of action is [dismissed] . . . the pendent state claims should be dismissed.")).

**III.   Conclusion**

Based upon the foregoing, defendants' motion to dismiss (**Docket No. 19**) is **GRANTED**.  Plaintiffs' claims brought pursuant to Title VII, the ADA and section 1983 are **DISMISSED WITH PREJUDICE**.  Moreover, the court declines to exercise supplemental jurisdiction over plaintiffs' Commonwealth of Puerto Rico claims.  Consequently, they are **DISMISSED WITHOUT PREJUDICE**.

The Clerk of Court is directed to enter judgment accordingly.

**SO ORDERED.**

At San Juan, Puerto Rico, on this 18th day of February, 2009.

**S/AIDA M. DELGADO-COLON**
**United States District Judge**

---

[10] While plaintiffs' statement that defendants "began to reprise against" Román because of his "leadership of workmen and his activities with the union" may suggest a constitutional claim, this statement alone is insufficient to state a cause of action against defendants because of its perfunctory nature.  As such, the court need not address it.  *See United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

HECTOR L. ROMAN-OLIVERAS, et al.,

     Plaintiff

     vs.

PUERTO RICO ELECTRIC POWER
AUTHORITY, et al.,

     Defendant(s)

CV. 07-1498 (ADC)

## JUDGMENT

The Court, through the Honorable Aida M. Delgado-Colón, United States District Judge, issued an Order for Entry of Judgment on February 18, 2009.

Therefore, pursuant to the Court's Order, Judgment is HEREBY entered accordingly.

Defendants' motion to dismiss is **GRANTED.**

Plaintiffs' claims brought pursuant to Title VII, the ADA and Section 1983 are **DISMISSED WITH PREJUDICE.**

Plaintiffs' Commonwealth of Puerto Rico claims are **DISMISSED WITHOUT PREJUDICE.**

**IT IS SO ORDERED AND ADJUDGED.**

In San Juan, Puerto Rico, this 19th day of February, 2009.

     FRANCES RIOS DE MORAN
     Clerk of the Court

     By: s/Sarah V. Ramón
          Sarah V. Ramón, Deputy Clerk

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF PUERTO RICO

HECTOR LUIS ROMAN-OLIVERAS, et als*
    Plaintiffs              *     CIVIL NO.  07-1498 (ADC)
                             *
        vs.               *     ABOUT:
                             *         TORTS
PUERTO RICO ELECTRIC POWER     *     42 USC 1983, Civil Rights Act
AUTHORITY (PREPA), et. als.         *     Title VII
    Defendants             *     JURY TRIAL
**************************************

## NOTICE  OF  APPEAL

**TO THE HONORABLE COURT:**

    **COME NOW** plaintiffs, through the undersigned attorney and respectfully informs as follows:

    1.     **NOTICE** is given that Héctor Luis Román Oliveras, the plaintiff in the above captioned civil case, hereby appeals to the United States Court of Appeals for the First Circuit, from the Judgement issued in the above filed case.

    2.     The Judgement by Honorable Aida M. Delgado-Colón was released on February 19, 2009.

    **WHEREFORE,** we respectfully request Court to Grant the before mentioned.

    Respectfully submitted.

    In Ponce, Puerto Rico this 16th day of March of 2009.

    **I HEREBY CERTIFY,** that on this same date a true and exact copy of this document has been filed electronically using CM/ECF system in US District Court and the Clerk will electronically send it to**:** Rafael E. Rivera-Sánchez, PR Justice Department, PO Box 9020192, San Juan, Puerto Rico 00902-0192, and Marie L. Cortés-Cortés, Llovet Zurinaga & López, PSC, Mercantil Plaza Building, Suite PH 1616, 2 Ponce de León Avenue, San Juan, Puerto Rico 00918.

c:\motions\hrom án.016

**NOTICE OF APPEAL**
**CIVIL NO. 07-1498 (ADC)**
**Page 2**

**RODRIGUEZ LOPEZ LAW OFFICE. P. S. C.**
Juan R. Rodríguez, Esq.
PO Box 7693
Ponce, Puerto Rico 00732-7693
Tel (787)843-2828 / 843-2900 Fax 284-1267
Email: **juan_r_rodriguez00732@hotmail.com**
_____**juan.ramon.rodriguez@us.army.mil**

By:_____***S/JUAN R. RODRIGUEZ***___
_____**JUAN R. RODRIGUEZ, ESQ.**
**USDC-PR 214410**

c:\motions\hromán.016